| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|

| UNITED STATES OF AMERICA<br>v.<br><br>RONALD GERARD BOYAJIAN | DOCKET NO.<br><br>MAGISTRATE'S CASE NO.<br>09- **09-0991M** |

Complaint for violation of Title 18, United States Code § 2423(c)

| NAME OF MAGISTRATE JUDGE<br>Ralph Zarefsky | UNITED STATES<br>MAGISTRATE JUDGE | LOCATION<br>Los Angeles, CA |
|---|---|---|

| DATE OF OFFENSE<br>Between on or about September 6, 2008 and February 19, 2009 | PLACE OF OFFENSE<br>Los Angeles County | ADDRESS OF ACCUSED (IF KNOWN) | FILED<br>CLERK, U.S. DISTRICT COURT<br>MAY 12 2009<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY _____ DEPUTY |

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

Between on or about September 6, 2008, and February 19, 2009, defendant Ronald Gerard Boyajian traveled in foreign commerce, from Los Angeles, California, to Cambodia, and engaged in illicit sexual conduct, as defined in Title 18, United States Code, Section 2423(f), with Jane Doe 1, who is a minor.

LODGED
2009 MAY 12 PM 2:05
CLERK U.S. DISTRICT COURT
CENT. AL DIST. OF CALIF
LOS ANGELES
BY

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:
    (See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE:

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>Special Agent Jonathan Ruiz |
|---|---|
| | OFFICIAL TITLE<br>Special Agent - Bureau of Immigration and Customs Enforcement |

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE(1)<br><br>HONORABLE RALPH ZAREFSKY | DATE<br><br>May   , 2009 |
|---|---|

1) See Federal Rules of Criminal Procedure rules 3 and 54.

PAD:rjm        REC: Detention

<u>AFFIDAVIT</u>

I, Jonathan Ruiz, being duly sworn, do hereby depose and state:

## I.    INTRODUCTION

1.    I am a Special Agent (SA) with the Department of Homeland Security, Immigration and Customs Enforcement (ICE), assigned to the Special Agent in Charge, Los Angeles, California field office (SAC/LA).  I have been employed with ICE since April 2007. As part of my daily duties as an ICE agent, I investigate criminal violations relating to child exploitation and child pornography including violations pertaining to the illegal production, distribution, receipt, and possession of child pornography, in violation of 18 U.S.C. §§ 2252 and 2252A. I have received training in the area of child pornography and child exploitation, and have had the opportunity to observe and participate in numerous investigations involving child exploitation.

2.    This affidavit is made in support of a criminal complaint and arrest warrant charging RONALD GERARD BOYAJIAN with violating Title 18, United States Code, Section 2423(c), which states, "Any United States citizen or alien admitted for permanent residence who travels in foreign commerce and engages in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years or both." The definition of "illicit sexual conduct" is set forth in Title 18, United States Code, Section 2423(f).

3.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from other law enforcement officers.   To the extent that any information in this affidavit that is not within my personal knowledge, it was made known to me through reliable law enforcement sources, and I believe it to be true. I am familiar with the methods applied by illicit sex tour operators, participants, and facilitators used to acquire underage victims and or to avoid law enforcement detection. This affidavit is intended to show that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of, or investigation into, this matter.

4.    One of the non-governmental organizations ("NGOs") that ICE works with in Cambodia is Action Por Les

2

Enfants ("APLE").  Based on my experience with APLE, and based
on its website, http://www.aplecambodia.org, I know the
following about APLE:

   a. APLE is a non-governmental human rights
organization established to combat the sexual exploitation of
children.  APLE seeks to monitor the prevalence of child sexual
abuse in Cambodia and report such abuse to the relevant
authorities.  APLE's lawyers provide pro bono legal advice and
representation to child victims of sexual abuse and their
families.  APLE has social workers provide child victims with
access to counseling and social rehabilitation.  APLE further
contributes to the global efforts to combat the causes and
effects of child sexual abuse through research and advocacy.

