ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
PATRICIA A. DONAHUE (California Bar No. 132610)
KAREN I. MEYER (California Bar No. 220554)
DAVID M. HERZOG (California Bar No. 224594)
Assistant United States Attorneys
Violent and Organized Crime Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-0640/8559/0600
     Facsimile:  (213) 894-3713
     Email:      patricia.donahue@usdoj.gov
                 kim.meyer@usdoj.gov
                 david.herzog@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>RONALD GERARD BOYAJIAN,<br>    aka "John,"<br><br>        Defendant. | No. CR 09-933(A)-CAS<br><br>GOVERNMENT'S REPLY TO DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT EVIDENCE OF DEFENDANT'S COMMISSION OF OTHER OFFENSES OF SEXUAL ASSAULT AND CHILD MOLESTATION, PURSUANT TO FEDERAL RULES OF EVIDENCE 413, 414, and 404(b); GOVERNMENT EXHIBIT "K"<br><br>HEARING ON THE MOTION:<br>July 6, 2011, at 12:00 p.m.<br><br>TRIAL DATE:<br>November 1, 2011, at 9:30 a.m.<br><br>COURT: Hon. Christina A. Snyder |

Plaintiff United States of America hereby files its reply to defendant's opposition to its motion in limine to introduce at trial evidence of defendant Ronald Gerard Boyajian's prior offenses of sexual assault and child molestation, pursuant to Federal Rules of Evidence 413, 414, and 404(b).

The government's reply is based upon the attached memorandum of points and authorities, the files and records in this case, and any other evidence or argument that the Court may wish to consider.

DATED: June 30, 2011              Respectfully submitted,

                                  ANDRÉ BIROTTE JR.
                                  United States Attorney

                                  ROBERT E. DUGDALE
                                  Assistant United States Attorney
                                  Chief, Criminal Division


                                  _____/s/_____
                                  PATRICIA A. DONAHUE
                                  KAREN I. MEYER
                                  DAVID M. HERZOG
                                  Assistant United States Attorneys

                                  Attorneys for Plaintiff
                                  United States of America

ii

**TABLE OF CONTENTS**

PAGE

Table of Authorities . . . . . . . . . . . . . . . . . . . v

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . 1

I.   Introduction and Summary of Argument . . . . . . . . . . 1

II.  Argument . . . . . . . . . . . . . . . . . . . . . . 6

     A.  Defendant's Prior Sexual Misconduct Is Similar to
         the Charged Offense Conduct . . . . . . . . . . . . 7

         1.  Defendant's Prior Sexual Proclivities Were
             Similar, If Not Identical, to His Charged
             Sexual Misconduct . . . . . . . . . . . . . . 7

             a.  Child Victim K.L.'s Core Testimony Is
                 That Defendant Sexually Molested Her,
                 Forced Her to Copulate Him Orally, and
                 Bit Her Legs and Feet . . . . . . . . . . 9

             b.  Child Victim TaP's Core Testimony Is
                 That Defendant Sexually Molested Her,
                 Forced Her to Copulate Him Orally, and
                 Ejaculated on Her . . . . . . . . . . . 11

             c.  Child Victim TyP's Core Testimony Is
                 That Defendant Sexually Molested Her,
                 Forced Her to Copulate Him Orally,
                 Attempted to Make Her Swallow His Semen,
                 Bit Her Legs and Feet, and Took
                 Photographs of Her While She Was Naked . 11

             d.  The Core Testimony of California Child
                 Victims K.S., S.C., and V.R. Is That
                 Defendant Had Vaginal Intercourse with
                 Them and Forced Them to Perform Oral
                 Sex on Him When They Were under the Age
                 of Consent and He Was Almost Twice
                 Their Age . . . . . . . . . . . . . . . 12

         2.  All of Defendant's Victims Were Young
             Girls or Young-Looking Teenage Girls. . . . . 14

     B.  Evidence of Defendant's Prior Sexual Misconduct
         is Necessary to the Government's Case Because
         Defendant Will Attack the Credibility of the
         Witnesses . . . . . . . . . . . . . . . . . . . 17

     C.  The Other LeMay Factors Favor the Government . . . 19

     D.  Defendant Will Have the Opportunity to Cross-
         Examine Witnesses at Trial . . . . . . . . . . . 19

iii

**TABLE OF CONTENTS (Cont'd)**

PAGE

III. Resolution of Defendant's Concerns . . . . . . . . . . .   20

    A.   Provision of Documents  . . . . . . . . . . . . .   20

    B.   Government References to Defendant's Prior
       Misconduct  . . . . . . . . . . . . . . . . . .   20

    C.   Interrupting Trial to Conduct a Hearing Regarding
       the Admissibility of Testimony from the Cambodia
       Victims  . . . . . . . . . . . . . . . . . . . . .   21

    D.   Pre-Instructing the Jury Regarding Victim
       Testimony  . . . . . . . . . . . . . . . . . . .   21

IV.  Other Grounds for Admissibility  . . . . . . . . . . .   21

V.   Conclusion . . . . . . . . . . . . . . . . . . . . . .   22

iv

**TABLE OF AUTHORITIES**

**FEDERAL CASES**                                                    **PAGE(S)**

United States v. LeMay,
        260 F.3d 1018 (9th Cir. 2001)  . . . . . . . . . . .  passim

