UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR09-933 CAS | Date | October 9, 2012 |
|---|---|---|---|

| Present: The Honorable | CHRISTINA A. SNYDER |
|---|---|

| Interpreter | N/A |
|---|---|

| Catherine Jeang | Not Present | David Herzog, Not Present<br>Karen Meyer, Not Present<br>Patricia Donahue, Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Boyajian(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| | | | | RICHARD STEINGARD | NOT | | X |
| | | | | STEPHEN SADOWSKY | NOT | | X |
| RONALD GERALD BOYAJIAN | NOT | | X | SEEMA AHMAD | NOT | | X |

| Proceedings: | **(In Chambers:)** DEFENDANT'S MOTION FOR EVIDENTIARY HEARING RE: SUPPRESSION OF IDENTIFICATION TESTIMONY OF S.L., K.L., TaP, AND TyP (Docket #153, filed February 6, 2012) |
|---|---|

**I.  INTRODUCTION**

Defendant Ronald Gerard Boyajian is charged with one count of Travel with Intent to Engage in Illicit Sexual Conduct with a Minor in violation of 18 U.S.C. § 2423(b), one count of Engaging in Illicit Sexual Conduct with a Minor in Foreign Places in violation of 18 U.S.C. § 2423 (c), and one count of Commission of a Felony Offense Involving a Minor While Required to Register As Sex Offender pursuant to 18 U.S.C. § 2260A. See First Superseding Indictment, Dec. 3, 2010. The charges arise from defendant's alleged illicit sexual acts with a minor girl in Cambodia, identified as S.L.

Further background and facts are known to the parties and set forth in the Court's orders dated November 3, 2011; July 6, 2011; and September 17, 2012. Dkt. Nos. 237, 127, 111.

On February 6, 2012, defendant filed a motion for an evidentiary hearing to consider whether to suppress the identification testimony of S.L., K.L., TaP, and TyP, four minor witnesses. The government opposed the motion on June 29, 2012, and the defendant replied on September 4, 2012. The Court held an evidentiary hearing on the motion on September 7,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

2012, and heard closing arguments on September 11, 2012.  After considering the parties' arguments, the Court finds and concludes as follows.

## II.  BACKGROUND

Defendant seeks to suppress evidence that four minors, S.L., K.L., TaP, and TyP (the "minor witnesses"), identified pictures of defendant and stated that they had sex with him.  Defendant also seeks to suppress in-court identification testimony from these witnesses.

### A.  IDENTIFICATION TESTIMONY OF S.L. AND RELATED FACTS

S.L. is a former Vietnamese child sex worker.  Defendant allegedly engaged in illicit sexual conduct with S.L. in the Svay Pak area of Cambodia between September 2008, and February 2009.  On February 25, 2009, S.L. was interviewed by Immigration and Customs Enforcement ("ICE") Agent Jonathan Ruiz at the American Embassy in Phnom Penh.  This interview was videotaped, and during the interview S.L. picked out defendant's picture from a sixpack photospread .

S.L. had spoken to investigators about defendant on at least two occasions prior to the Februray 25, 2009 interview with ICE.  The first meeting took place on February 20, 2009, the day after defendant's arrest, at the police station in Svay Pak, Cambodia.  S.L. attended this interview with her mother, and both were escorted to the police station by Officer Huo, who was present at the scene of defendant's arrest.  At the police station, S.L. was interviewed by Cambodian National Police officer Lieutenant Colonel Keo Thea.  Lieutenant Colonel Kheav Bunleng was present as well.

During the interview, S.L. identified a picture of defendant from a sixpack photospread and claimed that she had engaged in sexual conduct with him.  Neither Thea nor Bunleng wrote a report about the interview, and the interview was not recorded.  After the initial interview with Thea, Bunleng took S.L. to C Anti-Human Trafficking and Juvenile Police ("AHTJP") offices for an additional interview.

