1  RONALD GERARD BOYAJIAN
   Register number 33900-112
2  Metropolitan Detention Center
   P.O. Box 1500
3  Los Angeles, CA 90053
4
5  In *Pro Per*
6
7              UNITED STATES DISTRICT COURT
8              CENTRAL DISTRICT OF CALIFORNIA
9
   UNITED STATES OF AMERICA,        )  Case No.: CR-09-00933-CAS
10                                   )
          Plaintiff,                 )  DEFENDANT'S PRO SE MOTION
11                                   )  FOR HEARING TO ADDRESS
                                     )  COUNSEL ISSUES INCLUDING
12                                   )  ADJUDICATION OF ATTORNEY
   vs.                               )  FEES
13                                   )
                                     )
14                                   )
                                     )
15 RONALD GERARD BOYAJIAN,           )  Courtroom: Honorable Christina A. Snyder
                                     )  Hearing Date: none
16        Defendant.                 )  Trial Date: Jan. 20, 2015
                                     )
17                                   )
18 INTRODUCTION
19        Ronald Boyajian is the Defendant is this case *US v Boyajian*, who in *pro*
20 *per*, moves the Court to address the attorney fee dispute on the merits pursuant to
21 its authority to avert a miscarriage of justice and in view of new factual and legal
22 predicates. On August 26, 2014 Defendant filed his  Pro Se Motion For A
23 Hearing To Determine Status Of Defendant's Right To Effective Assistance Of
24 Counsel: And Objections To Abandonment By All Assigned Counsels;
25 Declaration Of Ronald Boyajian (dkt#602). On August 11, 2014 the Court of
26 Appeal issued its opinion in *K.C. v Torlakson*, [Exhibit A.] *a* ruling that supports
27 the view that a district court properly has ancillary jurisdiction over attorney fee
28 issues in civil rights and other federal cases.

                              1

Accordingly, defendant renews his prior request for adjudication of his attorney fee issues[1] in view of his continuing desire and need for completing his retainer of defense team as his counsel of choice as guaranteed by the Sixth Amendment through *U.S. v Gonzalez-Lopez* 548 US 140 (2006).

DISCUSSION

**A. NEW FACTUAL PREDICATE**

This motion is being presented in view of the apparent abandonment of defendant by federal defender and or actions that have resulted in the rupture of attorney client communications and in a lack of a legally required attorney client relationship. Therefore defendant needs a remedy on this longstanding unadjudicated problem of his attorney fees.

**B. NEWLY DISCOVERED INADVERTENCE OF THE COURT**

In spring 2013 defendant made a showing he needed and desired to exercise his right to counsel of choice, through presentations in court by prospective counsels of choice, and asked the Court to release the unearned portion of fees from the Lightfoot firm to accomplish substitution of counsel which the Court was then permitting. Instead of addressing the attorney fee issue, on May 14, 2013 the Court relieved the Lightfoot firm and appointed the federal defender.

Federal defender refused its assistance[2] on the attorney fee issue although grounded on Sixth Amendment right to counsel of choice, thus Defendant

---

[1] The Court is aware that former counsel Lightfoot, Steingard, and Sadowsky LLP (hereinafter the Lightfoot firm), which the Court permitted to withdraw from the defense of the case and of the trial of it as well refused to refund the unearned portion of advance payments it received.

[2] Defendant contends that appointed counsel arguably has herein *some* duty to client under the Criminal Justice Act, per 18 U.S. Code § 3006A - Adequate representation of defendants; section (c) Duration and Substitution of Appointments.— A person for whom counsel is appointed **shall be represented at every stage of the proceedings** from his initial appearance before the United States magistrate judge or the court through appeal, **including ancillary matters appropriate to the proceedings.** (emphasis added)

proceeded involuntarily in pro se filing on May 22, 2013 his pleading (CR 417 Motion For Release Of Funds) again urging the Court to refund the unearned portion of the Lightfoot fee so he could vindicate his right to counsel of choice (*and objecting to the appointment of federal defender*).

The Court ruled from chambers on June 10, 2013 denying "**this unusual course of action**" because "**there appears to be no basis on which a federal court would exercise jurisdiction over defendant's claim**." [Exhibit B, CR 421 Criminal Minutes June 10, 2013]

However, in colloquy on August 4, 2014 the Court stated its ruling that the federal court lacks jurisdiction to address the attorney fee matter was not based on any factual or legal analyses [Exhibit C, Reporter's transcript August 4, 2014]:

> Court:  **...no one has ever ruled that the United States District Court generally doesn't have jurisdiction to monitor fee agreements one way or the other. I don't think we have a decision of this court regarding jurisdiction to decide whether fees should be returned or not returned, but I haven't done any research.**
>
> **I don't know the answer. I don't know what's been done out there. The only thing I know is that I personally determined in this case that there was no jurisdiction in this court to require that the Lightfoot fee be returned.** [p8 ln 11-20]
>
> ...
>
> **But all that said, it seems to me the proper course of action right now is for you to get a determination from the circuit. If the circuit thinks that I am incorrect and that in fact that I should resolve this fee dispute then**

