UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

| Case No. | CR 09-933(A)-CAS | | Date | November 26, 2014 |
|---|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | | |
| Interpreter | N/A | | | |

| Catherine Jeang | Not Present | Patricia Donahue, Not Present David Herzog, Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Boyajian: | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| RONALD GERARD | | | | ANNE HWANG, DFPD | NOT | X | |
| BOYAJIAN | NOT | X | | KIM SAVO, DFPD | NOT | X | |

**Proceedings:**  (IN CHAMBERS): DEFENDANT'S MOTION FOR RECONSIDERATION OF MOTION TO SUPPRESS EVIDENCE (Dkt. #323, filed February 27, 2013)

DEFENDANT'S MOTION FOR A BILL OF PARTICULARS (Dkt. #630, filed October 14, 2014)

DEFENDANT'S MOTION TO DISMISS COUNT TWO OF THE FIRST AMENDED SUPERSEDING INDICTMENT (Dkt. #631, filed October 14, 2014)

DEFENDANT'S MOTION TO DISMISS COUNTS ONE AND TWO OF THE FIRST SUPERSEDING INDICTMENT FOR VIOLATION OF THE FIFTH AND SIXTH AMENDMENTS (Dkt. #632, filed October 14, 2014)

DEFENDANT"S MOTION TO COMPEL THE GOVERNMENT TO PRODUCE DISCOVERY PURSUANT TO ITS RULE 16 AND BRADY OBLIGATIONS (Dkt. #639, filed October 16, 2014)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

## I.     INTRODUCTION

Defendant Ronald Gerard Boyajian is charged with one count of Travel with Intent to Engage in Illicit Sexual Conduct with a Minor in violation of 18 U.S.C. § 2423(b), one count of Engaging in Illicit Sexual Conduct with a Minor in Foreign Places in violation of 18 U.S.C. § 2423 (c), and one count of Commission of a Felony Offense Involving a Minor While Required to Register As Sex Offender pursuant to 18 U.S.C. § 2260A. Dkt. #38 (First Superseding Indictment). The charges arise from defendant's alleged illicit sexual acts with a minor girl in Cambodia, identified as S.L. Further background and facts are known to the parties and set forth in the Court's orders dated November 3, 2011; July 6, 2011; September 17, 2012; and October 9, 2012. Dkt. #254, 237, 127, 111. A jury trial is set to commence on January 20, 2015. On November 10, 2014, the Court held a hearing on the motions discussed below. After considering the parties' arguments, the Court finds and concludes as follows.

## II.     MOTION FOR RECONSIDERATION

A substantial amount of the evidence the government will seek to introduce at trial was seized by Cambodian National Police ("CNP") on February 20, 2009 from defendant's guesthouse in Phnom Penh. On November 23, 2010, defendant filed a motion to suppress this evidence under the Fourth Amendment based on the contention that it was seized in violation of Cambodian law. After considering briefs submitted by the parties and hearing testimony from Cambodian legal experts, the Court, in an order dated November 3, 2011, found that the search of defendant's guesthouse did not violate Cambodian law and, therefore, complied with the Fourth Amendment. Dkt. #127.

In a motion filed on February 27, 2013, defendant now asks the Court to reconsider this ruling in light of a recent decision issued by the Supreme Court of Cambodia, in which that court found that violations of Cambodian law occurred during the February 20, 2009 search. Dkt. #323. The government filed an opposition on March 12, 2013, Dkt. #342, and defendant replied on March 14, 2014, Dkt. #345. After a series of continuances granted at defendant's request, defendant filed a supplemental brief in support of his motion for reconsideration on October 14, 2014. Dkt. #636. The government filed a supplemental opposition on October 21, 2014, Dkt. #650, and defendant replied on October 27, 2014, Dkt. #657.

The decision of the Cambodian Supreme Court is a new material development that gives the Court reason to reconsider its prior ruling. For the reasons set forth below, however, the Court does not find that defendant is entitled to suppression of the evidence in question on Fourth Amendment grounds.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

**A.     Legal Standard**

Local Rule 7–18 sets forth the bases upon which the Court may reconsider the decision on any motion:

> A motion for reconsideration of the decision on any motion may be made only on the grounds of: (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision. No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion.

**B.     Factual Background and the Court's Prior Order**

Defendant was investigated in Cambodia in February 2009 pursuant to a joint operation between Cambodian law enforcement, American law enforcement, and Action Pour Les Enfants ("APLE"), a non-governmental organization ("NGO") operating in Cambodia.  Dkt. #127 at 2. On February 19, 2009, APLE investigator Chan Somphors ("Chan") observed defendant enter the "blue hut," a location known to Chan as a place where travelers obtained child prostitution. Chan then approached the blue hut with CNP officers and saw defendant hand money to several children.  Id.  The officers approached the blue hut and arrested defendant because they believed that they had just witnessed defendant purchase child prostitution.  Id.

On February 20, 2009, Colonel Prum ("Prum"), the CNP officer who filed and signed defendant's arrest report, called Cambodian Deputy Prosecutor Sok Kalyan ("Sok") to request oral permission to search defendant's guesthouse pursuant to Article 91 of the Cambodian Code of Criminal Procedure ("CCCP").  Id. at 3.  Permission was granted and Prum then searched defendant's guesthouse with other CNP officers, and recovered, among other things, a laptop computer, a telephone, a camera, and other electronics used to store digital media.  Id.

Defendant challenged the admissibility of the evidence obtained as a result of this search under the Fourth Amendment, which the Court found applicable to the search under the "joint venture" doctrine.  Id. at 7–8; see United States v. Barona, 56 F.3d 1087, 1092 (9th Cir. 1995) (explaining that the exclusionary rule is applicable when "United States agents' participation in the investigation is so substantial that the action is a joint venture between United States and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

foreign officials."). The Court then observed that in joint venture cases, "a foreign search is reasonable if it conforms to the requirements of foreign law." Dkt. #127 at 8; see United States v. Juda, 46 F.3d 961, 968 (9th Cir. 1995); Barona, 56 F.3d at 1093 n.1 ("[C]ompliance with foreign law alone determines whether the search violated the Fourth Amendment."). The Court therefore considered whether the search complied with Cambodian law to determine whether exclusion was required under the Fourth Amendment.

The Court found that the search complied with the applicable provisions of the CCCP. The Court first examined Article 86 of the CCCP, which provides that a crime is properly investigated as having been committed *in flagrante delicto* "if it (1) is currently being committed; (2) has just been committed; or (3) shortly after its commission where officers are in hot pursuit of a suspect, or where a person has physical or identifying evidence establishing that person's participation in a crime." Dkt. #127 at 9. The Court then reasoned that because defendant fled after he saw police approaching, the CNP officers investigating defendant had discretion to conclude that he had been observed committing a crime *in flagrante delicto*. Id. The Court then concluded that because the officers who conducted the search obtained oral authorization from the Royal Prosecutor for the search, and because the search took place within seven days of defendant's arrest, the search complied with CCCP Articles 91 and 106, provisions of the CCCP applicable to investigations of crimes committed *in flagrante delicto*. Id.

## C.    The Recent Decision of the Cambodia Supreme Court

On or about November 14, 2012, the Supreme Court of Cambodia issued a decision regarding the search of defendant's guest house. See Dkt. #342, Ex. B, ("Cambodian Decision"). Defendant received notice and a copy of this decision in February 2013, and now requests that the Court reconsider its prior ruling in light of the decision.

