UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

| Case No. | CR09-933(A)-CAS | Date | April 1, 2015 |
|---|---|---|---|

Present: The Honorable   CHRISTINA A. SNYDER

Interpreter   N/A

| Catherine Jeang | Not Present | David Herzog, Not Present<br>Patricia Donahue, Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant: | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| RONALD GERARD BOYAJIAN, PRO SE | NOT | | X | GEORGE BUEHLER, STANDBY COUNSEL | NOT | | X |

**Proceedings:** (IN CHAMBERS): GOVERNMENT'S MOTION *IN LIMINE* TO LIMIT CROSS-EXAMINATION OF TRIAL WITNESS I.V. (Dkt. No. 686, filed November 17, 2014)

DEFENDANT'S MOTION FOR EXCULPATORY AND IMPEACHING MATERIALS AND PERSONNEL FILES (Dkt. No. 754, filed January 5, 2015)

DEFENDANT'S MOTION FOR DISCLOSURE OF INFORMANTS AND COOPERATING WITNESSES (Dkt. No. 785, filed January 27, 2015)

DEFENDANT'S MOTION FOR ORDER DISQUALIFYING INTERPRETER (Dkt. No. 795, filed February 4, 2015)

## I.   INTRODUCTION

Defendant Ronald Gerard Boyajian is charged with one count of Travel with Intent to Engage in Illicit Sexual Conduct with a Minor in violation of 18 U.S.C. § 2423(b), one count of Engaging in Illicit Sexual Conduct with a Minor in Foreign Places in violation of 18 U.S.C. § 2423 (c), and one count of Commission of a Felony Offense Involving a Minor While Required to Register As Sex Offender pursuant to 18 U.S.C. § 2260A.  See First Superseding Indictment, Dec. 3, 2010. The charges arise from defendant's alleged illicit sexual acts with a minor girl in Cambodia, identified as S.L.  Further background and facts are known to the parties and set forth in the Court's orders dated November 3, 2011; July 6, 2011; September 17, 2012; and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

October 9, 2012.  Dkt. Nos. 254, 237, 127, 111.  A trial in this case is currently scheduled to begin on April 21, 2015.  Below, the Court considers several defense motions.

**II.   GOVERNMENT'S MOTION *IN LIMINE* TO LIMIT THE SCOPE OF CROSS EXAMINATION OF TRIAL WITNESS I.V. (Dkt. No. 686, filed November 17, 2014)**

This motion addresses the scope of cross-examination of confidential informant "I.V.," who investigated defendant in Cambodia while working with a non-governmental organization, and whose impeachment has been the subject of prior briefing. On November 26, 2012, the government filed a motion *in limine* to preclude certain types of impeachment of three prosecution witnesses, including I.V.  Dkt. No. 289.  The government anticipates that I.V. will testify to incriminating statements allegedly made by defendant and indicating his knowledge of and preferences relating to child prostitution in Cambodia.  See id. at 9–10.  In its November 2012 motion, the government sought to preclude, on grounds of irrelevance and unfair prejudice, cross-examination into I.V.'s parenting of adopted Cambodian children, his cremation of an infant who had died, and "unfounded allegations that I.V. is himself a human trafficker" because he adopted children without completing the proper paperwork.  Id. at 10, 19–21.  The government asserted that cross-examination should be limited to topics (1) related to I.V.'s investigation into defendant, (2) probative of I.V.'s character for truthfulness, or (3) relevant to his bias.  Id. at 20–21.

On January 14, 2013, defendant filed an opposition to the impeachment motion *in limine*. As to I.V., this opposition argued that defendant should be permitted to cross-examine I.V. about matters reflecting on his bias and credibility, namely "a history of lying about his purported life experiences, including false representations that he is degreed in early childhood education, that he is a physician . . ., that he previously enlisted in the U.S. Army, and that he received medical training while in the U.S. Army."  Dkt. No. 304 at 12.  It also noted that the I.V.'s direct testimony concerning defendant's alleged statements were the subject of a then-pending *in limine* motion to preclude tape recorded conversations.  Id. at 2 n.1.