   b. APLE's PROTECT project was commenced in
January 2003 to protect children from all forms of sexual
exploitation.  Since its inception, the project has focused on
street-based child sexual exploitation.  Child sexual
exploitation in Cambodia generally is either establishment-based
or street-based.  Establishment-based child sexual exploitation
is facilitated through established sex houses.  Street-based
child sexual exploitation is facilitated personally by a child
sex offender or intermediary who approaches children directly on
the streets, beaches, markets or other public areas in order to
commence a sexual relationship with them.  The majority of

perpetrators of this type of abuse are western nationals, which makes APLE's focus an international one.  Since the majority of civil society organizations working in Cambodia to address child sexual abuse focus on Cambodian perpetrators, the PROTECT project operates in a niche market within that civil society community.

        c.    APLE's objectives include the following:

        i.    Intervention and aftercare:  To emancipate victims from child sexual abuse and reduce the effects of trauma caused by such abuse.

        ii.   Legal protection:  To increase the level of access to legal protection afforded to victims of child sexual abuse.

        iii. Breaking the cycle:  To lessen the likelihood of vulnerable children becoming victims, and victims becoming recurring victims, through awareness and social care.

        iv. Criminal accountability:  To improve current conditions of impunity and legal accountability of child sex offenders in Cambodia through cooperation with Cambodian and international law enforcement officials and bodies and through awareness raising on child sexual exploitation issues.

        d.    As part of its mission to bring criminal accountability to child sex tourists in Cambodia, APLE has established formal agreements with the Ministry of Foreign

Affairs and International Cooperation of the Kingdom of Cambodia and the Ministry of Social Affairs, Veterans and Youth Rehabilitation of the Kingdom of Cambodia.   In addition, APLE works closely with the Cambodian National Police, ICE, the United Kingdom Child Exploitation and Online Protection, the German Federal Police-BKA, and other international law enforcement.   APLE also works with other NGOs, such as Our Hope Cambodia, World Hope International, M'lop Tapang, Cambodia, Village Focus International, and the End Child Prostitution, Pornography and Trafficking (ECPAT) International Network, among others.

    e. APLE investigators conduct undercover investigations, intelligence gathering and monitoring activities in order to collect evidence to rescue victims and prosecute perpetrators of child sexual exploitation.   These activities include operating investigative teams and leasing with informants; investigating cases of suspected child sexual abuse to obtain evidence; monitoring suspicious persons or persons previously convicted of child sex offenses on a referral basis; and collaborating with and referring intelligence to Cambodian and foreign law enforcement officials.

## II. SUMMARY OF PROBABLE CAUSE

    5. In February 2009, ICE agents received information from APLE that a white male known as "John," later identified as

United States citizen RONALD GERARD BOYAJIAN, was frequenting "House #1" a known child brothel in Svay Pak, Cambodia. Based on investigative findings of the Cambodian National Police (CNP), APLE and ICE, to include surveillances, interviews and law enforcement actions, BOYAJIAN is suspected of engaging in sexual acts with multiple underage females while in Svay Pak, Cambodian.

## III. BACKGROUND INFORMATION REGARDING BOYAJIAN

6.    ICE conducted record checks of BOYAJIAN's Criminal history and learned that in 1995, BOYAJIAN sustained convictions on eighteen counts of violating California Penal Code Section 261.5, Unlawful Sexual Intercourse with a Minor, four counts of violating California Penal Code Section 288A(B)(1), Oral Copulation With Person Under 18, and one count of violating California Penal Code Section 273.6a, Violating a Court Order to Prevent Domestic Violence. As a result of the convictions, BOYAJIAN is required to register as a sexual offender. Records checks conducted within the sex offenders registry revealed that BOYAJIAN last registered with the Menlo Park Police Department in San Mateo County, California, on or about August 6, 2008.

7.    Database checks in the California Department of Motor Vehicles revealed that BOYAJIAN has a California Drivers License and resides in Menlo Park, California.

### III. INVESTIGATION

8.   On February 9, 2009, ICE received information from APLE investigators that a white male known as "John" was visiting a known child brothel ("House #1") in the Svay Pak, area of Cambodia.  Svay Pak, also known as Kilo 11, is a small impoverished area approximately 11 kilometers outside the capitol city of Phnom Penh and is infamously known to offer minor children for sex.

9.   APLE investigators reported that they witnessed "John" leave the International Guest House located at No. 128, St 136, Sangkak Phsar Kandal II, Khan Daun Penh, Phnom Penh, Cambodia, where "John" was living at the time, on his red motorbike and visit "House #1" in Svay Pak on the nights of February 11, and 12, 2009.