**FEDERAL STATUTES**

18 U.S.C. § 2423  . . . . . . . . . . . . . . . . . . . . .  passim

**FEDERAL RULES OF EVIDENCE**

Rule 403  . . . . . . . . . . . . . . . . . . . . . . . .  passim

Rule 404  . . . . . . . . . . . . . . . . . . . . . . . .  passim

Rule 413  . . . . . . . . . . . . . . . . . . . . . . . .  passim

Rule 414  . . . . . . . . . . . . . . . . . . . . . . . .  passim

v

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I. Introduction and Summary of Argument**

3   Evidence that defendant Ronald Boyajian ("defendant") has a

4   longstanding sexual interest in underage girls and has committed

5   numerous sexual assaults and child molestations since 1991 is

6   necessary and relevant to show his propensity to engage in his

7   charged sexual abuse of S.L.  Such evidence, including testimony

8   from his prior victims in Cambodia and California, is

9   presumptively admissible under Federal Rules of Evidence 413 and

10  414, and this case demonstrates why: throughout his adult life,

11  defendant has engaged in a pattern of sexual predation on young

12  girls, culminating in his sexual abuse of S.L.[1]

13  Under Rules 413 and 414, <u>all</u> evidence of defendant's prior

14  sexual misconduct is admissible for any purpose at trial,

15  including propensity.  However, for the sake of expediency and to

16  prevent the presentation of evidence of defendant's prior sexual

17  misconduct in California from becoming a time-consuming side-

18  show, Opp. at 47-49, the government seeks permission to introduce

19  only the following evidence of defendant's prior sexual

20

---

21      [1] Each girl whom defendant raped in Cambodia – S.L., K.L.,
    TaP, and TyP – is ethnically Vietnamese, not Cambodian.
22  Defendant preferred Vietnamese victims because Vietnamese
    immigrants in Cambodia often have no papers, which makes it
23  impossible for authorities to authenticate their ages.  Defendant
    stated: "[i]f she was Vietnamese then she doesn't have any
24  paperwork.  There's no way they could say she's underage. . . .
    'Cause there's no paperwork.  Nobody comes illegally with their
25  paperwork.  If she's Vietnamese illegal, then she has no papers.
    . . . She's not illegal.  Her paperwork's back in Vietnam."
26  Gov't Exh. G, at 1427.  In its motion and reply, the government
    uses the phrase "Cambodia victims" to distinguish the girls whom
27  defendant sexually assaulted in Cambodia from the girls whom
    defendant sexually assaulted in California (his "California
28  victims").

1

misconduct: (1) evidence of defendant's prior molestations of K.L., TaP, and TyP, including their live testimony, and (2) certified conviction documents[2] establishing defendant's 1994 California conviction, without live testimony from defendant's California victims, provided that the Court orders defendant not to make any reference to the facts underlying that conviction.

Testimony from Cambodia victims K.L., TaP, and TyP that defendant molested them is admissible under several theories. First, evidence of defendant's prior sexual misconduct against these victims directly supports the elements of the crime charged in Count One of the First Superseding Indictment: Traveling to Cambodia with Intent to Engage in Illicit Sexual Conduct with a Minor Girl, in violation of 18 U.S.C. § 2423(b).  Evidence that defendant did in fact engage in illicit sex with girls on previous trips to Cambodia demonstrates that his purpose for traveling to Cambodia in September 2008 was to engage in illicit sexual conduct with girls.  Second, under traditional Rule 404(b) analysis, this evidence demonstrates defendant's intent,

---

[2] The "certified conviction documents," the government will introduce under this approach will consist of only the "Abstract of Judgment-Prison Commitment" and "Minute Order" of February 27, 1995, which are pages 2-7 of Exhibit D to the government's motion (Bates 3325-3330).  Under this approach, the government will not seek to introduce the Probation Report prepared in the California case, which is Exhibit A to the government's motion (Bates 2930-76).  As a separate matter, the government will seek to introduce pages 8-9 of Government Exhibit D, which consist of defendant's original sex registration card, pursuant to California Penal Code Section 290.  Along with the Minute Order, the registration card establishes the requirement that defendant register as a sex offender, which the government must establish to satisfy the elements of the third count charged in the First Superseding Indictment: Committing Felony Offenses Involving a Minor Girl While Being Required to Register as a Sex Offender, in violation of 18 U.S.C. §§ 2423(b), 2423(c), and 2260A.

1  identity, knowledge, and modus operandi in committing the charged

2  offenses against S.L.  Third, this evidence is separately

3  admissible because it is inextricably intertwined with

4  defendant's charged conduct against S.L.  Finally, evidence of

5  defendant's prior sexual misconduct against K.L., TaP, and TyP is

6  presumptively admissible under Rule 414 without limitation and

7  for any purpose, including propensity.

8      With regard to the admission of evidence under Rule 413 that

9  defendant sexually assaulted K.S., S.C., and V.R. in California

10 during the 1990s, the government will limit[3] its introduction of

11 evidence to the certified documents from defendant's 1994

12 conviction and will forgo live testimony from these victims,

13 provided that the Court orders defendant not to make any

14 reference to the underlying facts.  Should defendant make

15 reference to the facts underlying his 1994 conviction, he will

16

17     [3] In a case in which Rules 413 and 414 apply, the government
   is <u>not</u> limited to introducing merely a defendant's prior

18 conviction itself, because testimony regarding the details of a
   defendant's prior molestations is necessary to establish their

19 similarity, and thus relevance:

20     We reject the idea that the district court should have
       limited  the  prosecution  to  merely  proving  that

21     [defendant]  had  been  convicted  of  rape  eleven  years
       before.  The relevance of the prior act evidence was in

22     the details.  Establishing the simple fact of conviction
       would leave out the information that [defendant] had been

23     convicted of sexually abusing his young relatives, by
       forced oral copulation, while they were in his care. . .