A second February 21, 2009 interview took place in the AHTJP office.  There, S.L. was interviewed by Bunleng, who showed her a six-pack photospread containing defendant's picture.  According to Bunleng, S.L. identified the picture of defendant as "Tok Yei," and said she had engaged in sexual conduct with him.[1]  He then wrote on the photospread that S.L. had identified the picture in position five.

---

[1] The translation of "Tok Yei" is "long hair."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

**B.    IDENTIFICATION TESTIMONY OF K.L. AND RELATED FACTS**

K.L. is also a former child sex worker. She was rescued in Phnom Penh in August 2006. On August 9, 2009, K.L. was interviewed by Agent Ruiz at the American Embassy in Phnom Penh. This interview was videotaped, and during the interview K.L. picked out defendant's picture from a sixpack photospread.

Like S.L., K.L. had been contacted by investigators several times prior to her interview with Agent Ruiz. Investigators first identified K.L. as a potential witness in May 2009, when ICE Agent Suos Vansak provided a sixpack photospread to Hagar International, a non-governmental organization that operates shelters for victims of sexual exploitation and human trafficking, and asked whether any children in Hagar's care recognized anyone in the photospread. Using this photospread, Seung Veasna, a Hagar counselor, interviewed K.L. to determine whether she recognized anyone in the photospread. Ms. Veasna did not know the defendant's identity at the time of the interview, and explains in detail how she conducted this interview:

> I met with the girl alone. I did not take the photospread out of the envelope right away. I spoke to the girl first. I told her that I had something to show her. I told her that there were photographs on the piece of paper that I was going to show her. I did not tell her how many photographs were on the paper. I told her that it was okay if she did not know anyone in the photographs. I pulled the six-pack photospread out of the envelope. I put the six-pack photospread face down on the table. I asked her if she had any questions. I asked her if she was ready to view it. I turned over the six-pack photospread. I did not tell any girl the identity of any of the men in the six-pack photospread . . . . I did not point to any of the photographs in the six-pack photospread.

Seung Veasna Decl. ¶ 4. During the interview, K.L. identified the picture of defendant and said that she had slept with him. Ms. Veasna does not recall the date this interview took place.
On July 16, 2009, Department of Homeland Security Special Agent Nguyen and Agent Vansak traveled to the site of Hagar's facility to confirm that K.L. had identified a picture from the photospread. Agents Nguyen and Vansak met with Ms. Veasna and Susan Taylor, a Hagar manger, to show K.L. the photospread. Again, K.L. identified the picture of defendant.

K.L. was also interviewed by Action Pour Les Enfants ("APLE"), a non-governmental organization that works to prevent child sex trafficking, and Cambodian National Police, on July 21, 2009. During the interview with Cambodian National Police, K.L. was again shown the sixpack photospread, and again identified the picture of defendant and said she had slept

with him. During the interview with APLE, someone showed K.L. a single photograph of defendant and asked her if she recognized the person in the photograph. She replied that she recognized the person in the photograph as "John," who is the defendant in this case.

### C.   IDENTIFICATION TESTIMONY OF TaP AND TyP AND RELATED FACTS

TaP and TyP are also former child sex workers. They are biological sisters, and were in Hagar's care in 2009, where had been for approximately three years. Like the other witnesses, TaP and TyP were separately interviewed by Agent Ruiz at the American Embassy in Phnom Penh. Their interviews were videotaped, and during the interview both witnesses picked out defendant's picture from a sixpack photospread.[2]

Like K.L., TaP and TyP were identified as potential witnesses on or about May 2009, while they were in Hagar's care. Seung Veasna, the same Hagar counselor who interviewed K.L., conducted separate interviews with TaP and TyP to determine whether they could identify anyone in the sixpack photospread provided by Agent Vansak. Veasna conducted these interviews in the same manner as described above. During the interviews, TaP and TyP identified defendant's picture and stated that they had slept with him.