3

1  they'll send it back to me, that's what I'll do and, you
2  know, we'll see where we are then. But right now I am
3  sitting in equipoise because this issue is up in the
4  circuit and I can't properly resolve it until they tell me
5  one way or the other what their position is. [p13 ln 23-
6  p14 ln 6]

7

8  **C. INTERVENING CLARIFICATION OF THE LAW**

9  On August 11, 2014, the Court of Appeal published its opinion in *K.C. v*
10  *Torlakson,* a ruling that supports the view that a district court does have ancillary
11  jurisdiction over attorney fee issues in civil rights and other federal cases:

12

13  There is no debate that a federal court properly may
14  exercise ancillary jurisdiction "over attorney fee disputes
15  collateral to the underlying litigation." (citations omitted).

16

17  *Torlakson* indicates this Court is empowered to adjudicate the attorney fee issue.

18

19  CONCLUSION
20  Defendant requests the Court vacate prior rulings that have found that there is no
21  jurisdiction to determine the attorney fee issues, and give defendant the ability to
22  litigate the attorney fee issues and to obtain whatever remedies are appropriate.

23

24  Date: August 28, 2014.                    Respectfully Submitted,

25

26

27                                             Ronald Boyajian
28                                             Defendant, in Pro Per

4

# EXHIBIT A

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| K.C., by and through Erica C., her guardian; A.A., by and through Stacey A., her guardian; M.C., by and through Laurie C., her guardian; K.F., by and through Sheree F., her guardian; AMERICAN DIABETES ASSOCIATION,<br><br>*Plaintiffs-Appellants,*<br><br>v.<br><br>TOM TORLAKSON, in his official capacity as Superintendent of Public Instruction for the State of California,<br><br>*Defendant-Appellee.* | No. 12-16178<br><br>D.C. No.<br>3:05-cv-04077-MMC<br><br>OPINION |

Appeal from the United States District Court
for the Northern District of California
Maxine M. Chesney, Senior District Judge, Presiding

Argued and Submitted
April 10, 2014—San Francisco, California

Filed August 11, 2014

Before: John T. Noonan, Jacqueline H. Nguyen,
and Paul J. Watford, Circuit Judges.

Opinion by Judge Nguyen

2                K.C. v. Torlakson

# SUMMARY*

## Ancillary Jurisdiction / Attorneys' Fees

The panel reversed the district court's denial, for lack of jurisdiction, of plaintiffs' motion for attorneys' fees for monitoring defendants' compliance with a settlement agreement in an action under the Americans with Disabilities Act and other statutes concerning services for students with diabetes in California public schools.

The district court retained limited jurisdiction to enforce the settlement agreement. Plaintiffs sought attorneys' fees after the court's jurisdiction to enforce the settlement agreement had expired under the terms of that agreement. The panel held that the motion for attorneys' fees did not seek to enforce the settlement agreement; consequently, the conclusion that the district court lacked ancillary jurisdiction to enforce the settlement agreement was irrelevant. The panel also held that the district court independently had ancillary jurisdiction over the post-judgment attorneys' fees dispute, irrespective of the fact that the court's jurisdiction to enforce the settlement agreement had expired. The panel remanded for the district court in its discretion to decide whether to exercise ancillary jurisdiction over the motion for attorneys' fees.

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Donna Brorby (argued), Law Office of Donna Brorby, San Francisco, California; Arlene B. Mayerson, Larisa M. Cummings and Charlotte L. Lanvers, Disability Rights Education and Defense Fund, Inc., Berkeley, California, for Plaintiffs-Appellants.

Paul E. Lacy (argued), Deputy General Counsel, Amy Bisson Holloway, General Counsel, Edmundo Aguilar, Assistant General Counsel, and Ava C. Yajima, Deputy General Counsel, California Department of Education, Sacramento, California, for Defendants-Appellees.

## OPINION

NGUYEN, Circuit Judge:

The common-law doctrine of ancillary jurisdiction over related *claims*, codified as part of a federal court's supplemental jurisdiction under 28 U.S.C. § 1367, is generally well understood.  Yet, as the Supreme Court observed, the "doctrine of ancillary jurisdiction can hardly be criticized for being overly rigid or precise," because the more obscure doctrine of ancillary jurisdiction over collateral *proceedings* remains a matter of case law.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379 (1994); *see* 13 Charles Alan Wright et al., Federal Practice & Procedure § 3523 (3d ed.).    The present appeal involves the latter—ancillary jurisdiction over *proceedings* related to, but technically separate from, a federal lawsuit.  Under this doctrine, a federal court may exercise ancillary jurisdiction over collateral proceedings in two distinct contexts that are

relevant here: to enforce a settlement agreement, and to resolve an attorney's fees dispute.