The decision of the Supreme Court of Cambodia begins by noting that defendant had been charged with soliciting sex from children, and that a "temporary detention warrant" instructing the "prison warden . . . to continue the temporary detention of [defendant] according to the law" was issued by the Phnom Penh Municipal Court on August 24, 2009. Cambodian Decision at 2. The decision then notes that defendant's attorney in Cambodia, Hin Pinnarith, "oppos[ed]" the temporary detention warrant on February 26, 2011, "on the preliminary investigation procedure," and also filed "an invalidation request." Id. Next, the Cambodian Supreme Court observed that this request was rejected by the Cambodian Court of Appeals on May 18, 2011, and that defendant's Cambodian attorney appealed from that judgment. Id. at 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

The decision next sets out the arguments presented by defendant's Cambodian attorney that, contrary to the ruling of the Cambodian Court of Appeals, the search of defendant's residence did not comply with Cambodian law. Id. at 3–4. According to the Cambodian Supreme Court, defendant's attorney argued that defendant was arrested when he was having dinner with friends, that a videotape of the arrest shows no crime was being committed, and that police falsified the time of arrest. Id. at 4. Defendant's attorney also argued that no complaint was filed by the victim or the victim's family, and that the victim testified that she was not with defendant during the arrest. Id. Defendant's attorney contended that because the prosecutor did not lead the search, because "the President of the Municipal Court" did not issue a warrant authorizing the search, and because defendant did not consent to the search, the arrest and detention of defendant was contrary to Articles 96, 113, and 114 of the CCCP. Id. at 4–5. Finally, the Cambodian decision acknowledges an assertion by defendant's attorney that CCCP Articles 96, 97, 105, 113, 114, and 117 were violated, and that consequently the court should "nullify the arrest, detention and search processes." Id. at 5.[1]

The Cambodian opinion states that defendant's attorney had "presented" the issues of whether "[t]he detention and arrest . . . violated Articles 96, 115, and 113 of the Code of Criminal Procedure" because, among other reasons, the "arrest was conducted at night without an arrest warrant because it was not a *flagrante delicto* offense." Id. at 5–6. The decision then notes that the defendant's attorney presented the issue of whether the search was conducted contrary to CCCP Articles 113 and 117 because there was no search warrant and the search was not led by the prosecutor. Id. at 6.

The Cambodian court then held that the arrest and detention of defendant complied with CCCP Article 96. Id. The Cambodian court next concluded that the search did not comply with CCCP Article 113. Id. This conclusion appears to rest on the fact that a representative of the owner of the Tong Mean Guesthouse, where defendant was staying, was present during the search, but did not provide written consent to the search. Id. The court reasoned that under Article 113, "[o]nly if the occupant is not present or refuses the search request, then the President of the Municipal Court can issue a search warrant after the request from the prosecutor," in which case "the prosecutor must lead the search." Id. The Cambodian Supreme Court concluded that the search "violated the provisions of Article 113 and 114," requiring "invalidation of the search." Id. at 6–7. The court's order rejected the judgment of the court

---

[1] The decision also acknowledges, briefly, the arguments made by the prosecution to that court. The prosecution argued that "the procedure of the detention and searched conducted by the police officers had minor errors, but the offense was committed, and therefore the Court should rule to uphold the judgment of the Court of Appeals." Cambodian Decision at 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

below, invalidated the investigation procedure and "order[ed] the police to start a new procedure," and "[r]eturn[ed the] case back to Phnom Penh Municipal Court to proceed pursuant to the law." Id. at 7.

**D.    Analysis**

1.    Compliance with Cambodian Law

Defendant argues that principles of comity and the related Act of State doctrine compel the Court to suppress the seized evidence in light of the Cambodian Supreme Court's decision. See W.S. Kirkpatrick & Co., Inc. v. Envtl. Tectonics Corp., Int'l, 493 U.S. 400, 406 (1990) (explaining that the Act of State doctrine applies when a court is asked "to declare invalid, and thus ineffective as a rule of decision for the courts of this country, the official act of a foreign sovereign" (internal quotation marks and citation omitted)); Wilson v. Marchington, 127 F.3d 805, 808 (9th Cir. 1997) ("The extent to which the United States . . . honors the judicial decrees of foreign nations is a matter of choice, governed by 'the comity of nations.' " (quoting Hilton v. Guyot, 159 U.S. 113, 163 (1895))); British Midland Airways Ltd. v. Int'l Travel, Inc., 497 F.2d 869, 870 (9th Cir. 1974) ("It has long been the law that unless a foreign country's judgments are the result of outrageous departures from our own motions [sic] of 'civilized jurisprudence,' comity should not be refused." (citing Hilton, 159 U.S. at 113)).  "The Ninth Circuit has clearly stated that comity is required only in instances of a 'true conflict' between domestic and foreign laws." Oak Point Partners, Inc. v. Lessing, No. 11-cv-03328-LHK, 2013 WL 1703382, at *3 (N.D. Cal. Apr. 19, 2013) (citing In re Simon, 153 F.3d 991, 999 (9th Cir. 1998)).  "The party requesting comity bears the burden of demonstrating the existence of a true conflict of laws."  Id. (citing In re Grand Jury Proceedings, 40 F.3d 959, 964 (9th Cir. 1994)).

The government argues that the intervening decision of the Cambodian Supreme Court provides no grounds for reconsidering the Court's prior order because the Cambodian court did not consider CCCP Articles 86, 91, and 106, the provisions of Cambodian law this Court's prior order found justified the search  Instead, the government contends that the decision only decided the discrete issue of whether the search was justified under Articles 109, 113, 114, and 117 of the CCCP, and that there is no indication that the Cambodian Supreme Court considered the evidence that this Court concluded validated the search under Articles 86, 91, and 106.  The government maintains that the decisions are therefore consistent with another, and that there are no grounds for reconsideration.  The government argues that "it is hardly a unique feature of Cambodian law that a search could fail on one ground but pass muster on another."  Dkt. #342 at 13 n.7.  Just as two American courts could find, consistently with one another, that different exceptions to the warrant requirement were met, while others were not, the government contends that there is nothing inconsistent about finding that although the Cambodian Supreme

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

Court refused to uphold a search under Articles 109, 113, 114, and 117, the search can nonetheless be upheld under the *in flagrante delicto* rules applied in this Court's prior decision. Therefore, the government argues that neither the Act of State doctrine nor comity principles require this Court to reconsider its prior ruling.

Conversely, defendant argues that the Cambodian Supreme Court broadly concluded that the search was unlawful under the CCCP, rejecting the conclusion reached by this Court's prior order. Defendant criticizes the government's narrow reading of the decision, arguing that it is implausible that arguments based on Articles 86, 91, and 106 were not presented to the Cambodian Supreme Court. Defendant points out that Cambodian law enforcement officers relied on these Articles before this Court, and argues that it would make no sense for Cambodian law enforcement not to press the same justification before the Cambodian Supreme Court.[2] Defendant also argues that, to invalidate the search under Articles 113 and 114, the Cambodian court must have necessarily decided that the arrest was not *in flagrante delicto* because those articles are codified under Title 3, which governs preliminary investigations, not Title 2, which covers *in flagrante delicto* conduct.[3] See Dkt. #657 Ex. C (CCP Article 84) ("The authority delegated to judicial police officers varies according to whether the investigation of a *flagrante delicto* or a preliminary investigation is taking place."). Therefore, defendant maintains that the Cambodian Supreme Court decided that no provision of Cambodian law justified the search

On the existing record, it is not clear whether the Cambodian Supreme Court considered and rejected the same arguments and evidence that led this Court to determine that the search complied with Cambodian law. The Cambodian Supreme Court's decision does not analyze the *in flagrante delicto* provisions of the CCP, and therefore does not unambiguously call into question the Court's interpretation of those provisions based on expert testimony. Moreover, if the Cambodian Court did determine that the search could not be upheld under *in flagrante delicto* provisions, it is possible that it did so on technical rather than substantive grounds—for example, because the prosecution failed to raise the issue below, or failed to offer supporting

---

[2]In supplemental briefing, defendant concedes that it "appears that none of the Cambodian courts heard live testimony from CNP officers," but suggests that the Cambodian Supreme Court would have considered equivalent evidence because the Cambodian court's file included reports from the Cambodian police regarding defendant's arrest, interviews of Agent Nguyen, the investigative chamber's file, and the testimony of an APLE employee stating that at the time of the arrest, defendant was inside the blue hut with young girls, among other documents. See Dkt. #636 at 3–4.