On February 11, 2013, the government filed a reply to that opposition "acknowledg[ing] the defense's right to explore fully the credibility and bias of . . . I.V." Dkt. No. 318 at 3.  The prosecution explained that it "has no objection to the defense cross-examining I.V. regarding" the aforementioned "history of lying about his purported life experiences," or "any benefits I.V. has received that could be perceived as relevant to his biases in testifying." Id. at 4–5.  The government reiterated, however, that it objects to cross-examination regarding I.V.'s alleged cremation of a deceased infant. Id. at 5.  On August 14, 2013, the Court issued an order addressing the impeachment motion *in limine*.  Dkt. No. 424.  As to I.V., this order noted only

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

'O'

that there "appears to be no opposition" to the motion to preclude defendant from cross-examining I.V. "regarding a funeral he held for an infant in Cambodia." Id. at 25 n.12.

The government now moves for an order clarifying the permissible scope of cross-examination of I.V. The government concedes that defendant has the right to cross-examine I.V. on any matters relevant to his bias and credibility, "including whether he is a graduate of early childhood education, whether he was in the United States Army, whether he received medical training in the army, and whether he holds himself out to be a physician." Dkt. No. 686 at 2. The government submits, however, that defendant should not be permitted to cross-examine I.V. on, or otherwise raise in front of the jury, the topics of "(1) the funeral that I.V. held for an infant in Cambodia; (2) any of the circumstances underlying the child's death, cremation and funeral; (3) I.V.'s adoption of children and the circumstances surrounding their adoption; [or] (4) I.V.'s parenting skills." Id. The government asserts that these topics are irrelevant to the case against defendant and not probative of I.V.'s bias or character for truthfulness.

Although defendant has not filed a separate opposition to this motion and claims that he needs access to unspecified work product of former defense counsel in order to do so, defendant objects in a January 5, 2014 filing to the government's attempt to limit cross-examination of I.V. Dkt. No. 753 at 15–16. In this filing, defendant implies that I.V. cremated the child to cover up the cause of death, and that the cremation is evidence of a crime that bears on I.V.'s credibility. Id. at 16. Defendant asserts without citation that I.V. has provided perjurious testimony to this Court on issues including "asserting he had legally adopted said child." Id. Defendant also "believes there may also have been outstanding arrest warrants charging I.V. with child abuse, and child trafficking in Cambodia." Id. Defendant has also touched on these issues at multiple hearings.

The Federal Rules of Evidence allow a witness to be impeached by specific instances of past conduct only if those instances are "probative of the character for truthfulness or untruthfulness" of that witness or another witness about whose character the cross-examined witness has testified. Fed. R. Evid. 608(b). The topics on which the government seeks to preclude cross-examination are not probative of character for truthfulness, and carry a significant risk of unfair prejudice. Moreover, because defendant does not offer proof that I.V. was convicted of any crime in connection with the alleged cremation or related acts, this evidence cannot come in through Rule 609. See Fed. R. Evid. 609 (setting out rules for "attacking a witness's character for truthfulness by evidence of a criminal conviction" (emphasis added)); United States v. Price, 566 F.3d 900, 912 (9th Cir. 2009) ("[D]efendant, however, was not convicted of these offenses, and our inquiry is therefore governed by Rule 608(b), not Rule 609."). Therefore, the Court **GRANTS** the government's motion to limit

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

cross-examination of I.V. This ruling does not preclude defendant from cross-examining I.V. on topics that do bear on I.V.'s credibility, including those topics that the government concedes above are proper grounds for cross-examination.

### III. DEFENDANT'S MOTION FOR EXCULPATORY AND IMPEACHING MATERIALS AND PERSONNEL FILES

Through this motion, defendant seeks an order "compelling the Government to provide the defense with all impeaching material contained in the personnel files of the investigators and/or law enforcement officers and/or agents whom the Government will call to testify at trial and any evidentiary hearings held in this case."[1] Dkt. No. 754 at 1. Defendant requests this discovery with regard to all foreign agents or officers involved in his investigation, including but not limited to twelve officers named in defendant's motion. Id. at 4. The government filed an opposition on February 12, 2015. Dkt. No. 806. Defendant filed a reply on March 24, 2015. Dkt. No. 840.