10.  On February 16, 2009, the Cambodian National Police conducted a traffic stop on "John" for a traffic infraction that occurred while "John" was riding his motorbike.  At the time the CNP conducted the traffic stop, "John" did not have any identification on his person.  Subsequently, "John" escorted the CNP officers back to his residence at the International Guest House, where he retrieved, and presented, his United States Passport. "John's" U.S. passport, number 055875835, displays a photo matching "John," and contains the name "Ronald Gerard Boyasian" with a date of birth August 2, 1960.

7

11.  Subsequent records checks conducted by ICE special agents revealed that "John's" last name is incorrectly spelled on his passport document and that the correct spelling is "BOYAJIAN" ("John" is from now on referred to as BOYAJIAN).

12.  Travel records indicated that BOYAJIAN last departed the United States on or about September 6, 2008, from Los Angeles International Airport (LAX) for Taipei, Taiwan.  A review of arrival/departure stamps in BOYAJAIN's passport revealed that on or about September 8, 2008, BOYAJIAN entered Phnom Pehn, Cambodia.

13.  On February 19, 2009, the CNP conducted surveillance on "House #1" and observed BOYAJIAN enter the location.  As the CNP approached "House #1," BOYAJIAN, two suspected pimps working at "House #1," and Jane Doe 1, a 10 year old Vietnamese girl, attempted to evade the CNP by running into nearby alleys and shack houses.  After a short foot pursuit, BOYAJIAN was apprehended by the CNP in a nearby alley and brought back to "House #1" for questioning pursuant to a subpoena that had been issued by the CNP.  Subsequently, the CNP arrested BOYAJIAN for Debauchery under Cambodian law.

14.  On February 20, 2009, the CNP notified ICE SA Hung Nguyen that the CNP had located one of the children seen fleeing from "House #1" the previous day.  According to the CNP, Jane Doe 1, a 10 year old girl from Vietnam, was identified by APLE

8

from its investigation involving BOYAJIAN and "House #1."  APLE
informed the CNP that Jane Doe 1 is only one of many children
who were recruited to provide sex for BOYAJIAN.

     15.  On February 25, 2009, Jane Doe 1 was interviewed by
ICE SA Hung Nguyen and ICE's Cambodia Foreign Service National
Investigator Sous Vansak.  The interview was videotaped and
conducted in Jane Doe 1's native language, Vietnamese.  The
following is summary of that interview:

     a.   Jane Doe 1 did not know her exact birth date, but
knows that she was born in the year of the dragon and that she
is 10 years old.

     b.   Jane Doe 1 was shown six different photos of male
adults, including a photo of BOYAJIAN.  Jane Doe 1 identified
the photo of BOYAJIAN from a photospread and told SA Nguyen that
she knew him as "John."  Jane Doe 1 stated that "John" is an
American who can speak Vietnamese.

     c.   Jane Doe 1 first met "John" at "House #1"
approximately two years ago when she performed oral sex on him
for money.  He told her in Vietnamese "kid, go to work."  She
has performed oral sex on "John" many times, and each time
"John" paid her roughly 20,000 Reil.  Jane Doe 1 said that
usually she and another girl would perform oral sex on "John"
together.  On one occasion while another girl, age fifteen, was
performing oral sex on "John," he wanted Jane Doe 1 to lie down

so that he could suck on her foot.  When asked if "John" wore

anything to cover his penis, Jane Doe 1 said that "John" did

not, and that "John" had ejaculated in her mouth, all over her

face, and on her body.

        d.   Jane Doe 1 told SA Nguyen the names of nine other

girls, ranging in age from ten to seventeen years old, whom she

had seen perform oral sex on BOYAJIAN at the brothel.

     15.  On February 21, 2009, the International SOS Clinic in

Phnom Pehn, Cambodia, conducted a medical forensics exam on Jane

Doe 1.  Based on my review of the report of that examination, I

learned that Dr. Nick Walsh conducted the exam and reported that

she had "no signs of breast development" and "no adult body

hair."  Pertaining to the examination of Jane Doe 1's genital

area, Dr. Walsh reported "partial hymen.  Small vaginal

introitus.  No Discharge.  No pubic hair." Dr. Walsh's

impression was "Multiple occasions of sexual activity but

unlikely penetration."