24     .  [T]estimony [regarding defendant's prior molestation
       conduct] was necessary to fill in the details that made

25     the prior rape conviction relevant.

26 <u>United States v. LeMay</u>, 260 F.3d 1018, 1029-30 (9th Cir. 2001).
   Nevertheless, in the interest of judicial economy, the government

27 is willing to limit its introduction of evidence regarding
   defendant's California victims to the certified conviction

28 documents as set forth herein.

                                3

1   have opened the door to a full exploration of all the facts

2   through the live testimony of his California victims.   For

3   example, if defendant refers to the ages of his California

4   victims at the time he raped them, or any purported "boyfriend-

5   girlfriend" relationship between defendant and those victims, the

6   government should be permitted to call those victims to explain

7   the actual circumstances of defendant's sexual assaults on them.

8        In his opposition to the admissibility of his prior

9   misconduct under Rules 413 and 414, defendant focuses on

10  similarity and necessity, two of the five factors district judges

11  "must evaluate in determining whether to admit evidence of a

12  defendant's prior acts of sexual misconduct" under those Rules.

13  United States v. LeMay, 260 F.3d 1018, 1027-28 (9th Cir. 2001).

14  But his lengthy and speculative attempt to parse as narrowly as

15  possible the differences between his prior and charged acts of

16  sexual misconduct with minor girls, and then to characterize the

17  government as using such prior sexual misconduct evidence to

18  "pile on," actually undermines his position.

19       The core of each instance of defendant's sexual misconduct

20  (both foreign and domestic) was that he engaged in illicit sexual

21  acts with an underage girl, whether that conduct took the

22  specific form of oral copulation, attempted vaginal intercourse,

23  or penetrative vaginal intercourse.   The fact that his prior

24  victims, from both Cambodia and California, will testify that he

25  was obsessed with receiving oral sex and forcing his victims to

26  swallow his semen, that he had a particular and unique penchant

27  for their legs and feet, and that his sexual appetite for young

28  girls was voracious, particularly for girls who were physically

4

too small for him to penetrate vaginally, supports the similarity of his prior and charged conduct, even though some of the victims' statements contain inconsistencies.

Defendant's wink and nod that he was, at age 31, merely "an older man, who was <u>legally</u> too old and should have known better" than to commit sexual assault on his California victims when they were 15, 16, or 17 years old, Opp. at 48 (emphasis supplied), coupled with his insinuation that his conduct amounted to nothing more than statutory rape, and is therefore too dissimilar to his charged conduct, is as offensive as it is irrelevant: the age of consent in California is 18. Defendant's prior misconduct demonstrates that he has continually engaged in illicit sexual conduct with underage girls, culminating in his molestation of S.L. in 2009. It is exactly this kind of propensity evidence that Congress intended courts to admit, and defendant has failed to overcome the presumption that his past sexual misconduct is too dissimilar to be relevant.

The very fact that it takes defendant 45 pages to highlight the alleged inconsistencies in his victims' statements – the same strategy he will use at trial, <u>see</u> Opp. at 47-48 – demonstrates how necessary it is for the government to introduce evidence of defendant's prior sexual misconduct. Where, as here, the expected defense will be a challenge to the credibility of the child victim, "[p]rior acts evidence need not be *absolutely necessary* to the prosecution's case in order to be introduced; it must simply be helpful or *practically necessary*." <u>LeMay</u>, 260 F.3d at 1029 (emphasis in original). In the face of defendant's challenges to S.L.'s credibility, it will become practically

1  necessary for the government to corroborate her testimony through

2  evidence of defendant's prior sexual misconduct.   In these

3  circumstances, it is hardly the case that, as defendant claims,

4  admitting evidence of his prior sexual misconduct is

5  "mathematically excessive and unnecessary," or "prejudicially

6  cumulative," or that it would constitute "sheer numerical 'piling

7  on.'" Opp. at 45.  To the contrary, admission of this relevant

8  evidence is necessary for the government to paint an accurate

9  picture of defendant's sexual misconduct and proclivities.

10      Accordingly, the government seeks permission to introduce

11  live testimony regarding defendant's prior sexual misconduct with

12  minor girls in Cambodia, and the certified conviction documents

13  from defendant's 1994 California conviction.  The government will

14  not seek to elicit testimony from defendant's California victims,

15  provided the Court orders defendant not to reference the facts

16  underlying his 1994 conviction.

17                          **II.  Argument**

18      Despite the approach set forth above, the government submits

19  that each of the relevant factors under Rules 413 and 414 favors

20  the government, and <u>all</u> evidence of defendant's prior sexual

21  misconduct against his Cambodia and California victims is

22  admissible at trial under those Rules.  In particular, the two

23  factors on which the defendant focuses – similarity and

24  necessity – militate strongly in favor of the Court admitting

25  evidence of defendant's prior sexual misconduct.