TaP and TyP were interviewed again when Agent Nguyen traveled to Hagar's facility to confirm that they had identified defendant's picture. Agent Nguyen separately interviewed TaP and TyP and showed them the sixpack photospread. Each girl identified the picture of defendant and stated that she had slept with him.

TaP and TyP were also interviewed by Cambodian National Police and APLE attorneys on July 21, 2009. During the interviews with Cambodian National Police, TaP and TyP again identified the picture of defendant from the sixpack photospread. Additionally, TaP was shown an individual picture of defendant during her interview.

---

[2] The date of this interview is unclear. According to defendant's exhibit DD, the interview took place on August 6, 2010. The government's briefing, however, states that the interviews occurred in August 2009. In any event, the exact date of the interview is not a material fact for purposes of this motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

## III.  LEGAL STANDARD

The law requires a two step analysis to determine whether to suppress a witness' identification testimony.  First, under Perry v. New Hampshire, 132 S.Ct. 716 (2012), the Court determines whether the identification was the product of impermissibly suggestive circumstances arranged by law enforcement.  Perry, 132 S.Ct. at 730 ("the Due Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement.").  Then, if the Court finds that the identification procedure was impermissibly suggestive, the Court determines whether the testimony was in any event reliable.  United States v. Givens, 767 F.2d 574, 581 (9th Cir. 1985).  The factors to consider when judging reliability are set out in Neil v. Bigger, 409 U.S. 188 (1972): "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."  Biggers, 409 U.S. at 199 – 200.

## IV.  ANALYSIS

### A.  DEFENDANT HAS FAILED TO ESTABLISH THAT LAW ENFORCEMENT AGENTS USED SUGGESTIVE TECHNIQUES WHEN INTERVIEWING THE MINOR WITNESSES.

Defendant does not argue that suggestive techniques were used during the videotaped interviews with ICE agent Jonathan Ruiz.  Instead, defendant argues that suggestive techniques were employed prior to this interview, and that the use of these techniques tainted subsequent identifications. Defendant presents two kinds of evidence in support of this argument: circumstantial evidence and expert testimony.

#### 1.  CIRCUMSTANTIAL EVIDENCE

The Court first considers defendant's circumstantial evidence.  Defendant argues that this evidence establishes that law enforcement investigators had the opportunity to use suggestive techniques with the minor witnesses in a series of interviews and other interactions that took place prior to the videotaped identifications.  Defendant infers that law enforcement likely used

suggestive techniques because these interviews were not recorded, and Cambodian National Police and other investigators had individual photographs of defendant in their possession.[3]

The government responded to defendant's circumstantial evidence by producing testimony from five witnesses who were present at the unrecorded interviews with the minors. Their testimony sets out the procedures that were used during the interviews and explains that no suggestive techniques were used during the initial interviews with the witnesses. Though the government admits that two of the minor witnesses – K.L. and TaP – were shown single photographs of defendant during interviews with law enforcement, the government argues that this is not relevant because each witness had picked out defendant's photo from a sixpack photospread long before they were shown single pictures of defendant.

The Court finds that defendant's circumstantial evidence fails to show that law enforcement officers used suggestive techniques. Testimony from witnesses to the identifications consistently and credibly shows that no suggestive techniques were used during those interviews, and without any evidence to contradict this testimony, the only reasonable conclusion is that defendant has not made the required showing of suggestiveness.