Four juvenile plaintiffs, by and through their respective guardians, and the American Diabetes Association (collectively, "Plaintiffs") filed a putative class action against Jack O'Connell, in his official capacity as Superintendent of Public Instruction for the State of California,[1] the State Board of Education and the California Department of Education (collectively, "Defendants"). The parties eventually settled, and the district court retained limited jurisdiction to enforce their settlement agreement. After the court's jurisdiction to enforce the settlement agreement had expired under the terms of that agreement, Plaintiffs filed a motion seeking attorneys' fees for monitoring Defendants' compliance with the agreement. The district court denied the motion for lack of jurisdiction on the ground that its jurisdiction to enforce the settlement agreement had expired.

On appeal, Plaintiffs' argument is two-fold. First, they argue that their motion for attorneys' fees does not seek to enforce the settlement agreement. Consequently, the conclusion that the district court lacks ancillary jurisdiction to enforce the settlement agreement is irrelevant. Second, they argue that the district court independently has ancillary jurisdiction over a post-judgment attorneys' fees dispute, irrespective of the fact that the court's jurisdiction to enforce the settlement agreement has expired. We agree. Therefore, we reverse and remand.

---

[1] Tom Torlakson subsequently replaced Jack O'Connell as superintendent.

## BACKGROUND

In October 2005, Plaintiffs filed a putative class action alleging that Defendants failed to provide necessary services for students with diabetes in California public schools. Plaintiffs alleged violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq., Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, and the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq.

In July 2007, the parties entered into a settlement agreement, resolving Plaintiffs' claims (the "Settlement Agreement"). On August 8, 2007, "pursuant to the settlement agreement between the parties, the terms of which [we]re expressly incorporated [t]herein," the district court entered an order of dismissal with prejudice. Under the Settlement Agreement, Plaintiffs' attorneys were awarded $400,000 in fees.[2]

Under paragraph 14 of the Settlement Agreement, the district court retained jurisdiction for two and one-half years from the effective date of the Settlement Agreement, "solely to rule on any motion filed pursuant either to Paragraph 1.b. or to Paragraph 10, of [the Settlement Agreement]." The district court found that the "effective date" of the Settlement Agreement was July 24, 2007.

On November 18, 2011, almost two years after the district court's jurisdiction to enforce the Settlement Agreement had

---

[2] Separately, Plaintiffs' pro bono co-counsel were awarded $30,000 in costs, waiving a claim for potential attorneys' fees in excess of $1,800,000.

expired, Plaintiffs filed a motion for an additional $288,627.41 in attorneys' fees, pursuant to the ADA, 42 U.S.C. § 12205, Section 504, 29 U.S.C. § 794a(b), and the IDEA, 20 U.S.C. § 1415(i)(3)(B), "for their work monitoring implementation of the settlement with the California Department of Education in this matter."

On April 20, 2012, the district court denied Plaintiffs' motion for lack of jurisdiction. The court ruled that the Settlement Agreement limited the "time within which the Court may entertain a motion for such fees," and that the time had expired. On May 15, 2012, Plaintiffs timely appealed.

## JURISDICTION

The district court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. *Cf. Balla v. Idaho*, 677 F.3d 910, 915 (9th Cir. 2012) ("Periodic fee awards for monitoring compliance with a final judgment are appealable [under Section 1291] if the award disposes of the attorneys' fee issue for the work performed during the time period covered by the award.").

## STANDARDS OF REVIEW

"A district court's decision to deny attorney's fees is reviewed for an abuse of discretion." *United States v. One 1997 Toyota Land Cruiser*, 248 F.3d 899, 903 (9th Cir. 2001). "An abuse of discretion occurs if the district court based its decision on an erroneous legal conclusion or a clearly erroneous finding of fact." *Andrew v. Bowen*, 837 F.2d 875, 877 (9th Cir. 1988). "Any elements of legal analysis and statutory interpretation that figure in the district court's attorneys' fees decision are reviewed de novo." *Barrios v.*

*Cal. Interscholastic Fed'n*, 277 F.3d 1128, 1133 (9th Cir. 2002). Here, "[t]he existence of subject matter jurisdiction is a question of law that we review de novo." *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 944 (9th Cir. 2009).

## DISCUSSION

### I

The "doctrine of ancillary jurisdiction . . . recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." *Kokkonen*, 511 U.S. at 378. Broadly speaking, federal courts exercise ancillary jurisdiction "for two separate, though sometimes related, purposes: (1) to permit disposition by a single court of *claims* that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its *proceedings*, vindicate its authority, and effectuate its decrees." *Id.* at 379–80 (emphases added).

The first and well-known purpose—ancillary jurisdiction over factually interdependent claims—is codified as part of 28 U.S.C. § 1367. *See Peacock v. Thomas*, 516 U.S. 349, 354 n.5 (1996) ("Congress codified much of the common-law doctrine of ancillary jurisdiction as part of 'supplemental jurisdiction' in 28 U.S.C. § 1367."). That purpose, however, is not relevant here.