[3]Article 91 is codified in Title 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

                                                                    'O'

evidence of the type introduced at this Court's evidentiary hearing.  If that were the case, it would not necessarily offend comity to decide on *in flagrante delicto* grounds, after a lengthy evidentiary hearing, that the search complied with Cambodian law and, by extension, the Fourth Amendment.[4]  Still, especially because the Cambodian Supreme Court's opinion closes with a broad conclusion that non-compliance with some provisions of the CCCP "will lead to invalidation of the search," Cambodian Decision at 6–7, it is plausible—but not certain—that the Cambodian court determined that the search could not be sustained under any provision of Cambodian law.

        In his supplemental brief, defendant also argues that even if the Court does not find itself bound by the Cambodian Supreme Court's decision, the factual record does not support a finding that defendant was arrested for an *in flagrante delicto* crime.  Defendant contends that the Court's order on his suppression motion relied entirely on declaration testimony, ignoring suppression hearing testimony that proves that defendant was not seen inside the blue hut with young children and that testimony that he was seen giving money to a child is not credible. Defendant also argues that recent deposition testimony of Le Yang Hao ("Hao"), a "disinterested witness," demonstrates that defendant was not with any children inside the blue hut immediately prior to his arrest.  In this deposition, Hao testified that he saw defendant eating and drinking without any children present for about fifteen minutes prior to his arrest. See Dkt. #636 Ex. J, CD 1 00:08:15-45, 00:09:30-52.  Hao also stated that he did not see defendant talking to or giving money to any children.  Id. 00:08:45–00:09:05.  Hao testified that he saw the police come, that he then ran away, and that others ran way as well.  Id. 00:11:15–00:14:15.  Defendant argues that "[e]ven coupled with the fact that Mr. Boyajian ran from the blue hut . . . [the] facts do not give rise to the level of observing the commission of a flagrant felony," and that the "Court's reliance on the declarations without examining those statements in light of the testimony elicited at the suppression hearing led to an erroneous finding that CNP arrested Mr. Boyajian having caught him red-handed committing a crime and while in hot pursuit of him."  Dkt. #636 at 14.

---

        [4]The "rationale underlying the grant of comity . . . is similar to that underlying the application of *res judicata* to domestic judgments."  Int'l Transactions, Ltd. v. Embotelladora Agral Regiomontana, SA de CV, 347 F.3d 589, 593 (5th Cir. 2003).  Therefore, courts considering whether comity requires deference to a foreign tribunal's adjudication have applied preclusion considerations such as whether findings were "necessary to a court's decision," United States v. Kashamu, 656 F.3d 679, 688 (7th Cir. 2011), and whether the foreign tribunal's order was the "final word" on the issue, United States v. Bokhari, 757 F.3d 664, 673 (7th Cir. 2014).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

To the extent that defendant repeats or recasts arguments made in support of his original suppression motion, those arguments are not properly before the Court on a motion for reconsideration. See United States v. Hector, 368 F. Supp. 2d 1060, 1063 (C.D. Cal. 2005), reversed on other grounds, 474 F.3d 1150 (9th Cir. 2007) (explaining that a "motion for reconsideration is not to be used as a means to reargue a case or ask a court to rethink a decision it has made"); see also Local Rule 7-18 ("No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion."). And to the extent that defendant argues that the Court failed to consider live testimony and relied solely on submitted declarations in its prior order, that is incorrect. The Court considered all of the testimony presented at the six-day evidentiary hearing. Defendant may wish that the Court had credited or weighed the testimony differently, but that does not constitute grounds for reconsideration. Additionally, the Court has considered the submitted deposition testimony of Hao, and does not find that it, in and of itself, necessitates reconsideration of the Court's prior finding. One witness's testimony that he did not see something does not necessarily negate another witness's testimony that he did, and Hao's testimony that he saw defendant eating inside the house is not inconsistent with the government's position or the Court's ruling. Additionally, Hao testified that he ran when the police came, and it is not clear that he witnessed the entire time period testified to by government witnesses.

To summarize, defendant's motion for reconsideration shows that it is possible—although not certain—that, contrary to the Court's prior finding, the search was not conducted in accordance with Cambodian law, and therefore violated the Fourth Amendment. The Court need not resolve this difficult question, however, because as explained below, even assuming that the search did violate Cambodian law, the evidence is nonetheless admissible under the good faith exception to the exclusionary rule.[5]

---

[5]Although the government asked the Court to consider the good faith exception in its opposition to the original motion to suppress, the Court declined to reach that issue in light of its determination, after a length evidentiary hearing, that the search complied with Cambodian law. In light of the uncertainty created by the Supreme Court of Cambodia's subsequent decision, the Court now reaches that alternative argument. Cf. United States v. Peterson, 812 F.2d 486, 492 (9th Cir. 1987) (analyzing the good faith exception on the "assumption that the search did not comply with Philippine law and was, as a result, not reasonable under the Fourth Amendment," where the foreign search and seizure law was "less than completely clear").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

2.      Good Faith Exception to the Exclusionary Rule

The exclusionary rule is a "prudential doctrine" created by the Supreme Court to "compel respect" for the Fourth Amendment's prohibition on unreasonable searches and seizures.  Davis v. United States, 131 S. Ct. 2419, 2426 (2011).  "The rule's sole purpose . . . is to deter future Fourth Amendment violations," and if exclusion will not yield "appreciable deterrence," evidence obtained in violation of the Fourth Amendment should not be excluded.  Id. at 2426–2427.  Instead, the exclusionary rule is only applicable where "the benefits of deterrence must outweigh the costs," keeping in mind that "[t]he principal cost of applying the rule is, of course, letting guilty and possibly dangerous defendants go free—something that offends basic concepts of the criminal justice system."  Herring v. United States, 555 U.S. 135, 141 (2009).  Consequently, "[t]he fact that a Fourth Amendment violation occurred . . . does not necessarily mean that the exclusionary rule applies."  Id. at 140.

Applying these principles, the Supreme Court has developed the good faith exception to the exclusionary rule.  See United States v. Leon, 468 U.S. 897, 920, 923 (1984); see also Davis, 2427–28 (discussing the Supreme Court's application of the good faith exception).  "The good faith exception is grounded in the realization that the exclusionary rule does not function as a deterrent in cases in which the law enforcement officers acted on a reasonable belief that their conduct was legal."  United States v. Peterson, 812 F.2d 486, 492 (9th Cir. 1987).  Accordingly, the exclusionary rule only applies when police misconduct is "sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."  Herring, 555 U.S. at 144.  Despite its name, the good faith exception is "not an inquiry into the subjective awareness" of law enforcement officers, but instead considers the objective question of what a "reasonably well trained officer" would have known in light of all the circumstances, where those circumstances include the officers' experience and knowledge.  Id. at 145.