Defendant bases his motion on the constitutional requirement that the prosecution disclose exculpatory evidence. See, e.g. Brady v. Maryland, 373 U.S. 83, 87 (1963) ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment."); United States v. Giglio, 405 U.S. 150, 154 (1972) (extending Brady to include evidence that impeaches a witness's credibility). Defendant relies in particular on United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991). Before trial in that case, a defendant charged with drug and racketeering offenses asked the district court to order the prosecution "to produce the personnel files of all law enforcement witnesses whom it intends to call at the trial . . . for evidence of perjurious conduct or other like dishonesty, in camera, to determine if those portions of the officers' personnel files ought to be made available to defense counsel for impeachment purpose." Id. at 30 (internal quotation marks omitted). The district court denied the motion, reasoning that the defendant had "the

---

[1] More specifically, defendant seeks categories of records including (1) complaints based on falsification of evidence, reports, or warrant affidavits; (2) complaints of violations of law or agency procedures in the interrogation of suspects or handling of witnesses; (3) allegations of perjury in administrative hearings, courtroom testimony, or the swearing of warrants; (4) allegations of falsification of evidence or reports, or the giving of perjurious testimony, in any internal agency investigations; (5) reports of administrative actions taken against an officer or agent on the basis of breaches of duty or violations of agency rules and regulations; (6) judicial findings pertinent to the types of misconduct described herein, or (7) "[o]ther evidence beraing on the credibility of the officer, investigator, or agent." Dkt. No. 754 at 3–4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

obligation of identifying a specific wrongdoing before receiving an in camera inspection of the files." Id. The Ninth Circuit found this to be error, explaining that "the government has a duty to examine personnel files" of testifying officers "upon a defendant's request for their production." Id. at 31 (citing United States v. Cadet, 727 F.2d 1453, 1467 (9th Cir. 1984)). The court stated that the "obligation to examine the files arises by virtue of the making of a demand for their production. However, following that examination, the files need not be furnished to the defendant or the court unless they contain information that is or may be material to the defendant's case." Id. Defendant argues that the government has failed to comply with its Henthorn obligations, which he submits extend to any Cambodian law enforcement officials involved in his investigation and arrest.

At a hearing on February 5, 2015, government counsel represented that they are aware of their ongoing Henthorn obligations, have asked the relevant American government agencies for any material information, and will disclose any exculpatory or impeaching evidence of which the government becomes aware. The government repeated these representations in its written opposition. See Dkt. No. 806 at 1. The government denies that its Henthorn obligations extend to Cambodian law enforcement officers, and points out that the cases defendant cites in support of that argument involved domestic law enforcement agencies, not foreign law enforcement. See Kyles v. Whitley, 514 U.S. 419 (1995) (local police in Louisiana); United States v. Fort, 472 F.3d 1106 (9th Cir. 2007) (local police in San Francisco).[2] While maintaining that it is "not obligated to obtain or review Cambodian personnel files," the prosecution states that it has nonetheless investigated and disclosed to defendant and the Court allegations against two Cambodian law enforcement officers whom the prosecution intends to call as witness at trial. Dkt. No. 806 at 1–2.

---

[2] The Fort court determined that police reports prepared by San Francisco police officers prior to the federal prosecution of the defendants were covered by Federal Rule of Criminal Procedure 16(a)(2), which exempts from disclosure to the defense "the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fort, 472 F.3d at 1107; Fed. R. Crim. P. 16(a)(2). The court reached this conclusion in part by concluding that "government agent," within the meaning of Rule 16(a)(2), includes "non-federal personnel whose work contributes to a federal criminal 'case.' " Fort, 472 F.3d at 1113. In addition to the fact that Fort involved domestic government agents, defendant's reliance on this case is misplaced because the Ninth Circuit took pains to note that the case did "not involve the government's disclosure obligations under Brady . . . or other disclosure rules" and "pertain[ed] to inculpatory, not exculpatory evidence." Id. at 1109–10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

Defendant has not cited—and the Court has not found—any case extending Henthorn to foreign law enforcement officials. Respect for sovereignty and the obvious practical difficulties that would result from such a rule counsel against broadly extending Henthorn to cover foreign officials absent direction from a higher court. In addition, without further specifics as to how defendant believes his Henthorn rights are being violated, and in light of the government's continued representations that it is cognizant of and complying with its Henthorn obligations, the Court has no basis for crafting any relief for defendant. Accordingly, this motion is **DENIED**.