     16.  On February 24, 2009, ICE Supervisory Special Agent

(SSA) Perry Woo and ICE SA Hung Nguyen attempted to interview

BOYAJIAN who, at the time, was held in CNP custody.  Both SSA

Woo and SA Nguyen explained to BOYAJIAN that they were Special

Agents from U.S. Immigration and Customs Enforcement.  SSA Woo

explained that he was from the Office of the Special Agent in

Charge (SAC) Los Angeles, California Field office.  SA Nguyen

10

explained that he was assigned to the U.S. Embassy in Bangkok,
Thailand with responsibility over Cambodia.  Subsequent to SSA
Woo reading BOYAJIAN his Miranda Rights, BOYAJIAN invoked his
right to remain silent.  BOYAJIAN provided his biographical
information to the agents verifying his United States
Citizenship.  BOYAJIAN told agents that he departed the U.S. on
September 6, 2008, from LAX. Additionally, he provided his full
name, date of birth August 2, 1960, U.S. residence: his address
in Menlo Park, California, and informed agents that he had
previously been convicted and served time for a sex offense
involving a child in 1995.

     17.  On or about February 23, 2009, ICE's Cambodia Foreign
Service National Investigator (FSNI) Sous Vansak interviewed
the operator of the mortorbike rental company doing business as
"Lucky Lucky's" who owns the motorbike BOYAJIAN was seen riding
to "House #1."  From a photo spread, the operator identified
BOYAJIAN as the renter of the motorbike but told agents that she
knew him as "Jeff."   The operator provided a copy of the rental
agreement which showed that under "Name of renter" BOYAJIAN
wrote "Jeff" and under "Nationality" BOYAJIAN wrote "Italian."
BOYAJIAN provided an $840.00 cash deposit for a bike that,
according to the rental agreement, would only cost the renter
$850.00 in the event that the bike is stolen, lost, or damaged.
The operator stated that "Jeff" refused to put his address on

                                  11

the rental agreement because, according to "Jeff," he provided a deposit sufficient enough to replacement cost of the motorbike. The operator told agents that "Jeff" recently exchanged the original mortorbike rented to him but that she could not remember when the exchange was made.  The operator stated that she has since then rented the motorbike originally rented to "Jeff"  and provided the rental agreement dated February 20, 2009, that shows it was rented to a Korean male at the price of $42.00 for 15 days and without a deposit.

18.  On or about February 23, 2009, ICE FSNI Sous Vansak interviewed Phon Theara the receptionist employed at the International Guest House where BOYAJIAN was staying.  From a photo spread, Theara identified the photo of BOYAJIAN as recent guest of the International Guest House who had stayed in room #403 but said that she knew him as "John."  Theara proved agents with a copy of the registration log that shows that on February 16, 2009, BOYAJIAN, signed the name "Michael (John)" when he checked out from the International Guest House Room #403. Theara told agents that "John" was unable to show her his passport because, according to "John," the passport was taken to apply for a visa.

19.  Based on the interview of Jane Doe 1 and the other investigative findings, there is probable cause to believe that BOYAJIAN, who is United States citizen, traveled to Cambodia

from LAX on or about September 6, 2008, and engaged in illicit sex with at least one known underage Cambodian female child.

20.   Based on my training and experience, individuals involved in illicit sex tourism with underage victims often use other victims and or facilitators to obtain more victims for sex.   Similarly, these individuals constantly travel from one place to the next to avoid detection.   Lastly, these individual will use fictitious names and/or are often inconsistent with disclosing truthful information such as date of birth, and correct spelling of their names on identification documents in order to help conceal their real identities.   This is consistent with what BOYAJIAN is doing in Cambodia.

13

## VI.   CONCLUSION

21.   Based on the foregoing, I believe there is probable cause to believe that Ronald Gerard BOYAJIAN is in violation of Title 18, United States Code, Section 2423(c), Engaging in Illicit Sexual Conduct in Foreign Places.

Jonathan C. Ruiz
Special Agent
United States Immigration
and Customs Enforcement


SUBSCRIBED TO AND SWORN BEFORE ME
THIS _12th_ DAY OF MAY 2009

UNITED STATES MAGISTRATE JUDGE

14