26

27

28

**A.    Defendant's Prior Sexual Misconduct Is Similar to the Charged Offense Conduct**

Defendant has a sexual preference for young, small girls. In California in the 1990s, he gained access to victims who fit this profile by holding himself out as a tutor to female high school students, isolating them from their families, manipulating them, and coercing them into engaging in illicit sex with him in exchange for paying their living expenses.  After his 1994 conviction – followed by three years of probation and required sex registration – made it more difficult for him to gain access to American victims, defendant obtained a passport so he could travel to Thailand and Cambodia, where he could more easily gain access to young, small girls for sex.

In all meaningful ways, defendant's prior acts of sexual misconduct are similar to his charged conduct against S.L.: he chose young, small victims whom he could control, either through purchasing them for cash (Cambodia) or manipulating them and providing living expenses (California), and he was obsessed with oral sex, although he also sought vaginal sex from his victims.

**1.    Defendant's Prior Sexual Proclivities Were Similar, If Not Identical, to His Charged Sexual Misconduct**

Child victim S.L., whom the government believes is currently either 9 or 10 years old,[4] has given a number of statements about

---

[4] As the government noted in its motion and defendant acknowledges, Opp. at 17, it is difficult, if not impossible, to determine the ages of Vietnamese and Cambodian children with specificity.  The government believes that a one year margin of error is the most accurate result possible – a position highlighted by the fact that defendant himself can only point to disparities within this one year margin of error.  See e.g., Opp.

1    the sexual abuse she suffered at the hands of defendant prior to

2    his arrest in February 2009.[5]  Like most child victims of sexual

3    abuse, S.L. has been inconsistent at times.  But the government

4    believes S.L. will testify that defendant engaged in illicit

5    sexual conduct with her on numerous occasions during the two

6    years prior to his arrest in February 2009, including not only

7    forcing her to perform oral sex on him, ejaculating into her

8    mouth and on her face and body, as well as those of his other

9    victims, and sucking and biting her feet.  It appears to be

10   common ground that the core of S.L.'s testimony will be that

11   defendant sexually molested her by repeatedly forcing her to

12   perform oral sex on him.  See Opp. at 3-10.  It is this conduct

13   that forms the basis of the charged offenses, and it is this

14   conduct to which defendant's prior sexual misconduct is similar.

15        The core of the testimony offered by defendant's prior

16   victims will be nearly identical to that of S.L.: he forced his

17   prior victims to perform oral sex on him, often to the point of

19   at 3 (S.L. was either 7 or 8 years old, or she was 8 or 9 years

20   old); 7 (S.L. would have been 7 or 8 years old); 17 (K.L. was
     either 8 or 9 years old when defendant molested her, or she was 9

21   or 10 years old).  In any event, even taking into account this
     margin of error, none of the Cambodia victims were within a one

22   year margin of fourteen years old, which is the threshold age for
     a person to be considered a child for purposes of Rule 414.  Fed.

23   R. Evid. 414(d).

24        [5] Throughout this case, defendant has noted that S.L. was

25   not present at his arrest on February 19, 2009, and that he was
     not caught in the act of sexually violating her.  See e.g., Opp.

26   at 3-4, 46.  The government acknowledges these facts, and notes
     that there is no requirement, in the charged statutes or any

27   caselaw of which the government is aware, that a victim must be
     present at a defendant's arrest or that a defendant must be

28   caught engaging in a sexual act to be guilty of the crimes
     charged in the First Superseding Indictment.

1  ejaculating in their mouths or on their faces and bodies, and he

2  was at times sexually gratified by their legs and feet.  <u>See</u> Mot.

3  at 5-9 and supplemental brief (California victims); Mot. at 10-15

4  (Cambodia victims).  Although there are inconsistencies in the

5  accounts given by some of defendant's victims, none of these

6  inconsistencies undermine the core similarity between what

7  defendant did to S.L. and what defendant did to them.  Defendant

8  has not established that any purported inconsistency is

9  significant enough to undermine the overwhelming similarity of

10 defendant's prior misconduct to the charges at issue.

11              **a.   Child Victim K.L.'s Core Testimony Is That**
                    **Defendant Sexually Molested Her, Forced Her to**
12                  **Copulate Him Orally, and Bit Her Legs and Feet**

13      Child victim K.L. gave a number of statements in this case,

14 as defendant notes.  Opp. at 17-23.  The overall consistency of

15 her statements is remarkable: defendant had sexual intercourse

16 with her, forced her to perform oral sex on him until he

17 ejaculated, at least once into her mouth and onto her face, and

18 bit her leg and toe.  <u>Id.</u>  The similarity of this conduct to the

19 proffered testimony of S.L. is overwhelming – much of the conduct

20 is nearly identical, down to the biting of the child victim's

21 feet and legs.  The government submits that the only reason

22 defendant did not have vaginal sex with child victim S.L., as he

23 did with K.L., is that S.L. was physically too small for

24 defendant to penetrate her vaginally.

25      The only potential inconsistency proffered by defendant is

26 the allegation that K.L. claimed to have lost her virginity both

27

28

to defendant in 2002 or 2003 and to Curtis Fahlberg in 2005.[6]
Opp. at 14, 22.  As is common for child victims of sex tourism in
Cambodia, K.L. was victimized by many foreigners, including both
defendant and Fahlberg.  In a July 2007 interview taken during
the Fahlberg case, K.L. asserted about Fahlberg: "he is the first
person who had sex with me."  Gov't Exh. K.  Two years later, on
August 7, 2009, K.L. was interviewed in connection with the
current case and gave a statement that defendant characterizes as
an assertion that she lost her virginity to defendant, not
Fahlberg.  But even a cursory reading makes it clear that K.L.'s
statement about defendant is ambiguous at best.  It is unclear
from her statement whether she thinks she is answering the
question "the very first time you were raped, who was there?" or
the question "the very first time you were raped by Boyajian, was
anyone else there?"  Def. Exh. DD; Opp. at 22.