    2.    EXPERT TESTIMONY

The Court next considers defendant's expert witnesses, Dr. Michael Paul Maloney, Professor Emmanuel Dialma, Dr. Mitchell Eisen, and attorney Dun Vibol. These witnesses offer testimony to the effect that: (1) the minor witnesses are especially susceptible to suggestive techniques due to their age and socio-cultural status, (2) the minor witnesses' testimony appears practiced, and (3) the Cambodian National Police generally use suggestive techniques when interviewing child witnesses. The Court finds that this evidence does not establish that law enforcement used suggestive techniques when interviewing the minor witnesses.

    a.    **Testimony of Dr. Michael Paul Maloney**

Dr. Maloney testifies that the child witnesses' testimony and identification of defendant during the videotaped interviews in 2009 and 2010 are not reliable and are likely the product of

---

[3] Defendant also argues that the minor witnesses at Hagar may have influenced each other to claim that defendant sexually abused them. Regardless of whether this is accurate, the relevant inquiry is whether law enforcement officers used suggestive techniques, not whether the witnesses were subject to influence from other sources.

suggestion, memorization, preparation, or practice. Dr. Maloney reached this conclusion based on the general background information set out in section II above and his observations of the videotape recordings of the child witnesses' interviews.

Dr. Maloney states that S.L.'s testimony and identification was not reliable because she appeared confused during the interview and unable to provide a general narrative. He states that her responses to direct questions appear practiced. He concludes that because she was previously interviewed about defendant's identity and misconduct, there is an "insufficient basis to conclude that any of S.L.'s statement[s] are a clear indication of her spontaenous recall." Maloney Decl. ¶ 6.

Dr. Maloney states that K.L.'s testimony appears rote and memorized, and that her recollection of abuse from seven years ago is "unreasonably detailed." He also notes that her memory has "short latency," which is the time it takes an individual to respond to detailed factual questions. Additionally, he states that K.L. does not reflect stress or anxiety during the interview, which is "consistent" with being "desensitized with multiple previous interviews/discussions/practice session[s]." Maloney Decl. ¶ 7. He concludes that K.L. had reported on these events at some time prior to the interview, and that she may be reporting what she recalls about abusers other than defendant or may be reporting material suggested to her during other interviews.

Dr. Maloney concludes that TyP had prepared for the interview because she discusses her sexual conduct with defendant after she is asked a general question about "what happened." He testifies that this indicates preparation because the question did not mention defendant, sex, or any specific topic. He also states that her detailed response concerning events that took place five years prior to the interview makes her testimony unreliable and likely the product of preparation.

Dr. Maloney's testimony about TaP is similar. He opines her testimony appears to be the product of rote memorization, and that he believes her response was practiced because she provides a detailed narrative account of sex with defendant in response to an interviewer stating "you can start and I will listen." Again, he opines that this indicates preparation because the interviewer gave an open ended command to start, and did not mention sex or any specific topic.

The government responds that Dr. Maloney's testimony is not relevant because it focuses on the child witnesses' statements, not their photospread identification of defendant in either the recorded interview or the previous interview.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

The Court finds that Dr. Maloney's testimony does not establish that suggestive procedures were used. While Dr. Maloney's testimony establishes that the witnesses had spoken about defendant before the videotaped interviews, it does not provide reason to believe that suggestive techniques were used during these encounters, nor in securing the multiple identifications of defendant.

### b.     Testimony of Professor Emmanuel Dialma

Professor Dialma's testimony provides general socio-cultural information about Cambodian society and child prostitutes in Cambodia. He states that he has not reviewed any materials from this case, and has not interviewed the victims. His testimony is based on his experience and general academic research.

The main point of Professor Dialma's testimony is that child sex workers are especially vulnerable to suggestive techniques, and that they have a general disposition to be untruthful. He testifies that Vietnamese child prostitutes are the most powerless people in Cambodian society, and live a lifestyle of lying about what they do and lying to satisfy clients. Additionally, he states that in Cambodian society it is impolite to say "no" in response to a question, and that "yes" is not considered a lie even when the person giving an answer does not know the answer to a question.

He states that child sex workers are taught to fulfill the expectations of adults and authority figures, and can be easily led by police to answer questions in a desired way through leading questions. He also asserts that the Cambodian police do not care about accuracy, and instead that their main goal is "to deliver results for the U.S. government." Dialma Decl. ¶ 12.

The government responds that this testimony is not relevant because it provides no reason to believe that law enforcement used suggestive procedures in this case.