This case instead involves the second, less common purpose—ancillary jurisdiction over collateral proceedings. *Nat'l City Mortgage Co. v. Stephen*, 647 F.3d 78, 85 (3d Cir. 2011) ("Ancillary jurisdiction is a common law doctrine that

K.C. V. TORLAKSON

survived the codification of supplemental jurisdiction in 28 U.S.C. § 1367."); *see* 13 Charles Alan Wright et al., Federal Practice & Procedure § 3523.2 (3d ed.) (differentiating "supplemental jurisdiction over *claims* asserted in federal court" from "jurisdiction over related *proceedings* that are technically separate from the initial case that invoked federal subject matter jurisdiction" (emphasis in original)).

As the Tenth Circuit has explained, this less common exercise of non-statutory ancillary jurisdiction "rests on the premise that a federal court acquires jurisdiction of a case or controversy in its entirety. Incident to the disposition of the principal issues before it, a court may decide collateral matters necessary to render complete justice." *Jenkins v. Weinshienk*, 670 F.2d 915, 918 (10th Cir. 1982).

In particular, this appeal turns on the distinction between a court's ancillary jurisdiction to enforce a settlement agreement and its ancillary jurisdiction over collateral matters such as an attorney's fees dispute.

## II

### A

We first address a court's authority to enforce settlement agreements. Federal courts "have no inherent power to enforce settlement agreements entered into by parties litigating before them." *Arata v. Nu Skin Int'l, Inc.*, 96 F.3d 1265, 1268 (9th Cir. 1996) (citing *Kokkonen*, 511 U.S. at 378). Rather, courts have ancillary jurisdiction to enforce a settlement agreement only "if the parties' obligation to comply with the terms of the settlement agreement ha[s] been

made part of the order of dismissal—either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." *Kokkonen*, 511 U.S. at 381.

In the event the settlement agreement is breached, the court would have ancillary jurisdiction that arises from breach of the court's dismissal order. *Id.; see also Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008, 1017 (9th Cir. 2007) (stating that where "the dismissal order incorporates the settlement terms, or the court has retained jurisdiction over the settlement contract . . . . the party seeking enforcement of the settlement agreement must allege a violation of the settlement agreement in order to establish ancillary jurisdiction" (citing *Kokkonen*, 511 U.S. at 381–82, and *O'Connor v. Colvin*, 70 F.3d 530, 532 (9th Cir. 1995)).

## B

In this case, there is no dispute that the terms of the parties' Settlement Agreement "had been made part of the order of dismissal . . . by incorporating the terms of the settlement agreement in the order." *Kokkonen*, 511 U.S. at 381. Further, the district court specifically retained jurisdiction over the Settlement Agreement. Consequently, any breach of the Settlement Agreement "would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist." *Id.*

As the district court noted, the Settlement Agreement, and the court's order incorporating its terms, "limit[ed] the Court's exercise of that jurisdiction in both time and manner." The district court retained jurisdiction for two and

one-half years from the effective date of the Settlement Agreement—that is, until January 24, 2010—"solely to rule on any motion filed pursuant either to Paragraph 1.b. or to Paragraph 10, of [the Settlement Agreement]." Because Plaintiffs' motion for attorneys' fees was filed well after that date, and was not filed pursuant to either Paragraph 1.b. or Paragraph 10, the district court correctly concluded that it has no ancillary jurisdiction to enforce the parties' Settlement Agreement.

### III

That conclusion, however, does not end the matter. The dispositive question is whether the court nevertheless has ancillary jurisdiction over Plaintiffs' motion for attorneys' fees, even though it no longer has jurisdiction to enforce the Settlement Agreement. To answer that question, we turn to the case law regarding ancillary jurisdiction over a post-judgment attorney's fees dispute.

### A

### 1

There is no debate that a federal court properly may exercise ancillary jurisdiction "over attorney fee disputes collateral to the underlying litigation." *Fed. Sav. & Loan Ins. Corp. v. Ferrante*, 364 F.3d 1037, 1041 (9th Cir. 2004) (citing cases); *White v. N.H. Dep't of Employment Sec.*, 455 U.S. 445, 454 (1982) (discussing postjudgment motion in which the plaintiff sought attorney's fees, as the prevailing party under 42 U.S.C. § 1988, four and one-half months after the parties had signed a settlement agreement and the district court had approved a consent decree); *Sprague v. Ticonic*

*Nat'l Bank*, 307 U.S. 161, 164 (1939) ("Allowance of such costs in appropriate situations is part of the historic equity jurisdiction of the federal courts."); *Schmidt v. Zazzara*, 544 F.2d 412, 414 (9th Cir. 1976) (quoting *Sprague*, 307 U.S. at 164); Wright et al., *supra*, §3523.2 ("One of the best-established uses of ancillary jurisdiction is over proceedings concerning costs and attorney's fees.").