The good faith exception to the exclusionary rule can apply to searches conducted abroad by foreign law enforcement officers.  See Peterson, 812 F.2d at 492 ("Although local law of the Philippines governs whether the search was reasonable, our law governs whether illegally obtained evidence should be excluded, and the essence of our inquiry is whether exclusion serves the rationale of deterring federal officers from unlawful conduct."); see also United States v. Barona, 56 F.3d 1087, 1092 n.1 (9th Cir. 1995) (explaining that while "compliance with foreign law alone determines whether the search violated the Fourth Amendment," the "other part of the inquiry is whether the United States agents acted in good faith, even if foreign law was violated").  In Peterson, the Ninth Circuit explained that when United States law enforcement officers reasonably rely on foreign law enforcement officers' assurances that foreign law has been complied with, the good faith exception to the exclusionary rule applies.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

812 F.2d at 492.  In support of this rule, the court reasoned that because  "American law enforcement officers [are] not in an advantageous position to judge whether the search [is] lawful . . . [h]olding them to a strict liability standard for failings of their foreign associates would be even more incongruous" than it would be with regard to the "adequacy of domestic warrants."  Id.  Additionally, the court pointed out that "permitting reasonable reliance on representations about foreign law is a rational accommodation to the exigencies of foreign investigations."  Id.

Defendant contends that the good faith exception only applies to situations involving an arrest or search warrant, pointing out that the Supreme Court developed the exception in the context of good faith reliance on an invalid warrant, see Leon, 468 U.S. at 920, and "has never held that the good faith exception applies to warrantless arrests or searches."  Dkt. #636 at 15. However, the Ninth Circuit has rejected this precise argument:

> It is true, as appellants note, that Leon speaks only in terms of good faith reliance on a facially valid search warrant.  That is not dispositive, however. We conclude that the reasoning applies as well to reliance on foreign law enforcement officer's representations that there has been compliance with their own law.

Peterson, 812 F.2d at 492.  In Peterson, the government conceded that "judicial authorization was neither sought nor received," but the record showed that "federal officers sought, and received, assurances from high ranking law enforcement authorities in the Phillippines that all necessary authorization was being obtained."  Id. at 491, 492.  The Ninth Circuit held that the seized evidence was lawfully admitted based on these assurances.  Id. at 492.  In United States v. Juda, the Ninth Circuit reaffirmed that a "search will be upheld under the good faith exception to the exclusionary rule when United States officials reasonably rely on foreign officials' representations of foreign law."  46 F.3d 961, 968 (9th Cir. 1995) (citing Peterson, 812 F.3d at 492).  The Juda court held that the good faith exception applied where a DEA agent was told by Australian law enforcement that no warrant or court order was needed to install a transmitter on a ship suspected of involvement in marijuana distribution.  Id. at 964, 968.[6] Therefore, defendant's argument that the good faith exception only applies to warrants is

---

[6]Courts in other circuits have found the good faith exception applicable in similar circumstances.  See, e.g., Lau v. United States, 778 F. Supp. 98, 101 (D.P.R. 1991), aff'd, 976 F.2d 724 (1st Cir. 1992) (admitting under the good faith exception evidence seized from a warrantless search of a house in St. Martin based on assurances from the Attorney General for the Netherlands Antilles that no warrant was required).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

meritless, and the Court considers whether the facts presented warrant the exception's application.  In order to apply the exclusionary rule in this context, defendant must not only show that a violation of Cambodian law occurred, but also must point to culpable conduct by United States law enforcement related to the violation of Cambodian law.  In the absence of culpable conduct by United States officers, exclusion would not bring about the deterrent effects that are a prerequisite to applying the exclusionary rule.

Applying these principles, the evidence shows that even if there was a violation of Cambodian law, there was no sufficiently culpable conduct by the United States officers involved with the search that would justify application of the exclusionary rule.  Special Agent Nguyen ("SA Nguyen"), the ranking United States law enforcement officer involved with the investigation of defendant in Cambodia, submitted a declaration setting out the reasons why he believed the search complied with Cambodian law.  SA Nguyen explained that he believed the search was legal based on several conversations with Cambodian officials, his prior experience with investigations in Cambodia, and the fact that the searching officers obtained permission from the prosecutor to search defendant's room.  Dkt. #58, Nguyen Decl. ¶ 21.  Additionally, at the hearing held by the Court in connection with defendant's suppression motion, SA Nguyen more fully explained his reasons for believing that the search was legal.  SA Nguyen explained that he first learned that the CNP were going to conduct the search from Foreign Service National Investigator Suos Vansak ("Suos"), who also told him that the CNP had obtained authorization from the prosecutor to proceed.  See Dkt. No. 342 Ex. C, Transcript of March 25, 2011 Hearing, 7:1–8:4.  SA Nguyen further explained that this was consistent with his knowledge of the investigation practices of the Cambodian police, and that Suos also informed him that a search was allowed under these conditions by Article 91 of the CCCP.  Id. 8:1–18.  Finally, SA Nguyen learned directly from General Bith of the CNP that the police had received authorization from a prosecutor to conduct the search.  Id. 8:18–9:3.

SA Nguyen therefore learned that the CNP had stated that they had authorization to conduct the search, and confirmed with Suos that this authorization justified the search under the CCCP.  Other than relying on the CNP's representation that they had legal authorization to conduct the search, and independently confirming that representation with Suos—a law enforcement agent with a Cambodian law degree and extensive experience with CNP policies and procedures—it is unclear what else SA Nguyen reasonably should have done to insure compliance with Cambodian law.  Cf. Peterson, 812 F.2d at 492 (finding that the good faith exception applied because "federal officers sought, and received, assurances from high ranking law enforcement authorities in the Philippines that all necessary authorization was being obtained").  Moreover, here, as in Peterson, the applicable foreign search and seizure law is "less than completely clear," further undermining the deterrent effects of suppression.  Id. (citing lack of clarity in the applicable foreign law as militating against suppression).  The Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

therefore concludes that even assuming a violation of Cambodian law, applying the exclusionary rule would not result in the sort of "appreciable deterrence" that is a prerequisite to that rule's application. Excluding the evidence would only hold SA Nguyen and the United States strictly liable for mistakes made by the CNP, which is inconsistent with the Fourth Amendment.

### E.    Conclusion

Having granted defendant's request for reconsideration in light of the Cambodian Supreme Court's decision, and assuming without deciding that the Court's previous finding that the search complied with Cambodian law is erroneous in light of the Supreme Court of Cambodia's subsequent ruling, the Court finds that the evidence defendant seeks to suppress is nevertheless admissible under the good faith exception to the exclusionary rule. The Court therefore DENIES defendant's motion to suppress the evidence in question for the reasons set forth herein.

## III.    MOTION FOR A BILL OF PARTICULARS

On October 14, 2014, defendant filed an ex parte application for an order shortening time in which to file a motion for a bill of particulars. Dkt. #630. On October 20, 2014, the Court granted the ex parte application, allowing defendant to file the motion attached to his ex parte application although it was filed well beyond the fourteen days after arraignment provided for in Federal Rule of Criminal Procedure 7(f). Dkt. #646. On October 21, 2014, the government filed an opposition to the motion. DKt. #653. Defendant filed a reply on October 27, 2014. Dkt. #655.