### IV. DEFENDANT'S MOTION FOR DISCLOSURE OF INFORMANTS AND COOPERATING WITNESSES

On January 27, 2015, defendant filed a motion for disclosure of informants, cooperating sources and witnesses, and related information. Dkt. No. 785. In this motion, defendant seeks information concerning: "the identity of the government's confidential sources; informants; cooperators; informant witnesses; cooperating witnesses; immunized witnesses; civilian witnesses who have received consideration and are undisclosed sources—and any other undisclosed informant, source, and cooperator." Dkt. No. 785 at 2. In addition to the name and address of any informants or sources, defendant seeks disclosure of "beneficial plea agreements; pocket agreements; immunities; promises; ascertainable expectations; payments; case-related 'deals,'" and other information relevant to impeaching any such informants or sources. Id. at 7. The government filed an opposition on February 12, 2015, and defendant filed a reply on March 23, 2015. Dkt. Nos. 805, 841.

#### A. Applicable Law

The Supreme Court has recognized that the prosecution has a qualified privilege to "withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." Roviaro v. United States, 353 U.S. 53, 59 (1957). This privilege is intended to further the "public interest in effective law enforcement" by encouraging citizens to "communicate their knowledge of the commission of crimes to law-enforcement officials" by preserving their anonymity. Id. However, this privilege has limitations. First, "where the disclosure of the contents of a communication will not tend to reveal the identity of an informer," or where the identity of the informant has already been disclosed, "the privilege is no longer applicable." Id. at 60. Second, "[w]here the disclosure of an informant's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to the fair determination of cause, the privilege must give way." Id. at 60–61. This determination requires "balancing the public interest in protecting the flow of information against the individual's right to prepare his defense . . . taking into

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Id. at 61. "In practice these factors have focused on (1) whether the testimony would be 'relevant and helpful to the defendants' case, especially in terms of the relationship between the asserted defenses and the likely testimony of the informant, which in turn will often depend on the degree of involvement by the informant in the charged crime, and (2) the government's interest in protecting the safety of an informant." United States v. Sai Keung Wong, 886 F.2d 252, 255 (9th Cir. 1989) (citations omitted).

"The defendant bears the burden of demonstrating a need for disclosure of a confidential informant's identity." United States v. Amador-Galvan, 9 F.3d 1414, 1417 (9th Cir. 1993). The defendant "must show that he has more than a 'mere suspicion' that the informant has information which will prove 'relevant and helpful' or will be essential to a fair trial." Id. (quoting United States v. Williams, 898 F.2d 1400, 1402 (9th Cir. 1990)); accord United States v. Warren, 42 F.3d 647, 654 (D.C. Cir. 1994) ("[D]efendants face 'a heavy burden . . . to establish that the identity of an informant is necessary to [the] defense.' Speculation as to the information the informant may provide is insufficient." (citations omitted)).

It is easier for a defendant to meet this burden where the informant is not a percipient witness to or participant in the crime charged. The Ninth Circuit's cases have drawn a distinction "between those situations wherein an informant's role was merely peripheral, and in contrast, those situations wherein the informant actually witnessed the crime . . . or . . . even helped instigate the criminal transaction." United States v. Hernandez, 608 F.2d 741, 744 (9th Cir. 1979) (citations omitted); see United States v. Connolly, 479 F.2d 930, 933–34 (9th Cir. 1973) (affirming refusal to mandate disclosure of informant who led agents to narcotics defendant but neither witnessed nor participated in the crime), abrogated on other grounds by United States v. Bagley, 765 F.2d 836, 844 (9th Cir. 1985); see also United States v. Skeens, 449 F.2d 1066, 1071 (D.C. Cir. 1971) ("Roviaro does not require disclosure of an informant who was not an actual participant in or a witness to the offense charged."). Still, even where the informant was a witness to the crime, "disclosure of the identity or address of a confidential informant is not required unless the informant's testimony is shown to be material to the defense." United States v. Saa, 859 F.2d 1067, 1073 (2d Cir. 1988).