Regardless, this purported inconsistency does not undermine
K.L.'s proffered testimony that defendant forced her to have
sexual intercourse with him, forced her to perform oral sex on
him, and bit her legs and feet – testimony that is similar to the
proffered testimony of S.L.  The government submits that the
proper way to proceed is for the Court to admit K.L.'s testimony
regarding defendant's past sexual misconduct against her under
Rules 413 and 414, and then to permit defendant to cross-examine
her about any alleged inconsistencies.

---

[6] On July 17, 2009, in <u>United States v. Fahlberg</u>, CR No. 09-683-MMM, Fahlberg was charged with three counts of Engaging in Illicit Sexual Conduct with a Minor in Foreign Places, in violation of 18 U.S.C. § 2423(c).  Victim K.L. is named in Count One of that indictment as "L.T.K.G."

1                 **b.**   **Child Victim TaP's Core Testimony Is That**
                     **Defendant Sexually Molested Her, Forced Her to**

2                      **Copulate Him Orally, and Ejaculated on Her**

3     As defendant acknowledges, child victim TaP's statements are

4 consistent that defendant repeatedly had vaginal intercourse with

5 her and forced her to copulate him orally until he ejaculated on

6 her – evidence that, as with child victim K.L., is similar to

7 defendant's conduct with regard to child victim S.L.  Opp. at 26-

8 31.  Defendant attempts to challenge the validity of TaP's

9 statement that Karl Henning took her virginity in 2003, Opp. at

10 24, but at no point does he allege that TaP ever claimed that

11 defendant was the first person with whom she had sex.

12 Accordingly, defendant has done nothing to undermine the

13 similarity of S.L.'s accounts to the proffered testimony of TaP.

14                 **c.**   **Child Victim TyP's Core Testimony Is That**
                     **Defendant Sexually Molested Her, Forced Her to**

15                      **Copulate Him Orally, Attempted to Make Her Swallow**
                     **His Semen, Bit Her Legs and Feet, and Took**

16                      **Photographs of Her While She Was Naked**

17     Like child victims K.L. and TaP, child victim TyP's

18 statements are largely consistent and quite similar to the

19 accounts given by child victim S.L.: defendant forced her to

20 undress, stuffed a towel in her mouth to prevent her from

21 screaming, forced her to copulate him orally until he ejaculated,

22 attempted to force her to swallow his semen, bit her leg and

23 pulled her hair when she refused to do so, and took pictures of

24 her.  Opp. at 31-34.  He may also have forced her to have

25 intercourse with him.  Id.  Again, much of this conduct is

26 similar to the conduct reported by S.L., and, unlike his attempts

27 with regard to K.L. and TaP, defendant does not even allege

28 inconsistencies in TyP's statements.  Under Rules 413 and 414,

1   evidence of defendant's prior sexual misconduct against TyP is

2   similar, relevant, and admissible.

3           **d.   The Core Testimony of California Victims K.S.,
               S.C., and V.R. Is That Defendant Had Vaginal
4               Intercourse with Them and Forced Them to Perform
               Oral Sex on Him When They Were under the Age of
5               Consent and He Was Almost Twice Their Age**

6       Defendant goes to some lengths to describe his relationships

7   with each of his California victims as though they were simply

8   misunderstood, legitimate "boyfriend and girlfriend"

9   relationships, based on voluntary and mutual love and

10  understanding.  But regardless of defendant's ex post facto

11  characterizations, defendant was convicted of eighteen counts of

12  unlawful sexual intercourse with a minor, in violation of

13  California Penal Code Section 261.5, and four counts of oral

14  copulation with a person under 18 years of age, in violation of

15  California Penal Code Section 288a(b)(1).[7]

16      Should the facts underlying defendant's 1994 conviction come

17  into evidence, the government anticipates that each of

18  defendant's California victims, K.S., S.C., and V.R., will

19  testify to conduct by the defendant that is similar to, and bears

20  on, his charged conduct.  Specifically, defendant's California

21  victims will testify that defendant initiated sexual

22  relationships with them when he was an adult and they were

23  underage, that he was obsessed with them performing oral sex on

24  him, that he controlled their food intake to keep them physically

25

26          [7] Defendant notes repeatedly that he was not convicted of
    "rape."  It is true that defendant's conviction was not for
27  "rape"; the government uses that term because "statutory rape"
    describes the conduct of having sex with children who are, by
28  law, too young to consent to having sex with an adult.

                                12

small and young-looking, and that he expressed to them his sexual interest in underage girls.

Defendant's attempts to demonstrate that the testimony from his California victims is "manifestly dissimilar" to the charged offenses consists of a series of distinctions without difference.

Defendant's argument that he engaged in commercial sex transactions only with S.L., if at all, and never with his California victims, Opp. at 45, is factually inaccurate.  In Cambodia, defendant simply paid cash for sex with girls because it was possible to do so; in California, where there are no open-air child brothels, he paid for sex by taking care of his victims' living expenses, food, and clothing.  In both contexts, defendant engaged his underage victims in commercial transactions in which he provided financial benefits to them in exchange for illicit sex.  It is beyond the pale to suggest, as defendant does, that an 8-year-old girl in poverty-devastated Svay Pak can give any meaningful form of consent to "engage[] Boyajian for brief sexual exploitation, and then part[]."  Opp. at 45.