The Court finds that this testimony fails to establish that law enforcement used suggestive techniques when interviewing the minor witnesses. At best, this testimony shows that suggestive techniques would have been effective if they were used, not that they were actually used.

### c.     Testimony of Dr. Mitchell Eisen

Dr. Eisen's testimony sets out general reasons why identifications made by children can be unreliable and why children are especially susceptible to suggestive techniques. He states that children are more likely than adults to give a false positive identification in a lineup, that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CRIMINAL MINUTES - GENERAL**

children are more suggestible than adults, and that suggestive techniques can lead children to accept false information.

Dr. Eisen also opines more generally on issues related to identification testimony. He explains that false positive identifications are less likely if witnesses are instructed that the suspect may not be present in the lineup. Additionally, he explains the theories of administrator bias and carry-over effects. According to Dr. Eisen, the theory of administrator bias states that an individual administering a line-up or similar test can inadvertently influence the result of that test through subtle cues just by knowing the 'right' answer. The theory of carry-over effects states that participation in multiple identification procedures reduces the accuracy of an eyewitness identification. Applied in this case, Dr. Eisen states that the theory of carry-over effects implies that if the minor witnesses identified Boyajian as a sex offender in an initial interview, they would continue identifying him as such in subsequent interviews. Finally, Dr. Eisen opines that cross-racial identifications are generally less accurate than intra-race identifications.

The government responds that this testimony, like the testimony of Professor Dialma, does not address whether suggestive procedures were actually used in this case, but only states that they would have been effective if they were in fact used.

The Court agrees, and finds that this testimony does not establish that law enforcement used suggestive techniques in this case.

### d. Testimony of Mr. Dun Vibol

Mr. Vibol is a Cambodian defense attorney whose clients include over fifty individuals accused of child sex crimes. His testimony describes what he believes to be the general interrogation and investigation practice of the Cambodian police.

According to Vibol, Cambodian police never use line-up techniques, and it is their standard practice to suggest or indicate suspects to child victims, who then confirm the police officer's suspicions. Vibol states that the police only use photographs when they are asking a victim to confirm the identity of a suspect. He also states that police intentionally do not make video or audio records of interviews in order to hide what they do during interviews.

In response, the government argues that Vibol is biased and notes that he is not discussing facts about this particular case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

The Court finds that Vibol's testimony fails to establish that the officers conducting the interviews in this case used suggestive techniques. Putting aside any bias, this testimony at best describes a general trend in how the Cambodian National Police conduct investigations, and therefore does not show that suggestive techniques were used in the specific interviews at issue in this case.

> B. **THE COURT NEED NOT HOLD AN ADDITIONAL PRETRIAL HEARING TO CONSIDER TESTIMONY FROM THE MINOR WITNESSES ADDRESSING THE USE OF IMPERMISSIBLY SUGGESTIVE TECHNIQUES.**

Defendant argues that the Court should hold another hearing to hear testimony by the minor witnesses regarding their perception of the interviews conducted by law enforcement. According to defendant, the record is not complete without the testimony of these witnesses because, among other reasons, these witnesses' subjective experience of the suggestiveness of the techniques used is relevant evidence.

While holding a pretrial hearing to determine the admissibility of identification testimony "may often be advisable," the Supreme Court has made it clear that there is no constitutional requirement that a trial court hold a such a hearing whenever one is requested by the defendant. Watkins v. Sowder, 449 U.S. 341, 349 (1981). Although the Supreme Court in Watkins cursorily stated that a pretrial hearing on the admissibility of identification evidence may be necessary in some circumstances, it did not specify what those circumstances are, and lower courts have been reluctant to find that such hearings are required. See United States v. Mills, 704 F.2d 1553, 1563 – 1564 (11th Cir. 1983) (no special circumstances show that a hearing outside the jury's presence is constitutionally necessary); United States v. Davenport, 753 F.2d 1460, 1462 (9th Cir. 1985) (same); United States v. Muse, 83 F.3d 672, 675 (4th Cir. 1996) (same); Dunnigan v. Keane, 137 F.3d 117, 128 – 129 (2d Cir. 1998) (same); United States v. Brown, 441 F.3d 1330, 1350 (11th Cir. 2006) (same); United States v. Daily, 488 F.3d 796, 802 – 803 (8th Cir. 2007) (same). Barring exceptional circumstances, the decision to conduct a further pretrial hearing to consider testimony from the identifying witnesses is left to the discretion of the Court. See, e.g., Mills, 704 at 1564.