Moreover, such ancillary jurisdiction exists even after the underlying litigation has concluded. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990). As the Supreme Court explained, "motions for costs or attorney's fees are 'independent proceeding[s] supplemental to the original proceeding and not a request for a modification of the original decree.'" *Id.* (quoting *Sprague*, 307 U.S. at 170). "Thus, even 'years after the entry of a judgment on the merits' a federal court could consider an award of counsel fees." *Id.* at 395–96 (quoting *White*, 455 U.S. 451 n.13); *see also Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1329 (9th Cir. 1999) ("No Article III case or controversy is needed with regard to attorneys' fees . . . because they are but an ancillary matter over which the district court retains equitable jurisdiction even when the underlying case is moot."); *Reiser v. Del Monte Props. Co.*, 605 F.2d 1135, 1140 (9th Cir. 1979) ("[A]n attorneys' fees question ancillary to the case survives independently under the court's equitable jurisdiction." (citing *Schmidt*, 544 F.2d at 414)); *United States v. Ford*, 650 F.2d 1141, 1143–44 (9th Cir. 1981) (same); *Carter v. Veterans Admin.*, 780 F.2d 1479, 1481 (9th Cir. 1986) (same (citing *Ford*, 650 F.2d at 1143–44)).

12                          K.C. v. TORLAKSON

## 2

Importantly, a district court's ancillary jurisdiction over an attorney's fees dispute is inherent and broader than its ancillary jurisdiction to enforce a settlement agreement. The Second Circuit's decision in *In re Austrian & German Bank Holocaust Litigation*, 317 F.3d 91 (2d Cir. 2003), is illustrative. There, the parties had settled a complicated class action lawsuit and agreed that attorneys' fees would be awarded pursuant to the decision of two arbitrators. *Id.* at 92–97. Certain class members objected to the arbitrators' eventual fee award. *Id.* at 96–97. The district court found that it lacked jurisdiction and denied the petition for fee forfeiture. *Id.* at 97. The Second Circuit affirmed on different grounds, but disagreed on the jurisdictional question. *Id.* at 92.

In its discussion, the Second Circuit differentiated between ancillary jurisdiction to enforce the agreement and ancillary jurisdiction over the collateral fee dispute, stating:

> Appellees contend that the District Court lacked jurisdiction . . . because the Consolidated Complaint had been dismissed without any reservation of continuing court authority. They rely on [*Kokkonen*], which held that a district court lacks ancillary jurisdiction to enforce a settlement agreement after the underlying lawsuit has been dismissed unless the parties agree to such continuing authority or the court retains jurisdiction for such purpose. In Appellees' view, because the fees were provided pursuant to the German Compact, any review of fees

would constitute a review of the Compact, which would amount to an attempt to enforce a settlement in violation of *Kokkonen*.

. . . .

We disagree. [The objectors are] not seeking to implement any aspect of the German Compact or any of its constituent parts. [They are] not contending, as did the claimants in *Kokkonen*, that some provision of a settlement (here, the Compact or its components) obligates the Appellees to take the action [the objectors seek]. Rather, [the objectors] merely seek[] to adjudicate a lawyer's entitlement to retain fees earned, at least in part, for services rendered in connection with a case within a district court's jurisdiction.

*Id.* at 97–99 (citations omitted).

## B

Likewise, here, Plaintiffs are "not seeking to implement any aspect" of the Settlement Agreement or "any of its constituent parts." *Id.* at 99. Nor are they "contending . . . that some provision" of the Settlement Agreement or "its components[] obligates" Defendants to pay attorneys' fees for the monitoring of post-settlement compliance. *Id.* Instead, they argue that they are the "prevailing party" under the relevant federal statutes—e.g., the ADA, Section 504, and the IDEA—and seek to collect attorneys' fees on this basis. As such, the fact that the district court lacks ancillary jurisdiction

14        K.C. V. TORLAKSON

to enforce the Settlement Agreement under *Kokkonen* is irrelevant.

The district court's error was in failing to recognize the distinction between ancillary jurisdiction to enforce a settlement agreement and ancillary jurisdiction over an attorney's fees dispute. As discussed above, the district court has broad, inherent authority over collateral matters such as attorney's fees, and such ancillary jurisdiction extends beyond dismissal of the underlying lawsuit. *See, e.g.,* *Ferrante*, 364 F.3d at 1041 (citing cases); *Zucker*, 192 F.3d at 1329; *see also In re Austrian & German Bank Holocaust Litig.*, 317 F.3d at 98 ("Whenever a district court has federal jurisdiction over a case, it retains ancillary jurisdiction after dismissal to adjudicate collateral matters such as attorney's fees." (discussing *Cooter & Gell*, 496 U.S. 384)).

Consequently, while the Settlement Agreement (as incorporated into the district court's dismissal order) limited the district court's ancillary jurisdiction to enforce the terms of the parties' settlement, it did not affect the court's ancillary jurisdiction over an attorney's fees dispute.   Unlike its ancillary jurisdiction to enforce the Settlement Agreement, the court's ancillary jurisdiction over Plaintiffs' motion for attorneys' fees need not have been explicitly "retained."