Criminal Rule of Procedure 7(f) provides that "[t]he court may direct the government to file a bill of particulars." A bill of particulars "is appropriate where a defendant requires clarification in order to prepare a defense." United States v. Long, 706 F.2d 1044, 1054 (9th Cir.1983). More specifically, its purposes are (1) to "inform the defendant of the nature of the charges against him with sufficient precision to enable him to prepare for trial," (2) "to avoid or minimize the danger of surprise at the time of trial," and (3) to enable a defendant "to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment itself is too vague, and indefinite for such purposes." United States v. Ayers, 924 F.2d 1468, 1483 (9th Cir.1991) (quoting United States v. Giese, 597 F.2d 1170, 1180 (9th Cir. 1979)). "A bill of particulars should be limited to these purposes: '[a] defendant is not entitled to know all the evidence the government intends to produce but only the theory of the government's case.' " United States v. Cerna, No. CR 08-0730 WHA, 2009 WL 2998929, at *2 (N.D. Cal. Sept. 16, 2009) (quoting United States v. Ryland, 806 F.2d 941, 942 (9th Cir.1986)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

"In determining if a bill of particulars should be ordered in a specific case, a court should consider whether the defendant has been advised adequately of the charges through the indictment and all other disclosures made by the government." Long, 706 F.2d at 1054.  For this reason, "full discovery obviates the need for a bill of particulars." Giese, 597 F.2d at 1180–81.  In any case, "[t]he decision whether to grant a request for a bill of particulars is directed to the trial court's discretion." Long, 706 F.2d at 1054 (citing Will v. United States, 389 U.S. 90, 99 (1967)).

Defendant argues that a bill of particulars is appropriate because the allegations in Count Two of the superseding indictment "are skeletal and simply track the statutory language.  The count alleges:

> Between on or about September 6, 2008, and on or about February 19, 2009, defendant . . . knowingly traveled in foreign commerce, from Los Angeles County, within the Central District of California, to Cambodia, and engaged in illicit sexual conduct, as defined in Title 18, United States Code, Section 2423(f), with S.L., a girl who was under 18 years of age at the time that defendant BOYAJIAN engaged in illicit sexual conduct with her, and on or about August 31, 2009, defendant BOYAJIAN was first brought into the Central District of California from California.

Dkt. #38 at 3.  Defendant argues that the indictment improperly fails to identify the dates, locations, and nature of the alleged illicit sexual conduct.  He contends that the indictment as charged prejudices his ability to prepare for trial and enables the prosecution to "tailor the charges on an evolving basis."  Specifically, defendant argues that the lack of detail prevents him from effectively investigating any possible alibi defense or preparing for cross-examination of the alleged victim witness.

The government responds that the extensive discovery it has produced, consisting of approximately 20,000 pages of documents and numerous recordings, makes clear its theory of the case: that "during the time period charged . . . [defendant] . . . engaged in illicit sexual conduct with child victim S.L. in Svay Pak."  Opp'n at 8.  The government further contends that previously and contemporaneously filed motions, and other actions taken by defendant's attorneys over the past five years, belie defendant's argument that the bare indictment has prevented him from effectively preparing a defense.  The government also points out that defendant has failed to cite a case in which a conviction was reversed because a bill of particulars was not ordered.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

Moreover, the government argues that charging the acts over a time frame of several months is especially appropriate here because courts have recognized that minor victims of sexual abuse are not always capable of remembering precise dates. See Valentine v. Konteh, 395 F.3d 626, 632 (6th Cir. 2005) ("This Court and numerous others have found that fairly large time windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements." (citing Court of Appeals cases approving windows from four months to three years)); Edwards v. Mazzuca, No. 00 Civ. 2290(RJS)(KNF), 2007 WL 2994449, at *5 (S.D.N.Y. Oct. 15, 2007) (explaining in a habeas corpus case that an indictment met constitutional standards even though it "specified a *period* of time—rather than a specific date—in which defendant committed the acts" of sexual abuse against a child (emphasis in original)); Rodriguez v. Hynes, CV–94–2010 (CPS), 1995 WL 116290, at *4 (E.D.N.Y. Feb. 27, 1995) ("Considering the fact that young victims often do not remember the exact date of when an alleged offense occurred, the time spans in the indictment [charging sexual abuse of a minor] are not unreasonable."). The government argues that because "S.L. was repeatedly sold to defendant for sex when she was as young as eight or nine years old, pinning her down to a specific date is neither reasonable nor required by law." Opp'n at 6.

In reply, defendant argues that the discovery so far provided is insufficient for defendant to investigate an alibi defense "for every minute of a five month period in a foreign country," and that cross-examination is insufficient to cure this prejudice. Reply at 2–3. Defendant also contends that the government's citations regarding the inability of minor sexual abuse victims to remember dates are unhelpful because S.L. has herself identified specific dates, and because courts including the Valentine court have admonished that "prosecutors should be as specific as possible in delineating the dates and times of abuse offenses." 395 F.3d at 632. Finally, defendant argues that the government's suggestion that defendant may cross-examine S.L. and then investigate and present any alibi defense is impractical given the fact that the alleged conduct took place in Cambodia.

Having considered the parties' arguments, the Court determines that a bill of particulars is not warranted. Given the extensive discovery produced, defendant has not made a showing that he has or will suffer prejudice of the type that a bill of particulars is designed to remedy. Accordingly, the Court DENIES the motion for a bill of particulars.

## IV. MOTION TO DISMISS COUNT TWO OF THE SUPERSEDING INDICTMENT

On October 14, 2014, defendant filed a motion to dismiss Count Two of the superseding indictment, which charges a violation of 18 U.S.C. § 2423(c) and is reproduced in the above discussion of defendant's motion for a bill of particulars. Dkt. #631. The government filed an opposition on October 21, 2014, Dkt. #652, and defendant replied on October 27, 2014, Dkt.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

#658.  Defendant argues (1) that the length of time between his travel and the date of his arrest places him outside of the temporal scope of § 2423(c), and (2) that he did not travel in foreign commerce within the meaning of § 2423(c) because (a) he had traveled to other Asian countries after his arrival in Cambodia and (b) was residing primarily in Cambodia at the time of the charged offense.

## A.    Temporal Scope

Defendant argues that because he was arrested approximately five months after flying to Cambodia from Los Angeles, he had "long since ceased 'traveling' at the time of his arrest," placing him outside of the temporal scope of § 2423(c).  Mot. at 3.

In United States v. Clark, 435 F.3d 1100 (9th Cir. 2006), the Ninth Circuit rejected the argument that § 2423(c) requires that the charged "conduct occur *while* [the defendant is] traveling in foreign commerce."  Id. at 1107 (emphasis in original).  The court found "no plausible reading of the statute that would exclude its application" to the defendant's conduct because of a "limited gap" of less than two months between the defendant's transit from the United States to Cambodia and his arrest.  Id.  The court found further support for this reading in legislative history indicating that Congress had amended the statute in 2003 "so that 'the government would only have to prove that the defendant engaged in illicit sexual conduct with a minor while in a foreign country.' "  Id. at 1108 (quoting H.R. Rep. No. 108–66 at 51).  But the court reserved the question of "[w]hether a longer gap between the travel and the commercial sex act could trigger constitutional or other concerns."  Id. at 1107 n.11.  Defendant contends that the "potential constitutional concerns raised by the Clark court for longer gaps between the travel and the illicit sexual conduct . . . are realized" in his case.  Mot. at 4–5.  The Court disagrees.