Where the defendant makes the required "threshold showing of need," the district court must hold an *in camera* hearing. Amador-Galvan, 9 F.3d at 1417. For example, one district court was held to have abused its discretion in not holding such a hearing where the defendants showed that the identity of confidential informants who had helped identity one of the defendants as a smuggling suspect would have been relevant and helpful to their case, where the government's theory of the case hinged on whether the defendant drove a certain car, and the

informants could have weakened the government's case by "provid[ing] eyewitness testimony" or "information which might lead to a firsthand source or circumstantial evidence." Id.

    B.    Application

Defendant argues that "[i]t is clear that the government has relied on informants in preparing its case." Dkt. No. 785 at 2. He also states that "[a] number of cooperators and informants are subject to disclosure, as is related information." Id. at 6. But despite quoting case law to the effect that a defendant seeking disclosure of an informant " 'must explain to the court as precisely as possible what testimony he thinks the informer could give and how this testimony would be relevant to a material issue of guilt or innocence,' " defendant offers no details as to what evidence he believes the informants to be in possession of, or how the informants would be relevant and helpful to his defense. Id. at 5 (quoting United States v. Blevins, 960 F.2d 1252, 1259 (4th Cir. 1992)).

The government asserts that it has already disclosed the two informants it intends to call in its case-in-chief: (1) I.V., who participated in the investigation into defendant's conduct in Cambodia, and (2) CW-1, an inmate to whom defendant spoke while defendant was incarcerated in the United States."[3] Dkt. No. 805 at 1. The government maintains that it previously produced discovery regarding these two informants, including their true identities, the scope of their anticipated testimony, their criminal histories, information related to potential biases and credibility, and any benefits received from the government. Id. The government further states that on February 11, 2015, the government produced to defendant and his standby counsel a disk containing redacted versions of the previously produced discovery concerning CW-1. Id. at 3. The government denies that defendant has made a showing that would justify any further types of disclosures about informants, and represents that it will continue to produce information about benefits any informant receives "on a rolling basis." Id.

In reply, defendant offers no further specifics to support his contention that the government is refusing to reveal further informants who might be crucial to his defense, or what testimony he believes those informants might give. He nevertheless asserts that "[a]t the very least, the Government should be made to disclose the informants who were active participants or witnesses to the offenses charged, such that this Court, using the procedures set forth in United

---

[3] At oral argument, defendant argued that, at minimum, Ms. Sin Kim is another informant. The government contends that "Ms. Sin Kim is not an informant; she is a percipient witness." Dkt. No. 805 at 1 n.1. The government also asserts that it has "identified her and produced discovery that indicates the scope and nature of her testimony." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

States v. Ordonez, 737 F.2d 793, 807–09 (9th Cir. 1984) can assess whether, first, there are any further informers or cooperators who should be disclosed to [defendant], [and] whether they are going to testify for the Government or not." Dkt. No. 841 at 2.

In Ordonez, the defendants appealed the district court's order denying disclosure "of the identity of the person whose information triggered the investigation" underlying their prosecution. 737 F.2d at 807. In support of their motion for disclosure, the defendants submitted a police affidavit filed in support of a search warrant, representing that the officer had "received information from a confidential, reliable informer" that a person by the name of "Jaime" had sold cocaine to the officer. Id. The informer identified "Jaime" as a non-defendant, and one of the defendants, who went by the name "Jaime," argued based on the affidavit that the informer "would have been a material witness to bolster his defense of mistaken identity" because the informer could have testified that another person—not defendant—was the "Jaime" involved in the drug operation. Id. at 807–08. The Ninth Circuit held that the district court erred when it found "that the informer's testimony would have been helpful to [the defendants'] defense," but nevertheless denied the motion for disclosure for vague reasons. The Ninth Circuit remanded for the district court to conduct *de novo in camera* proceedings and make a clear record to determine if the balancing test for disclosure was properly applied. Id. at 808–09. Defendant's reliance on this case is misplaced because he has not come close to making a comparable evidentiary showing that undisclosed informants exist who might have testimony helpful to his defense.