What matters for purpose of Rules 413 and 414 is not whether the nature of defendant's prior sexual misconduct with his California victims was a single act of child molestation or a long-term pattern of sexual abuse.  What matters is that defendant has had a long-term sexual interest in underage girls, including an obsession with forcing them to copulate him orally, and that he satisfied his interest in similar ways by victimizing California teens in the early 1990s and S.L. in 2008 and 2009.

The proper analysis under Rules 413 and 414 looks to whether defendant is currently charged with an offense of child

13

molestation or sexual assault, which he is, and whether his prior misconduct consisted of an offense of sexual assault or child molestation, which it did.   Then the Court must decide whether defendant's prior conduct was similar enough to his charged conduct to be relevant, and here, there is no reasonable argument that his conduct was too dissimilar to be relevant: he sought out and obtained sex, particularly oral sex, with underage girls who could not consent, in California in the 1990s, in Cambodia in the 2000s, and with S.L. in 2009.   It is exactly this kind of evidence of prior sexual assaults against minors that Congress intended to make admissible with the passage of the special provisions of Rules 413 and 414.

### 2.   All of Defendant's Victims Were Young Girls or Young-Looking Teenage Girls

Throughout his adult life, defendant has sought out and satisfied his sexual preference for young, small girls.   Thus, it is no surprise that the physical appearances of defendant's victims were similar to charged victim S.L.

The similarities in age and appearance between charged victim S.L. and defendant's three Cambodia victims are obvious: all four victims were physically small Vietnamese children between the ages of approximately 8 and 12, in keeping with defendant's preference of having sex with girls who weighed approximately 33 kilograms, or approximately 73 pounds.   Gov't Exh. H at 1433.

While there is a variation in age between S.L. and defendant's California victims, each of whom was approximately 16 when defendant began raping them, it is a distinction without a

14

difference.  Even in the early 1990s, defendant was already specifically seeking out victims who were young-looking and petite.  See Gov't Exh. C.  For example, he controlled the food California victim K.S. ate, which caused her to drop from 110 pounds to 90 pounds and develop an eating disorder.  Gov't Exh. B at 3.  Despite K.S.'s slight build, defendant told K.S. that she looked fat and needed to run more and eat less.  Id.

Defendant's consistent predation on young, small girls highlights the similar circumstances of all his victims.  From 1991 to 1994, defendant did the best he could to find victims who met his profile; it is simply more difficult to gain access to children for sex in the United States than it is in Cambodia. This did not stop the defendant from trying, however – he became a tutor to high school girls, lied about his age, and cultivated relationships with young-looking teenage girls whom he could manipulate.  After defendant had to register as a sex offender, it became more difficult for him to gain access to children in the United States, and with a sex offense in his past, defendant would find little work as a tutor or in other fields that would grant him access to girls who fit his preferred profile.  So he obtained a passport for the first time in his life, and in 2000, began making the first of forty trips to southeast Asia. Defendant is correct when he notes that the 40-year age difference between him and S.L. is "consistent with classic pedophilic prostitution," Opp. at 46, but the government submits that the only reason the age gap between defendant and his California victims was smaller is that in the 1990s defendant would have had no practical sexual access to girls in California

15

who were younger than high school age.  Even so, it is disingenuous for defendant to act as though he was nothing more than a 19-year-old teenager who happened to have a crush on a 16-year-old, "blonde-haired, blue-eyed beaut[y]" he met in his homeroom class.  Opp. at 46.  He was at least 31 years old and a fully mature adult when he began fostering sexual relationships with his California victims; they were roughly 16.  In California, that is statutory rape.[8]

Defendant ignores this fact, and frames these relationships as consensual conduct with mature women who were "voluntarily having sex with an older man."  Opp. at 48.  But despite the legal impossibility of a 16-year-old in California being able to consent to sex with an adult, and regardless of defendant's attempt to articulate the age difference between his California victims and himself in terms of the relationships between

---

[8] Defendant's California victims could not consent to sexual intercourse with defendant because they were under 18, the age of consent in California:

> Unlawful sexual intercourse is an act of sexual intercourse accomplished with a person who is not the spouse of the perpetrator, if the person is a minor.  For the purposes of this section, a "minor" is a person under the age of 18 years and an "adult" is a person who is at least 18 years of age.

Cal. Penal Code § 261.5.  Likewise, the age of consent for oral copulation in California is also 18:

> Oral copulation is the act of copulating the mouth of one person with the sexual organ or anus of another person. . . . [A]ny person who participates in an act of oral copulation with another person who is under 18 years of age shall be punished by imprisonment in the state prison, or in a county jail for a period of not more than one year.

Cal. Penal Code § 288a(b)(1).

1   grandparents, parents, and children, Opp. at 46, the simple fact

2   is that defendant has consistently demonstrated a desire to have

3   sex with young, small girls.

4        For example, photographs of K.S. from the early 1990s

5   indicate that she was petite and young-looking, <u>see</u> Gov't Exh. C.

6   Likewise, whether V.R. was "a notably precocious and physically

7   attractive young woman" as defendant claims, Opp. at 46, V.R.