Courts have considered whether identifying witnesses must always testify at suppression hearings and have concluded that "[t]here may be situations where it is either impracticable, unnecessary, or otherwise unreasonable for the identifying witness to appear as a witness." People v. Smith, 362 Ill. App. 3d 1062, 1076 (Ill. Ct. App. 2005). In People v. Gant, for instance, the court found that the identifying witnesses should not be compelled to appear at a pretrial suppression hearing because the detective who elicited the identification of defendant

testified at the hearing about the procedures used to procure the identification. People v. Gant, 809 N.Y.S. 2d 584, 585 – 586 (N.Y. Sup. Ct. App. Div. 2006). Additionally, in United v. Jones, the district court held that a pretrial hearing including testimony from identifying witnesses was not necessary because, among other things, compelling the identifying witnesses to confront the defendant twice would compound the trauma the witnesses already experienced from the underlying crime. United States v. Jones, 261 F. Supp. 2d 40, 46 (D. Mass. 2003).

Weighing the defendant's interest in resolving the admissibility of evidence before trial against the interest in not burdening the identifying witnesses by compelling them to appear at a potentially traumatic hearing, the Court finds that no further hearing is warranted on these facts. The Court has already heard testimony from the investigators who interviewed the identifying witnesses, and their testimony did not support the conclusion that suggestive techniques were used. Therefore, defendant's contention that the identifications were procured under improper circumstances is, at this point, speculative at best. See Gant, 809 N.Y.S. 2d at 585 – 586. Moreover, compelling the identifying witnesses to appear both at trial and at a pretrial hearing could exacerbate the trauma the witnesses have already suffered by forcing them to confront defendant an additional time. Jones, 261 F. Supp. 2d at 46 (D. Mass. 2003). The potential harm to the identifying witnesses provides a particularly "compelling reason" to not allow defendant to call them at a pretrial hearing. Smith, 362 Ill. App. 3d 1062 at 1076.

Defendant cites United States v. Williams, 592 F.2d 1277 (5th Cir. 1979), in support of his argument that a pretrial hearing including the identifying witnesses is required. In Williams, a bank robbery case, the defendant argued that a pretrial photospread identification and line-up were impermissibly suggestive. Id. at 1280 – 1281. At a pretrial suppression hearing on these issues, the trial court did not allow defendant to present witnesses, and instead only heard testimony from the government's witnesses. Id. At trial, the defendant presented new evidence that the photospread identification involved suggestive techniques, but the trial court did not re-examine its finding in light of the new evidence. Id. On appeal, the Fifth Circuit found that it was error for the trial court to make a determination based solely on the government's witnesses and fail to revisit this determination after additional relevant evidence was presented at trial.

Here, although the Court will not permit the minor witnesses to be examined before trial, the final resolution of the question whether impermissibly suggestive techniques were used to elicit the identifications of defendant will be made on the complete record at trial. If, during trial, testimony from the minor witnesses tends to show that the identifications were impermissibly suggestive, the Court may revisit the decision set out in this order and issue either curative instructions or other necessary orders.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

## V. CONCLUSION

For the reasons discussed above, defendant's motion for an evidentiary hearing to assess the reliability of minor witnesses is hereby DENIED.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Deputy Clerk | | CMJ | |