In *Schmidt*, we rejected the defendant's argument that the district court had erred in "retaining jurisdiction over the question of attorney's fees after the consent judgment had been entered."  544 F.2d at 414.   We reasoned that "[a]llowance of attorney's fees 'is part of the historic equity jurisdiction of the federal courts,' and the district court could properly retain jurisdiction to determine appropriate attorney's fees ancillary to the case." *Id.* (citing *Sprague*,

307 U.S. at 164). But neither *Schmidt* nor any other case requires that a district court explicitly "retain" ancillary jurisdiction to adjudicate a post-judgment motion for attorney's fees. *See In re Austrian & German Bank Holocaust Litig.*, 317 F.3d at 97–99 (concluding that the district court had ancillary jurisdiction over the fee dispute even though the complaint "had been dismissed without any reservation of continuing court authority"); *cf. Peacock*, 516 U.S. at 356 ("We have reserved the use of ancillary jurisdiction in subsequent proceedings for the exercise of a federal court's inherent power to enforce its judgments."). Similarly, Defendants have identified no authority for the proposition that a district court's dismissal order can divest (or otherwise impose a time limit upon) the court's inherent jurisdiction over a collateral attorney's fees dispute. *See Cooter & Gell*, 496 U.S. at 396 ("Like the imposition of costs, attorney's fees, and contempt sanctions, the imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue . . . . Such a determination may be made after the principal suit has been terminated.").

It bears repeating that Plaintiffs are seeking attorneys' fees pursuant to federal law. This is not an attorney-client fee dispute that could be resolved in state court as a breach of contract claim. As the Seventh Circuit has said, "[t]he purpose of the ancillary jurisdiction of the federal courts . . . is to enable a federal court to render a judgment that resolves the entire case before it and to effectuate its judgment once it has been rendered." *Shapo v. Engle*, 463 F.3d 641, 644–45 (7th Cir. 2006). "It is not to enable a federal court to encroach on the jurisdiction reserved to the states merely because the parties would prefer to have a federal court resolve their future disputes . . . ." *Id.* at 645.

Moreover, even assuming that Plaintiffs could recast their motion as a claim for attorneys' fees in a separate federal lawsuit, it is not "necessary" for them to do so. *Schmidt*, 544 F.2d at 414 (citation and internal quotation marks omitted). Requiring a separate lawsuit – that hypothetically would invoke federal question jurisdiction – not only would interfere with the district court's powers to render a judgment that resolves the entire case and to effectuate its judgment, but also would harm judicial economy and efficiency. Practically speaking, any such separate "attorneys' fees only" lawsuit likely would be referred to the district judge who presided over the underlying lawsuit anyway.

Thus, we hold that the district court has ancillary jurisdiction over Plaintiffs' motion for attorneys' fees.

## IV

Our holding is limited to the jurisdictional question. Whether Plaintiffs are entitled to attorneys' fees is a question for the district court on remand. *See Reiser*, 605 F.2d at 1140 ("We . . . express no opinion concerning the propriety of an award in this case, a matter within the discretion of the trial judge.").

Further, the exercise of ancillary jurisdiction over an attorney's fees dispute is discretionary. *See In re Austrian & German Bank Holocaust Litig.*, 317 F.3d at 101 ("We have previously recognized that the existence of ancillary jurisdiction to adjudicate a fee dispute after the dismissal of a lawsuit calls for the sound exercise of a district court's discretion whether to entertain the merits of the dispute . . . ."); *cf. Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)

K.C. v. TORLAKSON                    17

("Because of their very potency, inherent powers must be exercised with restraint and discretion.").

## CONCLUSION

On remand, the district court in its discretion will decide whether to exercise ancillary jurisdiction over Plaintiffs' motion for attorneys' fees.

We need not address any other arguments raised on appeal.

**REVERSED and REMANDED.**

# EXHIBIT B

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

o

## CRIMINAL MINUTES - GENERAL

Case No.    CR 09-933 CAS                              Date   June 10, 2013

Present: The Honorable    CHRISTINA A. SNYDER

Interpreter   N/A

| Catherine Jeang | Laura Elias | Kim Meyer Patricia Donahue |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| RONALD GERARD BOYAJIAN | X | X | | ANNE HWANG, DFPD | X | X | |
| | | | | ALICIA BLANCO, DFPD | X | X | |
| | | | | ALAN FENSTER | X | | X |
| | | | | (Specially Appearing) | | | |

DEFENDANT'S MOTION FOR RELEASE OF FUNDS (Docket #417, filed May 22, 2013); AND

**Proceedings:**    STATUS CONFERENCE

On May 14, 2013, the Court discharged the law firm of Lightfoot, Steingard and Sadowsky LLP ("LSS") as defendant's counsel of record, and appointed the Federal Public Defender to represent defendant. In connection with the discharge of LSS, defendant informed the Court that he intends to recover a portion of the fees paid to LSS, and use these fees to retain new counsel. On May 22, 2013, defendant asked the Court to designate a district judge to review his agreement with LSS and determine what fees, if any, should be returned to defendant pursuant to that agreement. Defendant contends that this unusual course of action should take place because defendant requires additional funds to retain new counsel in this case.

The Court denies the request. Regardless of whether defendant has a claim for relief against LSS, the Court cannot simply designate a district judge to adjudicate this claim, because the Court lacks authority to authorize defendant to prosecute a claim in a manner not authorized by law. Among other reasons, there appears to be no basis on which a federal court would exercise jurisdiction over defendant's claim.