Defendant relies on language in the Ninth Circuit's subsequent decision in United States v. Jackson, 480 F.3d 1014 (9th Cir. 2007), that provides little support for his argument.  First, defendant cites the court's statement that "Clark's holding that § 2423(c) 'does not require that the [illicit sex act] occur *while* traveling in foreign commerce,' is logical only on the understanding that travel can end for a United States citizen at *some* point while still abroad."  Id. at 1023 (brackets and emphasis in original) (internal citation omitted).  But this language concerned the parties' arguments about when "travel" can be said to terminate, which was significant in that case because the court determined that, under any viable definition of "travel," all of Jackson's travel took place before the statute was even enacted.  This statement does not clarify when a gap between travel and an illicit sexual act might become constitutionally problematic, let alone suggest that a gap of five months is beyond that point.  Defendant also cites the Ninth Circuit's explanation that the Clark court "relied on '[t]he

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

combination of Clark's *travel in foreign commerce* and his conduct of an illicit commercial sex act in Cambodia *shortly thereafter*.' " 480 F.3d 1014, 102–23 (9th Cir. 2007) (emphasis in original) (internal citations to Clark omitted). But the Jackson court also characterized Clark as "holding that a lapse in time between a defendant's travel and his sex act will ordinarily not preclude prosecution under" § 2423(c). Id. at 1024. Moreover, although over eighteen months had passed between the defendant's permanent departure from the United states and the illicit sexual conduct that formed the basis of his arrest, the court did not resolve the case on "the length of time between the end of travel and the sex act."[7] Id. at 1017 n.6. The Court therefore sees no indication in Jackson that an additional three months' time between transit and arrest makes the constitutional difference defendant urges.

Defendant cites no case, before or after Clark, in which a court dismissed a § 2423(c) count because of a gap between travel and illicit conduct or arrest. In contrast, the government cites several cases upholding convictions involving gaps of five months or longer. See, e.g., United States v. Pendleton, 658 F.3d 299, 301 (3d Cir. 2011) (rejecting a facial constitutional challenge to § 2423(c) in a case involving a six-month gap between flight to Germany and sexual molestation of a fifteen-year-old boy); Phillips v. United States, Nos. 3:04–cr–179, 4:08–cv–057, 2011 WL 4436526, at * (E.D. Tenn. Sept. 23, 2011) (rejecting a habeas corpus challenge in a case involving a gap of almost three years between travel and illicit conduct). Although none of these cases appear to squarely address the type of as-applied temporal scope challenge made by defendant, the Court finds defendant's arguments unpersuasive and concludes that the fact that defendant's case involved a gap of as long as five months (instead of two) between leaving the U.S. and committing an illicit act does not meaningfully distinguish Clark or warrant the dismissal of Count Two.

---

[7]The Jackson court did hold § 2423(c) inapplicable, but on facts not implicated here: that because defendant had permanently left the United States in 2001, taken up permanent residence in Cambodia, and never returned to the United States before his extradition, he had not traveled in foreign commerce after the enactment of the statute in April of 2003. 480 F.3d at 1023–24. The court expressly declined to "consider whether a two-year gap" that did not "straddle[] the statute's enactment" would be problematic. Id. at 1017 n.6. Cf. Clark, 435 F.3d 1100 at 1103, 1107–08 (finding § 2423(c) applicable and constitutionally applied where the defendant primarily resided in Cambodia but was arrested for conduct occurring less than two months after a visit to the United States).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

**B.      Travel in Foreign Commerce**

Defendant argues in the alternative that he cannot be prosecuted under § 2423(c) because he did not travel in foreign commerce at the time of the alleged offenses.  First, defendant argues that three trips of three to five nights each from Cambodia to Thailand and China constituted "intervening events that terminated his foreign travel from the United States to Cambodia."  Mot. at 5.  The Court sees no reason why these brief trips should be construed to cut off defendant's "travel" in foreign commerce, and defendant cites no legal authority for his position.  Cf. United States v. Weingarten, 632 F.3d 60, 71 (2d Cir. 2011) ("We do not suggest, of course, that the mere presence of an intermediate stop outside the United States on a multi-legged journey . . . will immunize a defendant from prosecution under § 2423(b).").  More fundamentally, defendant's argument misses the mark because as Clark and Jackson made clear, "the illicit sex act does not need to take place *during* the course of travel, but can occur thereafter."  Jackson, 480 F.3d at 1023 (emphasis in original).  Therefore, the Court rejects what defendant admits is a "novel" argument.  See Reply at 4.

Second, defendant contends that he was a Cambodian resident at the time of the alleged offenses and that—although he again cites no supporting case law—this purported foreign residency precludes application of § 2423(c).  He cites travel records indicating that he spent much of his time in Cambodia starting in 2003, see Mot. Ex. B, as well as an investigator's report that defendant "appeared to reside primarily in Cambodia" between August 19, 2005 and February 10, 2009, see Mot. Ex. D.  The government responds with evidence indicating that defendant was planning to return to Los Angeles on February 20, 2009, one day after he was arrested.  See Opp'n Exs. A, B.  Defendant counters with evidence that he intended to travel back to Cambodia two weeks later, "demonstrat[ing] that [he] was planning to visit the United States and always intended to return to Cambodia where he was residing."  Reply at 2–3; see id. Exs. A, B.

Assuming without deciding that defendant indeed resided primarily in Cambodia for some time before the alleged events, defendant's argument is not only unsupported by legal authority, but inconsistent with Clark.  In that case, the defendant "primarily resided in Cambodia from 1998 until his extradition in 2003."  Clark, 435 F.3d at 1103.  He renewed a business visa on an annual basis, and "typically took annual trips back to the United States."  Id.  Clark was arrested in Cambodia approximately two months after visiting family in the United States.  Id.  Rejecting a bevy of constitutional challenges to § 2423(c), the Ninth Circuit did not find it problematic that Clark "primarily resided" in Cambodia for the five years preceding his arrest.  Rather, the court explained that the statute clearly applied to Clark as a "citizen . . . who travel[ed] in foreign commerce" and "engaged in illicit sexual conduct," and that Clark's citizenship provided a sufficient nexus between his conduct and the United States to criminalize

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

‘O’

acts committed abroad.  Id. at 1107–09; see id. at 1106–07 ("Jurisdiction based solely on the defendant's status as a U.S. citizen is firmly established by our precedent. . . . Clark's U.S. citizenship is uncontested.  Accordingly, extraterritorial application of § 2423(c) to Clark's conduct is proper based on the nationality principle." (citations omitted)).  The Ninth Circuit analogized to Blackmer v. United States, 284 U.S. 421 (1932), in which the Supreme Court upheld the extraterritorial application of U.S. law to a citizen who had moved his residence to France, and to United States v. Corey, 435 F.3d 1100, 1108 (9th Cir. 2006), which affirmed the federal government's power to " 'exercise jurisdiction over American nationals *living abroad*.' "  Id. at 1108 (emphasis added).