Defendant has not met his burden of explaining "as precisely as possible what testimony he thinks the informer could give and how this testimony would be relevant to a material issue of guilt or innocence." Nor has defendant presented any specifics to substantiate his vague allegations that there are additional confidential informants, beyond those already identified by the government, whose identities or other details should be disclosed. Accordingly, this motion is **DENIED**.

**V. DEFENDANT'S MOTION FOR ORDER DISQUALIFYING INTERPRETER**

On February 4, 2015, defendant filed the instant motion asking the Court to disqualify the Khmer language interpreter the government has previously used in this case, Rithy Lim ("Lim"), and appoint a "neutral Cambodian language interpreter who has had contact with neither party." Dkt. No. 795 at 1–2. Defendant also seeks the appointment of a second interpreter to assist him in "challenging and addressing erroneous interpreting and translation." Id. at 2. The government filed an opposition on February 12, 2015. Dkt. No. 804. Defendant filed a reply on March 24, 2015. Dkt. No. 842.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

Federal Rule of Evidence 604 provides in its entirety: "An interpreter must be qualified and must give an oath or affirmation to make a true translation." Fed. R. Evid. 604. 28 U.S.C. § 1827 authorizes the certification of interpreters in federal courts, and directs judges to "utilize the services of the most available certified interpreter, or when no certified interpreter is reasonably available, as determined by the presiding judicial officer, the services of an otherwise qualified interpreter." 28 U.S.C. § 1827(d)(1). "The clerk of the court . . . shall be responsible for securing the services of certified interpreters and otherwise qualified interpreters required for proceedings initiated by the United States, except that the United States attorney is responsible for securing the services of such interpreters for governmental witnesses." Id. § 1827(c)(2).[4]

### A. Defendant's Request to Disqualify Rithy Lim

It appears that defendant objects both to Lim being used as courtroom interpreter of live testimony, and as a translator of discovery materials for transcription purposes. However, defendant submits no evidence suggesting that Lim is biased or incompetent to serve as an interpreter, and cites no case law that would support disqualifying Lim. Rather, defendant objects, without offering any supporting evidence, that Lim "does not have either the statutory qualifications or the qualifications necessary as an expert," and may speculate and interpret language rather than strictly translate it. Dkt. No. 795 at 5. Defendant therefore argues that Lim "should be excluded from the role of an interpreter" and that the Court should "appoint its own neutral, qualified, and hopefully certified, Cambodian language expert." Id.

Defendant mostly cites cases involving challenges to transcripts of recordings admitted as evidence against criminal defendants.[5] Defendant appears to cite many of these cases in support of his argument that he requires the assistance of his own interpreter to establish at the trial level

---

[4]This Court's website states: "When interpreters are needed for prosecution witnesses, the United States Attorney's Office secures contract interpreters as needed. When defense witnesses need interpreters, defense counsel should notify the courtroom deputy clerk, who will then place a request with Interpreter Services." United States District Court, Central District of California, Interpreter Services, https://www.cacd.uscourts.gov/interpreters.

[5]See, e.g., United States v. Ademaj, 170 F.3d 58, 65–66 (1st Cir. 1999) (holding district court had not abused discretion in allowing jury to use translated transcripts of taped conversations, where no specific objections were made to the transcripts' accuracy); United States v. Renfigo, 789 F.2d 975, 977–78, 980–84 (1st Cir. 1986) (affirming decision to admit as evidence English transcripts of Spanish-language recorded conversations, and noting that the defendants had the opportunity to cross-examine the persons who translated the transcripts);

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

'O'

his expected objections to translation, and preserve any such objections for appeal. None of these cases, however, supports his motion to exclude Lim because of the mere fact that Lim has previously provided interpretation and translation services for the prosecution, and defendant points to no allegedly inaccurate translations already performed by Lim.