8   herself would testify that defendant controlled the amount of

9   food she was allowed to eat and would not allow her to weigh more

10  than 115 pounds, because it was very important to defendant that

11  V.R. remained "lean."  Gov't Exh. J at 4.

**B.    Evidence of Defendant's Prior Sexual Misconduct is Necessary
12      to the Government's Case Because Defendant Will Attack the
13      Credibility of the Witnesses**

14       Defendant suggests that the government has "substantial

15  evidence" to support the charged counts, including the "immense

16  amount of child pornography" recovered from defendant's computer

17  media, defendant's statements in recorded interviews, and travel

18  records.  Opp. at 47.  This is belied by defendant's consistent

19  position throughout this case that the competent evidence of the

20  charged offenses will boil down to the testimony of a single

21  child victim, S.L.  As defendant specifically articulates, Opp.

22  at 47-48, and demonstrates throughout his lengthy opposition, his

23  strategy will be to attack the credibility of S.L. for as long as

24  possible and in as many ways as possible.  But with every passing

25  page of attack on S.L.'s credibility, defendant bolsters the

26  government's necessity for introducing his prior sexual

27  misconduct, because it will become practically necessary for the

28  government to corroborate her testimony:

17

> Th[e necessity] factor also supports the government's
> position and indicates that the district judge did not
> abuse his discretion in admitting the evidence. The
> prosecution's case rested on the testimony of [two child
> victims]. No other scientific, forensic, medical, or
> psychological witness was available. [Defendant] had
> attacked the credibility of the [children] and
> capitalized on the lack of eyewitness and expert
> testimony. . . . Prior acts evidence need not be
> *absolutely necessary* to the prosecution's case in order
> to be introduced; it must simply be helpful or
> *practically necessary*.

LeMay, 260 F.3d at 1029 (emphasis in original).

Thus, perhaps even more than in LeMay, the necessity factor strongly favors the government, because it will be practically necessary for the government to bolster the attacked credibility of a single named child victim. Moreover, as in LeMay, it is the details of defendant's other sexual misconduct that establishes its similarity to the charged conduct, and thus its relevance:

> The relevance of the prior act evidence was in the
> details. . . . [T]estimony [regarding defendant's prior
> misconduct] was necessary to fill in the details that
> made the prior rape conviction relevant. Therefore, the
> 'necessity' factor favors the government in all respects.

LeMay, 260 F.3d at 1029-30.

Thus, like the similarity factor, the necessity factor favors the government. Evidence of defendant's prior misconduct has the potential to be emotionally charged, but in light of defendant's cross-examination strategy, it is practically necessary. For that reason, the prejudicial effect of such evidence does not substantially outweigh its probative value. Accordingly, evidence of defendant's prior sexual abuse in California and Cambodia is necessary and, unless the Court takes the approach proposed by the government herein, should be admitted for any purpose under Rules 403, 404(b), 413, and 414.

18

**C.    The Other <u>LeMay</u> Factors Favor the Government**

Defendant does not, and cannot, raise any serious challenges to the other <u>LeMay</u> factors.  Temporal proximity, frequency, and intervening circumstances all militate in favor of admission.

Defendant's Cambodia victims will testify that he molested them between 2002 and 2006, and the California victims will testify that he assaulted them from 1991 through 1994, all well within the relevant time period, as the government set forth in detail in its motion.  Mot. at 30-32.  Likewise, each victim will testify that defendant repeatedly engaged in illicit sexual contact with them.  <u>Id.</u>

The only possible meaningful intervening circumstance is that after defendant's incarceration on his 1994 California convictions for unlawful sexual intercourse with a minor and oral copulation with a person under 18 years of age, he was on probation as a registered sex offender until 1999 – but as soon as his probation ended, he immediately obtained a passport for the first time and traveled to southeast Asia forty times between 2000 and 2009.  During that period, as his Cambodia victims will testify, he raped them repeatedly.

**D.    Defendant Will Have the Opportunity to Cross-Examine Witnesses at Trial**

Consistently misconstruing the fundamental difference between analysis under Rules 413 and 414 on the one hand, and trial strategy on the other, the bulk of defendant's opposition consists of allegations that the child victims have been improperly coached, that their identifications of defendant were the result of improper lineups, and that their living situations

1  will improperly influence their testimony.  Opp. at 4-48.  These
2  allegations have nothing to do with analyzing the admissibility
3  of defendant's prior sexual misconduct under Rules 413 and 414,
4  and defendant will have ample opportunity at trial to cross-
5  examine all the witnesses about their preparation in this case,
6  their purported biases, and their perceived inconsistencies.

7              **III. Resolution of Defendant's Concerns**

8       Defendant makes a number of requests that neither the Court,
9  nor the government, is required to oblige.  Opp. at 49.
10 Nevertheless, the government offers the following resolutions.

11 **A.   Provision of Documents**

12      The government has produced (or is obtaining translations
13 and will produce) statements in the government's possession,
14 custody, or control that have been given by defendant's Cambodia
15 victims, including K.L.'s statements in the <u>Fahlberg</u> case, and
16 TaP and TyP's statements in the <u>Henning</u> case.

17 **B.   Government References to Defendant's Prior Misconduct**

18      The entire point of Rules 413 and 414 – and the government's
19 motion – is that defendant's prior misconduct is admissible at
20 trial for any purpose.  Accordingly, the resolution of this
21 motion in limine will resolve this issue.  As in all other cases,
22 the government will be limited in its opening statement to
23 setting forth what it anticipates the admissible evidence will
24 show.  If the Court takes the approach proposed by the government
25 in this reply, and orders defendant not to reference the
26 underlying facts of his 1994 conviction, the government will
27 limit references to defendant's California conviction solely to
28 the four corners of the certified conviction documents.