Accordingly, defendant's motion is DENIED.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

The Court sets a Further Status Conference re: Case on **August 12, 2013** at **1:00 P.M.** and the Jury Trial is vacated, to be reset.  The Court takes defendant's oral waiver of his speedy trial rights, as stated in Court and on the record.  The Government shall submit a Proposed Order re: Excludable Time forthwith.

IT IS SO ORDERED.

|  | 00 | : | 13 |
|---|---|---|---|
| Initials of Deputy Clerk | | CMJ | |

# EXHIBIT C

UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

- - -

HONORABLE CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE PRESIDING

- - -

UNITED STATES OF AMERICA,       )
                                )       **CERTIFIED COPY**
                PLAINTIFF,      )
                                )
VS.                             )       CASE NO.:
                                )       CR 09-933(A)-CAS
RONALD GERARD BOYAJIAN,         )
                                )
                DEFENDANT.      )
                                )
                                )
_____)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

MONDAY, AUGUST 4, 2014

LOS ANGELES, CALIFORNIA

LAURA MILLER ELIAS, CSR 10019
FEDERAL OFFICIAL COURT REPORTER
312 NORTH SPRING STREET, ROOM 453
LOS ANGELES, CALIFORNIA 90012
PH:  (213)620-0890

1    say you yourself didn't exercise jurisdiction are you

2    speaking as to this Court here in this courtroom or the

3    district court of the Central District in general?

4              THE COURT:  Let me be as clear as I be can.  I had

5    the memo.  I actually still have the memo, but the fact of

6    the matter is I independently determined that I did not have

7    jurisdiction to decide the fee dispute, that that was a

8    matter that had to be decided in the superior court.

9              MR. SLEISENGER:  Okay.

10             THE COURT:  Judge Hatter has never seen this thing

11   and no one has ever ruled that the United States District

12   Court generally doesn't have jurisdiction to monitor fee

13   agreements one way or the other.  I don't think we have a

14   decision of this court regarding jurisdiction to decide

15   whether fees should be returned or not returned, but I

16   haven't done any research.

17             I don't know the answer.  I don't know what's been

18   done out there.  The only thing I know is that I personally

19   determined in this case that there was no jurisdiction in

20   this court to require that the Lightfoot fee be returned.

21             Now, let's go to your appointment.  Secondly, that

22   issue is only implicated because Mr. Boyajian in his effort

23   to have me relieve the Federal Public Defender said that one

24   of the reasons, one of the reasons, that he had ineffective

25   assistance of counsel was that they would not undertake the

1    The problem is I don't understand why if that's the
2    case and if Judge Hatter also did not refer to it, that we're
3    even here.  Because as I understand it, it was the Court that
4    talked about the necessity of conferring with Judge Fischer
5    before it could determine whether Mr. Boyajian was entitled
6    to appointed counsel.

7    THE COURT:  Let's -- apparently, I have been
8    completely unclear.  There have been various events along the
9    way and I would have to go back and look at the record to
10    tell you that I'm completely accurate, but any reference I
11    made to Judge Fischer appointed counsel versus the Federal
12    Public Defender did not arise in the context of the
13    returnability of the fee.

14    The problem is, as you know, she's in charge of CJA
15    funds and she has to make those decisions on whether
16    something is properly a CJA matter.  And she asked that I
17    first check to see if the Federal Public Defender had a
18    conflict because her mission is to use CJA funds when
19    necessary.  So it was in that context that I conferred with
20    her on the subject of Federal Public Defender versus CJA.  It
21    had nothing to do with the return of the Lightfoot fee at
22    that stage.

23    But, all that said, it seems to me that the proper
24    course of action right now is for you to get a determination
25    from the circuit.  If the circuit thinks that I'm incorrect

1    and that in fact I should resolve this fee dispute, then

2    they'll send it back to me, that's what I'll do and, you

3    know, we'll see where we are then.  But right now I'm sitting

4    in equipoise because this issue is up in the circuit and I

5    can't properly resolve it until they tell me one way or the

6    other what their position is.

7           MR. SLEISENGER:  All right.  That's fairly stated

8    and understood.  But when I look back to the record that I

9    cited in the exhibits in support of this motion, I saw a

10   colloquy between Your Honor and various counsel to the effect

11   that Judge Fischer had to review in camera the retainer

12   agreement between Mr. Boyajian and the Lightfoot firm to

13   determine whether it was the type of contract that would be

14   subject to disgorgement of fees or not.

15          THE COURT:  I think either there's something wrong

16   with the transcript or alternatively someone didn't say what

17   I meant because I never said that she had to review it.  I

18   said that I would review it, but then I determined I didn't

19   have jurisdiction to review it.

20          MR. SLEISENGER:  When you say you didn't

21   jurisdiction, as I understand that, you meant that the Parker

22   firm had represented Your Honor at some previous time?