Simply put, in enacting § 2423(c) to reach "[a]ny United States citizen or [permanent resident] who travels in foreign commerce, and engages in any illicit sexual conduct with another person," Congress did not limit the statute's applicability to citizens primarily residing in the United States.  Cf. United States v. Pendleton, 658 F.3d 299, 304 (3d Cir. 2011) ("The crime of conviction thus comprises three elements: (1) being a United States citizen or permanent resident; (2) traveling in foreign commerce; and (3) engaging in illicit sexual conduct.").  Here, defendant does not dispute—and in fact, his submitted evidence confirms—that he was a United States citizen at the time of the alleged acts, and that he traveled to and from the United States during the relevant time period.[8]  Again, defendant has presented

---

[8]At the time of the alleged crimes, § 2423(c) provided: "Any United States citizen or alien admitted for permanent residence who travels in foreign commerce, and engages in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years or both."  18 U.S.C. § 2423(c) (West 2006).  After March 2013 amendments, the statute now reads: "Any United States citizen or alien admitted for permanent residence who travels in foreign commerce *or* resides, either temporarily or permanently, in a foreign country, and engages in any illicit sexual conduct with another person shall be [punished]."  18 U.S.C. § 2423(c) (West 2013) (emphasis added).  Because generally "legislation, especially of the criminal sort, is not to be applied retroactively," the prior version of § 2423(c) applies to defendant's conduct.  Johnson v. United States, 529 U.S. 694, 701 (2000).  At oral argument, defense counsel argued that the statute's 2013 amendment showed that the prior version did not cover the conduct of a person like defendant, who purportedly resided in Cambodia and traveled to the United States only as a visitor.  However, given that the amended statute is phrased in the disjunctive, the Court reads the amendment to indicate that prior to 2013, a U.S. citizen had to travel in foreign commerce after § 2423(c)'s enactment to fall under the statute's scope, whereas under the new version, a U.S. citizen who has not traveled in foreign commerce since the statute's original enactment in 2003 would still be covered based on his citizenship and illicit sexual conduct.  That is the way the Ninth Circuit interpreted the statute in Clark, which

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

nothing that meaningfully distinguishes his case from <u>Clark</u> or suggests that § 2423(c)'s unambiguous statutory language does not apply to the conduct alleged.[9]

**C.     Conclusion**

In accordance with the foregoing, the Court DENIES defendant's motion to dismiss Count Two of the superseding indictment.

## V.     MOTION TO DISMISS COUNTS ONE AND TWO OF THE INDICTMENT ON FIFTH AND SIXTH AMENDMENT GROUNDS

On October 14, 2014, defendant filed a motion to dismiss Counts One and Two of the superseding indictment for purported violations of his Fifth and Sixth Amendment rights.  Dkt. #632.  The government filed an opposition on October 21, 2014, Dkt. #652, and defendant filed a reply on October 27, 2014, Dkt. #656.  Defendant argues that his prosecution under 18 U.S.C. § 2423 for acts that occurred in Cambodia has undermined his constitutional guarantees of due process, confrontation, and compulsory process in several ways.

First, defendant argues that his inability to compel the presence of court clerks who observed and summarized related Cambodian court proceedings "denies him the right to effectively confront the prosecution's alleged victim witnesses and his right to compel the presence of witnesses in his favor," as well as the "due process guarantee of a fair trial."  Dkt. #632 at 8.  Defendant contends that his efforts to compensate for the lack of compulsory process have been compounded by the prosecution's refusal to stipulate to admitting the clerks' written

---

was decided years before the 2013 amendment.  Therefore, defendant's U.S. citizenship and admitted travel from the United States to Cambodia in 2008 brings him within the purview of § 2423(c), no matter where he resided at the time.

[9]The Court also finds instructive <u>United States v. Weingarten</u>, 632 F.3d 60 (2d Cir. 2011), in which the defendant had resided in Belgium since 1984.  Although the Second Circuit found in that case that § 2423(b)—which contains the same extraterritorial limitation to a "United States citizen or an alien admitted for permanent residence in the United States who travels in foreign commerce"—could not be applied to travel that took place solely between foreign countries, the court did not suggest that the fact that the defendant was no longer a U.S. resident meant that he could not travel in foreign commerce as a United States citizen under the statute. <u>See</u> <u>id.</u> at 62, 64–70.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

summaries as foreign public documents, rather than by way of oral testimony.[10]  Because he cannot authenticate the summaries as admissible foreign public records without such a stipulation, defendant argues that he has been denied his confrontation rights under the Sixth Amendment.  This argument fails because "[i]t is well-established . . . that convictions are not unconstitutional under the Sixth Amendment even though the United States courts lack power to subpoena witnesses . . . from foreign countries." United States v. Zabaneh, 837 F.2d 1249, 1259–60 (5th Cir. 1988); see also United States v. Resurreccion, 978 F.2d 759, 762 (1st Cir. 1992) ("The Constitution does not automatically entitle a criminal defendant to unobtainable testimony.").  Because "the Sixth Amendment can give the right to compulsory process only where it is within the power of the federal government to provide it," courts have rejected similar compulsory process arguments.  See United States v. Greco, 298 F.2d 247, 251 (2d Cir. 1962) (denying a defendant's claim that his Sixth Amendment rights were violated where "an essential element of the crimes charged was the theft which occurred in Canada and he did not have an absolute right to compel the attendance of Canadian witnesses"); United States v. Haim, 218 F. Supp. 922, 926–27 (S.D.N.Y. 1963) (denying a defendant's motion to dismiss an indictment on the ground that his inability to compel foreign witnesses denied him his right to compulsory process).  Nor does this argument have any merit under the Due Process Clause of the Fifth Amendment, to the extent defendant so argues.  See United States v. Bianchi, 386 Fed. App'x 156, 159 n.5 (3d Cir. 2010) (explaining that there is " 'little, if any, difference' between Fifth Amendment due process and Sixth Amendment compulsory process claims" (quoting Gov't of Virgin Islands v. Mills, 956 F.2d 443, 445 n.4 (3d Cir. 1992))).

Second, defendant argues that his Fifth and Sixth Amendment rights have been undermined by the prosecution's receipt of the file for defendant's appeal to the Cambodian Supreme Court, including filings by defendant's Cambodian lawyer that contain exculpatory statements by defense witnesses and other materials that reveal defense strategy.  The government responds that these documents were available because defendant's Cambodian lawyer chose to file documents "in the Cambodian courts but not in camera or the equivalent." The Court finds defendant's argument unpersuasive because he has not cited—and the Court has not found—any legal authority supporting the proposition that the revelation of documents

---

[10]The government states that it will not stipulate to admission of the Cambodian court documents because they "are, at best, Cambodian language non-verbatim summaries, sometimes interpreted from Vietnamese by a person who acknowledges that he was not providing accurate interpretations, of children reporting sexual assaults to adults who may or may not have changed the register, tone, and vocabulary of the statements themselves." Dkt. #652 at 11.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

filed in a separate case can justify the dismissal of a criminal indictment, even if such documents are indicative of defense strategy.

Third, defendant argues that his constitutional rights have been violated because he was forced to depose a defense witness who could not be compelled to come to the United States from Cambodia, giving the prosecution the opportunity to cross-examine the witness before trial and prepare a more effective rebuttal to the witness's testimony. The government responds that defendant chose to depose the witness, entitling the government to cross-examine him. See Fed. R. Crim. P. 15(e)(2) ("The scope and manner of the deposition examination and cross-examination must be the same as would be allowed during trial."). The only authority cited by defendant, Wardius v. Oregon, 412 U.S. 470, 476 (1973), is completely inapposite: in the language cited by defendant to support his argument that allowing the government to cross-examine defendant's witness before trial was unfair, the Supreme Court was discussing the fact that Oregon law granted "no discovery rights to criminal defendants" while providing extensive discovery rights to the prosecution, id. at 475. The Court does not find any support in Wardius, or anywhere else, for the proposition that a defendant who uses Rule 15 to obtain testimony from an otherwise unavailable witness is entitled to dismissal of the charges against him when the government exercises its right to cross-examine that witness.