Defendant also cites cases involving witness' interpretations of conversations in English including coded language. See, e.g., United States v. Freeman, 498 F.3d 893, 901–03 (9th Cir. 2007) (finding properly admitted FBI agent's expert interpretation of encoded drug jargon, but improper admission of same witness's interpretation of non-encoded but ambiguous statements "based on his general knowledge of the investigation"); United States v. Freeman, 730 F.3d 590, 596–97 (6th Cir. 2013) (holding erroneous trial court's admission of FBI agent's lay testimony interpreting English-language conversation). These cases are inapposite because they did not involve a court-approved interpreter at all, but rather government agents who exceeded the bounds of permissible lay opinion or testified to matters on which they lacked personal knowledge.

Nor do the cases that defendant cites that actually involved interpreters provide any support for disqualifying Lim. Defendant relies most heavily on an opinion of the Tenth Circuit that states:

> While in the nature of things, a disinterested interpreter is essential to an impartial interpretation of a witness' testimony, at the same time the trial court is necessarily accorded a wide discretion in determining the fitness of the person called, and the exercise of that discretion will not be disturbed on review in the absence of some evidence from which prejudice can be inferred.

Lujan v. United States, 209 F.2d 190, 192 (10th Cir. 1953). While Lujan supports the uncontroversial proposition that a court interpreter should be "disinterested," it is unclear how it advances defendant's motion, since he points to no indication that Lim is not disinterested or neutral. In Lujan, the defendant objected to the government's interpreter for trial witnesses "on the grounds that he was a blood relative of some of the witnesses for whom he would interpret and was biased on behalf of the government." Id. When the parties were unable to obtain another interpreter, the court proceeded to trial with the objected-to interpreter and another Native American translator as a "counter-interpreter" who interpreted for the defendant's witnesses. Id. The counter-interpreter suggested only minor corrections, and the Tenth Circuit found "nothing in th[e] record to indicate . . . that any part of any witness' testimony was misinterpreted to convey an erroneous meaning or impression to the jury," and concluded that the use of the interpreter had not prejudiced the defendant. Id. Here, defendant has pointed to

no evidence indicating that allowing Lim to continue to provide interpretive or translation services would be prejudicial, and—unlike in Lujan—there is no allegation that Lim is related to any of the witnesses or likely to be biased for some comparable reason.[6]

As noted above, defendant provides no reason—other than the mere fact that Lim has previously provided services for the government—to question his qualifications or impartiality. The government, on the other hand, offers evidence that Lim, who has been used at evidentiary hearings in this case for witnesses who required a Khmer language interpreter, is a qualified, neutral interpreter. The government states that because the Federal Court Interpreter Certification Exam ("FCICE") is not available for Khmer, a Khmer language interpreter cannot obtain certification by the Administrative Office of the United States Courts, and that an "otherwise qualified interpreter" must be used for that language. The government provides a copy of Lim's resume, and points out that Lim has "over twenty years of experience working as a Cambodian language interpreter," has been a California Judicial Counsel Registered Cambodian Interpreter since 2007, and passed the U.S. State Department's Khmer interpreter exam in 2009. See Dkt. No. 804 Ex. A. Lim has also provided interpretive services for the State Department, California Board of Parole, and Federal Public Defender's office, among others. Id.

The Court agrees with the government that defendant has offered no reason aside from his own speculation to disqualify Lim as a translator, and no case law that would support such a result. Moreover, having reviewed Lim's credentials, it appears that he is qualified. To the extent that defendant seeks to disqualify Lim, the motion is **DENIED**.