**C.    Interrupting Trial to Conduct a Hearing Regarding the Admissibility of Testimony from the Cambodia Victims**

Defendant's suggestion makes no sense.   The point of litigating the instant motion is to resolve these issues prior to trial.   When the Court rules on this motion, defendant and the government will know whether his Cambodia victims will be permitted to testify.   The government submits that under Rules 413 and 414, their testimony about defendant's prior sexual misconduct against them is admissible for any purpose.   There is simply no need to stop trial to conduct a hearing regarding the subject matter of the very motion the parties are currently litigating.

**D.    Pre-Instructing the Jury Regarding Victim Testimony**

The Court can address any concerns about victim testimony by way of jury instructions, as is the norm in all other cases.

**IV. Other Grounds for Admissibility**

Although defendant failed to address them, the government maintains the arguments it set forth in its original motion. Aside from its admissibility for any purpose under Rules 413 and 414, evidence of defendant's prior sexual misconduct is also admissible as direct evidence in support of Count One of the First Superseding Indictment: Traveling to Cambodia with Intent to Engage in Illicit Sexual Conduct with a Minor Girl, in violation of 18 U.S.C. § 2423(b).   Evidence of defendant's prior sexual misconduct is also separately admissible solely under Rule 404(b), because it demonstrates his intent, identity, knowledge, and modus operandi in committing the charged offenses.   In addition, the government continues to submit that evidence of

1  defendant's rapes of the three minor girls in Cambodia is
2  inextricably intertwined with his charged conduct against S.L.,
3  and is separately admissible on that ground as well.

4  **V. Conclusion**

5      For the foregoing reasons, the government seeks permission
6  to introduce live testimony regarding defendant's prior illicit
7  sexual conduct with minor girls in Cambodia, as well as the
8  certified conviction documents from defendant's 1994 California
9  conviction.  The government will not seek to introduce live
10 testimony from defendant's California victims, provided the Court
11 orders defendant not to reference the facts underlying his 1994
12 conviction.

13 DATED: June 30, 2011            Respectfully submitted,

14                                ANDRÉ BIROTTE JR.
                                   United States Attorney
15
                                   ROBERT E. DUGDALE
16                                 Assistant United States Attorney
                                   Chief, Criminal Division
17

18                                _____/s/_____
                                   PATRICIA A. DONAHUE
19                                 KAREN I. MEYER
                                   DAVID M. HERZOG
20                                 Assistant United States Attorneys

21                                 Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA
22

23

24

25

26

27

28

Government Exhibit K

Date of transcription: 06/06/10
Case Number: US v. Curtis David Fahlberg, BK07QR07BK0002
Interview Reference Number: Disk 2 - 2952756
Transcribed by: Sambo Ly/Camen Alvarez
Revised by: Accent on Languages



**Accent on Languages**
TECHNICAL & BUSINESS TRANSLATORS AND INTERPRETERS

| | | |
|---|---|---|
| SV | *Uh, the first, first thing he do with her just uh, talking.* | |
| PM | Oh. | |
| SV | *Talking with her.* | |
| PM | Okay. | |
| SV | And what else? | |
| LK | After he played with me, he started to have sex with me. | |
| SV | *And then he start sexual intercourse.* | |
| PM | *Okay. When she says sexual intercourse, does that mean that his penis went inside her?* | |
| SV | So when you say you had sex, did he put his genital... do you understand that word? | |
| LK | Yes. | |
| SV | Into your genital, like that? | |
| LK | Yes. | |
| SV | *Yes.* | |
| PM | *Okay. Has she had sexual intercourse before then?* | |
| SV | Did you have sex before you met him... with other people? | |
| LK | Uh... was... not yet. | |
| SV | So that was the first time, right? | |
| LK | Yes, he is the first person who had sex with me. | |
| SV | *Okay. She said this was the first time for her.* | |
| PM | Okay. | |
| SV | Yeah. | |
| PM | *And then what- how long would he have sexual intercourse with her?* | |
| SV | *Oh, the first time?* | |
| PM | The first time. | |
| SV | So he [PM] wants to clarify. The first time, how long was he with you, when he had sex with you, how long? | |
| LK | More than one [1] hour. | |
| SV | *She said more than one [1] hours.* | |
| PM | *Okay. Would he wear a condom when he had intercourse with her?* | |
| SV | He wants to clarify... uh... did he use condom?  Do you understand condom? | |
| LK | Yes, I understand. | |
| SV | Did he use a condom? | |
| LK | No. | |
| SV | *No, he didn't use that.* | |
| PM | *Okay. And when he was having intercourse with her, did she tell him to stop?* | |
| SV | While you were having sex, did you tell him to stop or? | |
| LK | Yes. | |
| SV | *She told him to stop.* | |
| PM | *And what did he do?* | |
| SV | What did he do at that time, after you told him to stop? | |
| LK | He did not stop. | |
| SV | *He still continue.* | |
| PM | *Okay. And then as far as she knows, does she know if he ejaculated inside of her or outside?* | |
| SV | So he [PM] wants to clarify that when he had sex with you, did he have water come out... water, do you understand? | |