23          THE COURT:  No.  I made my ruling much earlier than

24   that.  There are two events.  First of all, I issued an order

25   saying that I declined to review the fee relationship because

# EXHIBIT C

1

1    UNITED STATES OF AMERICA
     UNITED STATES DISTRICT COURT
2    CENTRAL DISTRICT OF CALIFORNIA
     WESTERN DIVISION
3    - - -
4    HONORABLE CHRISTINA A. SNYDER
     UNITED STATES DISTRICT JUDGE PRESIDING
5    - - -

6    UNITED STATES OF AMERICA,              )      **CERTIFIED COPY**
                                            )
7                    PLAINTIFF,             )
                                            )
8    VS.                                    )      CASE NO.:
                                            )      CR 09-933(A)-CAS
9    RONALD GERARD BOYAJIAN,                )
                                            )
10                   DEFENDANT.             )
                                            )
11                                          )
                                            )
12   _____       )

13

14

15               REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                     MONDAY, AUGUST 4, 2014

17                    LOS ANGELES, CALIFORNIA

18

19

20

21

22                 LAURA MILLER ELIAS, CSR 10019
                  FEDERAL OFFICIAL COURT REPORTER
23             312 NORTH SPRING STREET, ROOM 453
                 LOS ANGELES, CALIFORNIA 90012
24                  PH:   (213)620-0890

25

UNITED STATES DISTRICT COURT

1   say you yourself didn't exercise jurisdiction are you

2   speaking as to this Court here in this courtroom or the

3   district court of the Central District in general?

4           THE COURT:  Let me be as clear as I be can.  I had

5   the memo.  I actually still have the memo, but the fact of

6   the matter is I independently determined that I did not have

7   jurisdiction to decide the fee dispute, that that was a

8   matter that had to be decided in the superior court.

9           MR. SLEISENGER:  Okay.

10          THE COURT:  Judge Hatter has never seen this thing

11  and no one has ever ruled that the United States District

12  Court generally doesn't have jurisdiction to monitor fee

13  agreements one way or the other.  I don't think we have a

14  decision of this court regarding jurisdiction to decide

15  whether fees should be returned or not returned, but I

16  haven't done any research.

17          I don't know the answer.  I don't know what's been

18  done out there.  The only thing I know is that I personally

19  determined in this case that there was no jurisdiction in

20  this court to require that the Lightfoot fee be returned.

21          Now, let's go to your appointment.  Secondly, that

22  issue is only implicated because Mr. Boyajian in his effort

23  to have me relieve the Federal Public Defender said that one

24  of the reasons, one of the reasons, that he had ineffective

25  assistance of counsel was that they would not undertake the

1    The problem is I don't understand why if that's the
2    case and if Judge Hatter also did not refer to it, that we're
3    even here.  Because as I understand it, it was the Court that
4    talked about the necessity of conferring with Judge Fischer
5    before it could determine whether Mr. Boyajian was entitled
6    to appointed counsel.
7        THE COURT:  Let's -- apparently, I have been
8    completely unclear.  There have been various events along the
9    way and I would have to go back and look at the record to
10   tell you that I'm completely accurate, but any reference I
11   made to Judge Fischer appointed counsel versus the Federal
12   Public Defender did not arise in the context of the
13   returnability of the fee.
14       The problem is, as you know, she's in charge of CJA
15   funds and she has to make those decisions on whether
16   something is properly a CJA matter.  And she asked that I
17   first check to see if the Federal Public Defender had a
18   conflict because her mission is to use CJA funds when
19   necessary.  So it was in that context that I conferred with
20   her on the subject of Federal Public Defender versus CJA.  It
21   had nothing to do with the return of the Lightfoot fee at
22   that stage.
23       But, all that said, it seems to me that the proper
24   course of action right now is for you to get a determination
25   from the circuit.  If the circuit thinks that I'm incorrect

14

1   and that in fact I should resolve this fee dispute, then

2   they'll send it back to me, that's what I'll do and, you

3   know, we'll see where we are then.  But right now I'm sitting

4   in equipoise because this issue is up in the circuit and I

5   can't properly resolve it until they tell me one way or the

6   other what their position is.

7          MR. SLEISENGER:  All right.  That's fairly stated

8   and understood.  But when I look back to the record that I

9   cited in the exhibits in support of this motion, I saw a

10  colloquy between Your Honor and various counsel to the effect

11  that Judge Fischer had to review in camera the retainer

12  agreement between Mr. Boyajian and the Lightfoot firm to

13  determine whether it was the type of contract that would be

14  subject to disgorgement of fees or not.

15         THE COURT:  I think either there's something wrong

16  with the transcript or alternatively someone didn't say what

17  I meant because I never said that she had to review it.  I

18  said that I would review it, but then I determined I didn't

19  have jurisdiction to review it.

20         MR. SLEISENGER:  When you say you didn't

21  jurisdiction, as I understand that, you meant that the Parker

22  firm had represented Your Honor at some previous time?

23         THE COURT:  No.  I made my ruling much earlier than

24  that.  There are two events.  First of all, I issued an order

25  saying that I declined to review the fee relationship because