Finally, defendant argues that the prosecution's deposition of a government witness in Cambodia gave the prosecution a preview of defendant's cross-examination strategy with respect to similar witnesses whom the government intends to call at trial. He contends that this amounts to discovery of defense counsel's opinion work product, and that he "faced the Hobson's choice of not cross-examining the government's witness or revealing his cross-examination strategy with respect to the other NGO counselor witnesses." Dkt. #632 at 11. Defendant claims that this violated his Sixth Amendment right to prepare a defense. But defendant cites no authority for the proposition that the Constitution is violated when the prosecution takes a Rule 15 deposition. In fact, the Ninth Circuit has previously rejected similar claims. See United States v. Sines, 761 F.2d 1434, 1441–42 (9th Cir. 1985) (finding "without merit" a defendant's arguments that the taking and admission of a Rule 15 deposition in Thailand violated his Confrontation Clause and effective assistance of counsel rights). Defendant's purported "Hobson's choice" is present in every case where the prosecution moves to take a Rule 15 deposition in a foreign country, and yet both the Ninth Circuit and other federal circuits "have upheld the taking of depositions of witnesses in foreign countries with the defendant participating by video-conferencing or telephonic means from the United States." United States v. Sapse, No. 2:10–CR–0370–KJD–GWF, 2011 WL 1576898, at *4–5 (D. Nev. Apr. 26, 2011) (citing United States v. Medjuck, 156 F.3d 916, 920 (9th Cir. 1998), United States v. McKeeve, 131 F.3d 1 (1st Cir. 1988), United States v. Gifford, 892 F.2d 263 (3d Cir. 1990), and United States v. Salim, 855 F.2d 944 (2nd Cir. 1988)). Indeed, "the shrinking size

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

of the globe means that certain criminal activities increasingly manifest an international cachet and, because federal courts frequently lack the power to compel a foreign national's attendance at trial, Rule 15 may offer the only practicable means of procuring critical evidence." McKeeve, 131 F.3d at 8.

In short, the novel constitutional deprivations defendant alleges are either traceable to the actions of defendant's own counsel, likely to arise whenever a defendant is tried for violating a statute that criminalizes extraterritorial conduct, or both. Defendant cannot through the actions of his attorneys create Fifth or Sixth Amendment grounds for dismissing the charges against him, and Congress's ability to criminalize the conduct of its citizens abroad is well established. See, e.g., Blackmer v. United States, 284 U.S. 421 (1932) (explaining that the extraterritorial application of U.S. law to its citizens abroad does not violate the Fifth Amendment); United States v. Corey, 232 F.3d 1166, 1179 n.9 (9th Cir. 2000) ("There is no doubt that the United States may exercise jurisdiction over American nationals living abroad, regardless of where the crime is committed."); see also United States v. Clark, 435 F.3d at 1108–1117 (9th Cir. 2006) (upholding the constitutionality of § 2423(c) in a case involving illicit sexual acts committed in Cambodia).

Defendant has presented no ground that would justify dismissal of Count One or Two. Accordingly, the Court DENIES defendant's motion to dismiss.

## VI.   MOTION TO COMPEL

On October 16, 2014, defendant filed a motion to compel. Dkt. #639. The government field an opposition on October 21, 2014. Dkt. #654. Defendant argues that evidence that is exculpatory or otherwise material, but as of yet undisclosed, "is known to the prosecution" and must be disclosed pursuant to Federal Rule of Criminal Procedure 16 and Brady v. Maryland, 373 U.S. 83 (1963).

Rule 16(a)(1)(E)(I) provides that "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and . . . the item is material in preparing the defense." "Materiality is a low threshold" that is satisfied if the information would help in preparing a defense, or even deciding to abandon a planned defense. United States v. Hernandez-Meza, 720 F.3d 760, 768 (9th Cir. 2013). Moreover, "[l]ack of knowledge or even a showing of due diligence won't excuse non-compliance" on the government's part." Id. Still, "[t]o receive discovery under this Rule, the defendant 'must make a threshold showing of materiality, which requires a presentation of facts which would tend to show that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

government is in possession of information helpful to the defense.' " <u>United States v. Doe</u>, 705 F.3d 1134, 1150 (quoting <u>United States v. Stever</u>, 603 F.3d 747, 752 (9th Cir. 2010)) (further internal citation marks and citations omitted).

Under the Supreme Court's decision in <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), "the government violates its constitutional duty to disclose material exculpatory evidence where (1) the evidence in question is favorable to the accused in that it is exculpatory or impeachment evidence, (2) the government willfully or inadvertently suppresses this evidence, and (3) prejudice ensues from the suppression (i.e., the evidence is 'material')." <u>Silva v. Brown</u>, 416 F.3d 980, 985 (9th Cir.2005) (citing <u>Strickler v. Green</u>, 527 U.S. 263, 281–82 (1999)). "When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within" the rule of <u>Brady</u>. <u>Giglio v. United States</u>, 405 U.S. 150, 154 (1972) (quoting <u>Napue v. Illinois</u>, 360 U.S. 264, 269 (1959)). Prosecutors have "a duty to learn of any favorable evidence known to the others acting on the government's behalf" and disclose it to the defendant. <u>Kyles v. Whitley</u>, 514 U.S. 419, 437–38 (1995). Appellate courts generally address <u>Brady</u> in the postconviction context, where the analysis largely centers on prejudice. The Ninth Circuit has suggested that in the pretrial context, the "proper test . . . should be an evaluation of whether the evidence is favorable to the defense, i.e., whether it is evidence that helps bolster the defense case or impeach the prosecutor's witnesses." <u>United States v. Price</u>, 566 F.3d 900, 912 n.14 (9th Cir. 2009) (quoting <u>United States v. Acosta</u>, 357 F. Supp. 2d 1228, 1239-40 (D. Nev. 2005)). Rule 16 and <u>Brady</u> therefore impose similar duties on the government to liberally disclose any information that might favor the defense.

Defendant asserts in his motion that he "believes that exculpatory or otherwise material evidence for preparing his defense exists with respect to his trial *in absentia* in Cambodia and the trials of other Cambodian defendants at which witnesses in the instant matter have previously testified." Mot. at 3. He further states that he "is informed and believes that at least one representative of Immigration and Customs Enforcement in Cambodia has attended these trials." <u>Id</u>. Defendant does not point to any evidence supporting these beliefs, or even produce a sworn affidavit stating them.

The government asserts that it is "not aware of discoverable material that has not been produced," and insists that it has "gone above and beyond its technical discovery obligations throughout the pendency of this case, and will continue to do so." Opp'n at 1. The government points out that it has "produced more than 20,000 pages of discovery" including "records relating to other trials in Cambodia in which the government's trial witnesses have testified." <u>Id</u>. The government acknowledges its affirmative duties under <u>Brady</u> to turn over evidence "regardless of defense requests for production." <u>Id</u>. With regard to defendant's statement that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

an Immigration and Customs Enforcement official attended Cambodian trials for which records have not been produced, the government insists that it will produce any resulting discoverable report, and notes that defendant is free to call or cross-examine government witnesses about their presence at such trials.  Id. at 2.  In addition to these representations in briefing, the government has repeatedly stated at recent hearings that it has not withheld any discoverable Rule 16 or Brady evidence.

On the record before it, the Court has no basis on which to disbelieve the government's assertion that it is unaware of discoverable material that has not been produced.  The Court therefore DENIES the motion to compel.

## VII.  CONCLUSION

In accordance with the foregoing, the Court DENIES each of the following: (1) defendant's motion to reconsider its prior order and suppress evidence in light of the Supreme Court of Cambodia's recent decision, (2) defendant's motion for a bill of particulars, (3) defendant's motion to dismiss Count Two of the superseding indictment, (4) defendant's motion to dismiss Counts One and Two of the superseding indictment, and (5) defendant's motion to compel.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Deputy Clerk | | CMJ | |