**B. Defendant's Request for Appointment of a Second Interpreter**

Defendant also requests that the Court appoint him his own interpreter to aid him in challenging Lim's translations. He asserts that he requires this assistance in order to address his concern that "Lim is not in fact providing reasonably accurate translations." Id. at 7. Defendant points out that courts have allowed challenges to government transcripts or translations in

---

[6]The other cases involving interpreters of live testimony and cited by defendant are similarly unavailing. See United States v. Long, 301 F.3d 1095 (9th Cir. 2002) (finding no abuse of discretion in denying defendant's motion for mistrial, where defendant claimed that the interpreter's skills were inadequate); United States v. Anguloa, 598 F.2d 1182 (9th Cir. 1979) (considering and denying due process challenge even though prosecution improperly requested *ex parte* that the court clerk replace the appointed interpreter after the first day of trial); United States v. Guerra, 334 F.2d 138, 142–43 (2d Cir. 1964) (denying appeal based on errors in translation that appeared to be of minimal significance).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

'O'

criminal cases. See, e.g., United States v. Armijo, 5 F.3d 1229, 1235 (9th Cir. 1993) (approving district court's statement that a defendant "had the right to call his own expert" to translate a tape in evidence and cross-examine the translator on the accuracy of her translation); United States v. Zambrana, 841 F.3d 1320, 1335–36 (7th Cir. 1988) (noting that a defendant had challenged government-prepared transcripts at trial, and advising that, if the parties cannot stipulate to a single transcript, a district court allow each side to put on evidence supporting the accuracy of its own transcript). However, he cites no case in which a court has ordered in-trial interpretive assistance of the kind defendant requests. Defendant represents that, if so directed, he will file an ex parte application for funding for an interpreter pursuant to 18 U.S.C. § 3006A(e)(1).[7]

The government asserts that defendant is "entitled to request a Khmer language interpreter for defense witnesses at trial" pursuant to 28 U.S.C. § 1827 and this Court's rules. Dkt. No. 804 at 6. To the extent that defendant objects to the translation of recorded discovery materials, the government responds that because the recordings are hearsay, they will not be offered in the prosecution's case-in-chief (and would only be used to refresh recollection or for impeachment), and are not analogous to the transcripts discussed in the cases cited by defendant, which were admitted as substantive evidence. The government also points out that defendant's motion "does not specify any objections to any of the translations." Id. at 7. The government concludes that if defendant requests "appointment of an interpreter to review every recording and document interpreted by Mr. Lim," that request "is well beyond what is authorized by [28] U.S.C. § 1827 and the court rules pertaining to interpreters, and should be denied." Id.

In his reply brief, defendant makes clear that he does not just want a translator to assist with non-English speaking defense witnesses at trial, but should instead be "afforded the independent expertise of a court-certified Khmer language translator/interpreter to assist [him]

---

[7]That statute provides in relevant part:

> Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court . . . shall authorize counsel to obtain the services.

18 U.S.C. § 3006A(e)(1).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

'O'

throughout the trial whenever interpreting or translation is at issue in this Court." Dkt. No. 842 at 5–6. Defendant represents that he needs a translator "who will be available to assist [defendant] to raise timely challenges to the accuracy and completeness of translation and interpretation of language issues as they arise during trial." Id. at 3. At oral argument, defendant requested in the alternative that, even if he is not provided an interpreter to help him object in real time to translation at trial, an interpreter be provided who could assist defendant in shaping the cross-examination of foreign language witnesses based on perceived ambiguities in the language being translated.

Having considered the parties' arguments, the Court concludes that defendant has provided no factual basis or legal precedent for his requests for interpretive or translation services that exceed the reasonable use of an interpreter for non-English-speaking defense witnesses, or to translate discovery or other evidentiary documents. As indicated in hearings on this motion, defendant may request CJA funding for these appropriate types of services. This motion is otherwise **DENIED**.

## VI. CONCLUSION

In accordance with the foregoing, the Court **GRANTS** the government's motion *in limine* to limit the cross-examination of witness I.V. (Dkt. No. 686). The Court **DENIES** defendant's motions for personnel files (Dkt. No. 754), disclosure of informants (Dkt. No. 785), and to disqualify the interpreter (Dkt. No. 795). The denial of defendant's interpreter-related motion is made without prejudice to his request of appropriate CJA funds as discussed herein.

IT IS SO ORDERED.

| | 00 | : | 00 |
|---|---|---|---|
| Initials of Deputy Clerk | | CMJ | |