UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES - GENERAL**                  **'O'**

| Case No. | CR09-933(A)-CAS | Date | January 19, 2016 |
|---|---|---|---|

| Present: The Honorable | CHRISTINA A. SNYDER |
|---|---|

| Interpreter | N/A |
|---|---|

| Catherine Jeang | Laura Elias | David Herzog / Vanessa Baehr-Jones |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendants: | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Ronald Gerard Boyajian, Pro Se | Not | X | | George Buehler, Standby Counsel | X | X | |

Proceedings: **(IN CHAMBERS) - DEFENDANT'S MOTION TO COMPEL THE GOVERNMENT TO PRODUCE DISCOVERY PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 16 AND BRADY/GIGLIO (Dkt. 1034, filed November 20, 2015)**

**DEFENDANTS MOTION FOR RECONSIDERATION OF ORDER PERMITTING 404(B) TESTIMONY (Dkt. 1038, filed November 23, 2015)**

**GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT EVIDENCE TO IMPEACH DEFENDANT UNDER FEDERAL RULES OF EVIDENCE 607, 608, & 609 (Dkt. 1041, filed November 23, 2015)**

**GOVERNMENT'S MOTION FOR EMPANELMENT OF AN ANONYMOUS JURY (Dkt. 1046, filed November 23, 2015)**

**GOVERNMENT'S MOTION IN LIMINE PRECLUDING DEFENDANT FROM PRESENTING IMPROPER LEGAL ARGUMENTS IN FRONT OF THE JURY (Dkt. 1053, filed November 23, 2015)**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES - GENERAL**                   **'O'**

## I.  INTRODUCTION

Defendant Ronald Gerard Boyajian is charged with one count of Travel with Intent to Engage in Illicit Sexual Conduct with a Minor in violation of 18 U.S.C. § 2423(b) ("Count One"), one count of Engaging in Illicit Sexual Conduct with a Minor in Foreign Places in violation of 18 U.S.C. § 2423(c) ("Count Two"), and one count of Commission of a Felony Offense Involving a Minor While Required to Register As Sex Offender pursuant to 18 U.S.C. § 2260A ("Count Three").  Dkt. 38.  The charges arise from defendant's alleged illicit sexual acts with a minor girl in Cambodia, identified as S.L.  Further background and facts are known to the parties and set forth in the Court's prior orders.  A jury trial is set to commence on January 26, 2016.  On January 11, 2016, the Court held a hearing on the motions discussed below.

## II.  DEFENDANT'S MOTION TO COMPEL THE GOVERNMENT TO PRODUCE DISCOVERY PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 16 AND BRADY/GIGLIO

On November 20, 2015, defendant filed a motion to compel the Government to produce discovery pursuant to Federal Rule of Criminal Procedure 16 as well as to produce Brady materials he alleges the Government has yet to produce.  Dkt. 1034.  On December 21, 2015, the Government filed an opposition.  Dkt. 1115.

Rule 16(a)(1)(E)(I) provides that "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and . . . the item is material in preparing the defense."  "Materiality is a low threshold" that is satisfied if the information would help in preparing a defense, or even deciding to abandon a planned defense.  United States v. Hernandez-Meza, 720 F.3d 760, 768 (9th Cir. 2013).  Moreover, "[l]ack of knowledge or even a showing of due diligence won't excuse non-compliance on the government's part." Id.  Still, "[t]o receive discovery under this Rule, the defendant 'must make a threshold showing of materiality, which requires a presentation of facts which would tend to show that the government is in possession of information helpful to the defense.' "  United States v. Doe, 705 F.3d 1134, 1150 (9th Cir. 2013) (quoting United States v. Stever, 603 F.3d 747, 752 (9th Cir. 2010)) (further internal citation marks and citations omitted); see also United States v. Mandel, 914 F.2d 1215, 1219 (9th Cir. 1990) ("Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES - GENERAL**             **'O'**

Under the Supreme Court's decision in Brady v. Maryland, 373 U.S. 83 (1963), "the government violates its constitutional duty to disclose material exculpatory evidence where (1) the evidence in question is favorable to the accused in that it is exculpatory or impeachment evidence, (2) the government willfully or inadvertently suppresses this evidence, and (3) prejudice ensues from the suppression (i.e., the evidence is 'material')." Silva v. Brown, 416 F.3d 980, 985 (9th Cir.2005) (citing Strickler v. Green, 527 U.S. 263, 281–82 (1999)). "When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within" the rule of Brady. Giglio v. United States, 405 U.S. 150, 154 (1972) (quoting Napue v. Illinois, 360 U.S. 264, 269 (1959)). Prosecutors have "a duty to learn of any favorable evidence known to the others acting on the government's behalf" and disclose it to the defendant. Kyles v. Whitley, 514 U.S. 419, 437–38 (1995). Rule 16 and Brady therefore impose similar duties on the government to liberally disclose any information that might favor the defense.

In the instant motion, defendant provides an extensive list of discovery materials he contends the government has either failed to sufficiently produce or has improperly withheld in violation of his constitutional rights. The Court finds, however, that defendant has failed to present a sufficient basis for the Court to compel further production of discovery from the Government.

First, it appears that the Government has already responded to many of these requests. For example, defendant contends that the Government has failed to produce the grand jury transcripts in his case. However, on November 30, 2015, the Court granted the Government's request that it be permitted to disclose these transcripts to defendant. Dkt. 1082. The Government contends that, shortly thereafter, it did, in fact, produce these transcripts to defendant. Likewise defendant contends that the Government has failed to respond to requests for DNA evidence and for communications relating to his removal from Cambodia. The Government responds, however, that it has complied with its discovery obligations by producing to defendant the DNA discovery it obtained from Bode Laboratories as well as communications in its possession between the United States and Cambodian governments relating to defendant. Finally, defendant identifies a host of items he requested from the Government in a letter dated May 4, 2015. In response, the Government submits a letter dated June 30, 2015, which it sent to defendant in response to his May 4, 2015 discovery request. Dkt. 1115, Ex. A. In this letter, the Government indicated that it was attaching four disks with materials it believed were responsive to several of defendant's request. Id. at 1. Regarding defendants remaining requests, the Government then proceeded to explain, item by item, how those items had either already been produced, could not be produced, or were not in the Government's possession. Id. at 4-9. Defendant may be dissatisfied with the Government's responses to his discovery requests, or he may believe that the Government has additional discovery materials that it has not produced. However, on the record before it, the Court has no

basis on which to disbelieve the Government's assertion that it has fully complied with its discovery obligations under Rule 16 and Brady.

Second, in the remainder of defendant's motion, he proceeds to make a number of discovery requests, which he concedes are made for the first time in the instant motion. Dkt. 1034, at 14 ("Due to the time constraints imposed on defendant . . . defendant includes here additional and/or more specific requests which are the result of his continuing review of the abridged discovery in his possession."). As an initial matter, the Court does not believe that a motion to compel is the appropriate procedure for defendant to make his initial discovery requests. Further, defendant has failed to "make a threshold showing" that any of the evidence he requests is material. See Doe, 705 F.3d at 1150. For the majority of these requests, plaintiff merely states that he is requesting additional discovery without even asserting that the evidence is material. For other requests, defendant makes only conclusory statements regarding the materiality of the evidence. For example, defendant requests documents related to Sous Vansak's appearance before a Cambodian judicial proceeding. However, he states only that "Mr. Vansak is a critical witness for the Government" without any explanation of why Vansak is a "critical witness" or how his appearance at a Cambodian judicial proceeding is material to his case. See United States v. Mandel, 914 F.2d 1215, 1219 (9th Cir. 1990) ("Neither a general description of the information sought nor conclusory allegations of materiality suffice"). Finally, and in any event, the Government contends that it has already produced all of the materials in its possession that are responsive to many of these requests. Again, defendant may be dissatisfied with the Government's responses, but he has presented no evidence that the Government has withheld discoverable material to which he is entitled.

Accordingly, the Court has no basis on which to compel the Government to produce additional discovery at this time. The Court therefore DENIES defendant's motion to compel.

### III. DEFENDANTS MOTION FOR RECONSIDERATION OF ORDER PERMITTING 404(B) TESTIMONY

On May 29, 2012, defendant filed a motion requesting that the Court exclude evidence concerning his 1994 criminal convictions for unlawful sexual intercourse with a minor, in violation of California Penal Code § 261.5. Dkt. 176. On September 17, 2012, the Court denied this motion finding, in relevant part, that defendant's criminal convictions were admissible pursuant to Federal Rule of Evidence 404(b) as evidence of defendant's modus operandi. Dkt. 237. Defendant now moves the Court to reconsider its prior order. Dkt. 1038. The Government opposed this motion on December 21, 2015. Dkt. 1113.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES - GENERAL**         'O'

A.    The Court's Prior Order

Pursuant to Rule 404(b), evidence of a defendant's crimes, wrongs, or other bad acts may be admitted to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]" Fed. R. Evid. 404(b). Rule 404(b) is an "inclusi[ve]" rule meaning "other acts evidence is admissible whenever relevant to an issue other than defendant's criminal propensity." United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir. 1982). In the Court's prior order, it determined that evidence of defendant's criminal convictions was probative of defendant's modus operandi. Dkt. 237, at 12. "[I]n order to admit Rule 404(b) identity evidence on the signature facts or modus operandi theory, the District Court must make a threshold determination that, based solely on the evidence comparing the past acts and the charged offense, a reasonable juror could conclude that the same person committed both crimes." United States v. Carroll, 207 F.3d 465, 469 (8th Cir. 2000).

Here, defendant's criminal convictions were based on his sexual relationship with two minor girls, K.S. and S.C. In its prior order, the Court found that, while defendant's relationship with K.S. and S.C. was not identical to his relationship with the Cambodian victims in this case, they were "related closely enough to warrant admission under Rule 404(b), a 'rule of inclusion.' " Dkt. 237, at 12 (citing United States v. Cherer, 513 F.3d 1150, 1157 (9th Cir. 2008)). Specifically, the Court noted the following similarities: (1) defendant initiated sexual relationships with both K.S. and S.C. when he was an adult and they were underage; (2) both K.S. and S.C. were virgins until defendant had sexual intercourse with them; (3) defendant was obsessed with K.S. and S.C. performing oral sex on him; (4) defendant controlled K.S. and S.C's food intake to keep them physically small and young looking; and (5) defendant provided living expenses, food, and clothing as partial consideration for sex. Dkt. 237, at 12. Similarly, the Court found that "defendant sought out petite, virginal, skinny minors in Cambodia to satiate his oral sex fixation, and provided financial benefits to his alleged victims and their families." Id. at 12-13. Accordingly, the Court found that "[t]he combination of defendant providing financial support for underage, skinny, virginal minors and engaging in similar sexual acts—especially his alleged fixation on oral sex—provides a sufficiently unique pattern of conduct to satisfy the admissibility standards of Rule 404(b)." Id. at 13 (citing United States v. Gonzalez, 533 F.3d 1057, 1064 (9th Cir. 2008) ("Beyond propensity, the evidence established a way of behavior that could be reasonably relied upon by a juror to convict [defendant] of the charged offenses.")).

B.    Analysis

In the instant motion, defendant contends that the Court should reconsider its prior order in light of the recent decision of the Government not to call K.S. to testify as a witness at trial. Defendant argues that the Court's prior order was principally based on the details of defendant's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES - GENERAL**          **'O'**

relationship with K.S. and that, when viewed alone, defendant's relationship with S.C. is not sufficiently similar to the charged acts to be probative of defendant's modus operandi.

In fact, the Government does not intend to call either K.S. or S.C. to testify as a witness at trial. Instead, the Government states that it intends to admit only defendant's 1994 certified conviction records. But, regardless of the manner in which the Government elects to present its case, defendant's argument is beside the point. In the Court's prior order it found that "evidence of defendant's prior California convictions and facts underlying those acts . . . is admissible pursuant to Rule 404(b)." Dkt. 237 at 13. This conclusion was not dependent on the particular format in which the government elected to present this evidence. Rather, the Court made a threshold determination that the details of defendant's relationship with K.S. and S.C. were sufficiently similar to his alleged relationship with the Cambodian victims in this case to "warrant admission under Rule 404(b), 'a rule of inclusion.'" Dkt. 237 at 12. In the instant motion, defendant does not claim that any of the facts regarding his relationship with K.S and S.C. have changed since the Court's prior ruling. That the Government has now determined to present evidence of defendant's convictions through his certified conviction records does not constitute a "material difference in fact" for purposes of a motion for reconsideration. See Central District of California, L.R. 7-18 ("A motion for reconsideration . . . may be made only on the grounds of (a) a material difference in fact or law . . . or (b) the emergence of new material facts or a change of law . . . or (c) a manifest showing of failure to consider material facts").[1] Accordingly, the Court finds that defendant has identified no basis for reconsidering its prior motion. See also Navajo Nation v. Confederated Tribes and Bands of the Yakama Indian Nation, 331 F.3d 1041, 1046 (9th Cir. 2003) ("Whether or not to grant reconsideration is committed to the sound discretion of the court.").[2]

Moreover, defendant's conviction records are also independently admissible for a variety of purposes, other than to demonstrate defendants modus operandi. For example, the conviction records are necessary evidence for the Government to establish the elements of Count Three, which charges defendant pursuant to 18 U.S.C. § 2260A. Section 2260A is a ten-year mandatory sentencing enhancement for committing a felony against a minor while required to register as a sex offender. To prove the elements of section 2260A, the Government must admit

---

[1] In fact, the Government's decision to present defendant's certified conviction records in lieu of the testimony of K.S. and S.C. will likely serve to significantly limit the potential prejudice to defendant from this evidence.

[2] Of course, the Government may only make arguments to the jury based on the evidence that is actually submitted at trial. Thus, to the extent the conviction records contain fewer factual details than would have been elicited through the live testimony of S.C. and K.S., the Government may be limited by the manner in which they determine to set forth their case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES - GENERAL**         **'O'**

evidence of defendant 1994 conviction, because the jury must find, as a matter of fact, that defendant committed a prior offense that required him to register as a sex offender. See United States v. Walizer, 487 F. App'x 374 (9th Cir. 2012) (vacating and remanding where district court, and not the jury, made a finding that defendant had been convicted of a prior sex offense for purposes of section 2260A). Accordingly, defendant's conviction records are independently admissible to establish a necessary element of section 2260A—i.e., that defendant had been convicted of a sex offense at the time he committed the offenses charged in Counts One and Two.

Further, the Court has already determined that evidence of defendant's sex offender registration status, including his criminal convictions, is probative of the reasons defendant traveled to Cambodia, which is relevant to Counts One and Two. Specifically, in an order dated August 14, 2013, the Court stated:

> As the government points out, this evidence has probative value for demonstrating the reason why defendant traveled to Cambodia. Defendant's status as a sex offender registrant made it more difficult to approach minors in California, and therefore defendant traveled abroad in order to avoid the restrictive effects of this status. Moreover, defendant's reasons for traveling to Cambodia are relevant to counts one and two

Dkt. 424, at 8. Accordingly, defendant's 1994 conviction records are admissible for several purposes in addition to demonstrating modus operandi.

For the foregoing reasons, the Court finds that defendant has presented no new facts or law that would require the court to reconsider its prior ruling that evidence of defendant's California convictions is admissible under Rule 404(b). Alternatively, evidence of defendant's convictions is also admissible for another purpose such as establishing the elements of section 2260A or demonstrating defendant's intent in traveling to Cambodia. Defendant's motion is therefore DENIED.

## IV. GOVERNMENT'S MOTION FOR EMPANELMENT OF AN ANONYMOUS JURY

On November 23, 2015, the Government filed a motion requesting that the Court empanel an anonymous jury. Dkt. 1046. Specifically, the Government requests that the Court not reveal to either party the names, street addresses, or specific places of employment for any prospective jurors. The Government believes that, under the circumstances of this case, these precautions are necessary to protect the jury and prevent interference with the judicial process.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES - GENERAL**            'O'

### C. Legal Standard

The Ninth Circuit has recognized that, while "empaneling an anonymous jury is an unusual measure," it may nevertheless be permissible in limited circumstances. United States v. Shryock, 342 F.3d 948, 971 (9th Cir. 2003). Specifically, an anonymous jury may be empaneled "where (1) there is a strong reason for concluding that it is necessary to enable the jury to perform its factfinding function, or to ensure juror protection; and (2) reasonable safeguards are adopted by the trial court to minimize any risk of infringement upon the fundamental rights of the accused." Id.; see also 28 U.S.C. § 1863(b)(7) (a district court's jury plan "may . . . permit . . . [the court] to keep these [jurors'] names confidential in any case where the interests of justice so require"); United States District Court, Central District of California, General Order 13-13(7) ("The names of such jurors and associated juror information may be kept confidential in any case where the interests of justice so require."). In addition, although these factors are neither exhaustive nor dispositive, the Ninth Circuit has recognized that an anonymous jury may be appropriate based on a combination of the following factors: "(1) the defendants' involvement with organized crime; (2) the defendants' participation in a group with the capacity to harm jurors; (3) the defendants' past attempts to interfere with the judicial process or witnesses; (4) the potential that the defendants will suffer a lengthy incarceration if convicted; and (5) extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation and harassment." Shryock, 342 F.3d at 971; see also United States v. Brown, 303 F.3d 582. 602 (5th Cir. 2002) (considering same factors); United States v. Edmond, 52 F.3d 1080, 1091 (D.C. Cir. 1995) (considering same factors).

While the judge must find that there is a strong reason to conclude the jury needs protection to perform its factfinding function, "the judge need not conduct an evidentiary hearing on the subject." Ninth Circuit Manual on Jury Trial Procedures, § 2.4 Anonymous Juries (2013) (citing Edmond, 52 F.3d at 1092). "A district court's decision to empanel an anonymous jury is reviewed for an abuse of discretion." United States v. Fernandez, 388 F.3d 1199, 1244 (9th Cir. 2004). Moreover, in evaluating the district court's decision, an appellate court considers the "evidence available at the time the jury was empaneled, and all relevant evidence introduced at trial." Id.

### D. Analysis

In the instant case, the Court finds that three of the five factors identified by the Ninth Circuit weigh in favor of empaneling an anonymous jury. First, the Government has presented evidence that defendant has a history of witness tampering. Defendant was previously convicted, pursuant to California Penal Code § 261.5, for having unlawful sexual intercourse with two minor girls, K.S. and S.C. Dkt. 55. Prior to his conviction, and while he was released

on bail, defendant contacted S.C. and attempted to persuade her not to testify that defendant had engaged in sexual intercourse with her. Defendant told S.C. that if she did not want him to go to jail, all she had to do was say that he had never had sex with her. Dkt. 1046, Ex. A., at Bates 3125 ("[I]f you don't want me to go to jail . . . All you have to do is say you never had sex.").[3] When S.C. raised concerns that she would be committing perjury at defendant's request, defendant dismissed these concerns as "a joke" and stated: "Nobody prosecutes perjury." Id. at Bates 3127-28.

Defendant also threatened S.C. He told her that if she told anyone about their relationship her life and her mother's life would be affected in a "a big way," because his family would sue the police department, her school, her dean, and would prosecute her mother for child abuse. Id. at Bates 3131. Defendant threatened to sue S.C.'s family and take everything they had. Id. at Bates 3132 ("You know what's gonna happen? I'm gonna go to trial on this thing and if I win . . . you know what my family's gonna do to your family? My family's . . . gonna sue your family for everything she [sic] makes."); id. at Bates 3133 ("They're gonna go right into your mom's business, take everything she has"). Finally, defendant threatened that he might have to kill S.C's father if she said that she had sexual intercourse with defendant. Defendant told S.C. that if she admitted that defendant had engaged in sexual intercourse with her, her father was going to find out and would come after defendant. Id. at Bates 3128 ("Your dad's gonna come down here. He's gonna be crazy and he and I . . . are gonna end up having it out."). Defendant then told S.C. that he would have "to kill this guy to save my life," and stated: " 'Cause I tell you, as soon as, as soon as the police file these charges against me, I'm getting a gun." Id. at Bates 3129.

Coercive and violent threats such as these demonstrate that defendant is willing to "interfere with the judicial process" in order to avoid a criminal conviction. Many courts have found it prudent to empanel an anonymous jury where there were similar allegations of witness tampering. United States v. Gotti, 459 F.3d 296, 346 (2d. Cir. 2006) (two defendants charged with witness tampering in connection with grand jury testimony); United States v. Aulicino, 44 F.3d 1102, 1116 (2d. Cir. 1995) (defendants, while in pretrial detention, sough to bribe and threaten a witness and had attempted to influence a witness in a prior state prosecution); Brown, 303 F.3d at 602 (district court found that "several individuals in the case at bar have already proven their ability to corrupt the legal system" and noted that two co-conspirators had pled guilty to witness tampering).

---

[3] These statements are taken from a transcript of a telephone conversation between defendant and S.C., which was recorded by law enforcement. The transcript indicates that the phone call occurred on October 15, 1993. The Court's reference to Bates numbers in this order refers to the page numbers of the transcript of this phone call.

Second, if convicted, defendant faces a lengthy incarceration. Defendant is charged with one count of violating 18 U.S.C. § 2423(b) and one count of violating 18 U.S.C. § 2423(c). Defendants potential sentence under each of these counts is 30 years, which doubles pursuant to 18 U.S.C. § 2426 because defendant is a repeat offender. In addition, defendant is charged with one count under 18 U.S.C. § 2260A, which is a ten-year mandatory sentencing enhancement for committing a felony against a minor while required to register as a sex offender. Accordingly, defendant faces a potential sentence of 130 years in custody, effectively a life sentence, if convicted. The severity of defendant's sentence creates a strong incentive for defendant to attempt to improperly influence the outcome of his case. See also United States v. Deluca, 137 F.3d 24, 32 (1st. Cir. 1998) (defendants faced mandatory life sentences upon conviction, "which surely provided a strong inducement to resort to extreme measures in any effort to influence the outcome of their trial."); Shryock, 342 F.3d at 972 (defendants received sentences ranging from 384 months to life); United States v. Darden, 70 F.3d 1507, 1533 (8th Cir. 1995) ("All the defendants faced possible sentences of life in prison.").

Third, this case has received at least modest publicity. Defendants arrest in Cambodia was covered by national news outlets such as Fox News and the Washington Post. See, e.g., *U.S. Pedophiles Nabbed in Cambodia Sex-Tourist Sting*, Fox News, Aug. 31, 2009, http://www.foxnews.com/story/2009/08/31/us-pedophiles-nabbed-in- cambodia-sex-tourist-sting.html; Ashley Surdin, *3 Americans Charged With Traveling to Cambodia for Sex With Children*, Washington Post, Sept. 1, 2009, http://www.washingtonpost.com/wpdyn/content/article/2009/08/31/AR2009083102291.html. And there has been continued media interest in the progression of this case to trial. See, e.g., Fred Shuster, *Man charged with sex tourism gets 2014 L.A. trial date*, Los Angeles Daily News, Aug. 13, 2013, http://www.dailynews.com/general- news/20130813/man-charged-with-sex-tourism-gets-2014-la-trial-date.

In addition, another case in this district, United States v. Stanley Dan Reckzo, CR 07-1221-GHK, which involved a *pro se* defendant facing similar charges, received public attention during its recent trial. That case was reported on by both the Los Angeles Times and the Associated Press and some media outlets covered the trial's opening statements. See,e.g., Matt Hamilton, *L.A. man convicted of producing child pornography in the Philippines*, Los Angeles Times, March 10, 2015, http://www.latimes.com/local/lanow/la-me-ln-child- pornography-philippines-20150310-story.html.; *Convicted Rapist Faces Life in Federal Prison for Child Porn*, Associated Press, March 10, 2015, http://www.washingtontimes.com/news/2015/mar/10/convicted-rapist- faces-life-in-federal-prison-for-/. The Court can expect similar attention here. The media attention attendant to this case increases the risk that jurors' identities will become public, which creates a greater potential that jurors may be harassed, intimidated, or improperly influenced. See Deluca, 137 F.3d at 32 ("Moreover, their trial was prominently and extensively covered by local print and electronic media . . . to the degree that any public

disclosure of the jurors' identities would have enhanced the practicability, hence the likelihood, of efforts to harass, intimidate, or harm the jurors.").

Accordingly, three of the Shryock factors are present in this case and support empaneling an anonymous jury. See also Brown, 303 F.3d at 602-03 (upholding district court's decision to empanel an anonymous jury where the district court found that three of the relevant factors were present: (1) defendants had a demonstrated history of witness tampering; (2) if convicted, defendants faced lengthy sentences and massive fines; and (3) the case had received significant local and national publicity).

However, one additional factor also weighs in favor of empanelling an anonymous jury in this case. See also Shryock, 342 F.3d at 971 ("These factors are neither exclusive nor dispositive, and the district court should make its decision based on the totality of the circumstances."). If defendant, or anyone associated with the defense, were to attempt to influence, or even make contact, with one of the jurors in this case, that could readily create grounds for a mistrial. See United States v. Dutkel, 192 F.3d 893, 894 (9th Cir. 1999) ("[J]ury tampering cuts to the heart of the Sixth Amendment's promise of a fair trial . . . Once tampering is established, we presume prejudice and put a heavy burden on the government to rebut the presumption."); United States v. Henley, 238 F.3d 1111, 1117 (9th Cir. 2001) (presumption of prejudice applied where intrusion "interfered with the jury's deliberations by distracting one or more of the jurors"). It would be particularly inequitable in this case, which has been pending for over six years, and in which numerous resources have been expended by both the government and defendant, for defendant's trial to result in a mistrial. The relatively modest restrictions the Government is proposing will provide a necessary and useful precaution against a potential mistrial. Accordingly, for all of these reasons, the Court finds that there are "strong reasons" for concluding that anonymity is "necessary to enable the jury to perform its factfinding function." Shryock, 342. F.3d at 971.

The Court also finds that "reasonable safeguards" can be adopted in this case to minimize any potential prejudice to defendant from the use of an anonymous jury. One of the chief concerns in empaneling an anonymous jury is that jurors may infer from their anonymity that the defendant is somehow dangerous or untrustworthy. See id. at 972 ("Appellants allege that the use of an anonymous jury was prejudicial because it reinforced any preconceived impression the jurors might have had about the dangerousness of the Appellants."). However, courts have recognized that this danger can be avoided by providing the jury with a neutral rationale for the use of the anonymous jury. For example, in Shryock, the Ninth Circuit upheld the district court's use of an anonymous jury where the district court "instructed the jury that the reason for their anonymity was to protect their privacy from curiosity-seekers" and 'that the use of anonymous juries was commonplace in federal court." Id. at 972-73. And, in Fernandez, the Ninth Circuit upheld the district court's use of an anonymous jury where "the district judge was

careful to offer neutral justifications for the jury's anonymity that focused on juror confidentiality and suggested that such procedures are routine." 388 F.3d at 1245. Similar precautions have been found sufficient by other circuits. See, e.g. United States v. Ross, 33 F.3d 1507, 1521 (11th Cir. 1994) (district court explained that it wanted to insulate jurors from improper communications from the parties) ; Darden, 70 F.3d at 1533 (district court explained that jurors were being identified by numbers so that members of the media would not contact them). Here, as well, the Court can easily provide the jurors with a neutral rationale for keeping their identities confidential, which emphasizes that it is not a reflection on defendant.[2]

Courts have also recognized that use of an anonymous jury may limit the defendant's ability to conduct meaningful voir dire. However, here, the Government is only proposing that a few limited facts about the jurors' identities be kept confidential. The jurors' names and specific street addresses can have only limited, if any, relevance during voir dire, particularly where, as here, jurors will still provide information about their backgrounds and the cities in which they live. The jurors' specific places of employment may be of interest to defendant in assessing potential juror biases. However, this potential prejudice can be limited through rigorous voir dire regarding the nature of jurors' occupations as well as their personal and professional affiliations. See also United States v. Childress, 58 F.3d 693, 704 (D.C. Cir. 1995) (upholding anonymous jury given circumstances of case and precautions taken by court, including court's "searching voir dire" and extensive questionnaire). Accordingly, the risk of an anonymous jury can be appropriately contained through the use of precautions such as these.

In accordance with the foregoing, the Court finds that there are strong reasons for finding that an anonymous jury is necessary in this case and that reasonable safeguards can be adopted to minimize the potential prejudice to defendant. The Court therefore GRANTS the Government's motion.

## V. GOVERNMENT'S MOTION IN LIMINE PRECLUDING DEFENDANT FROM PRESENTING IMPROPER LEGAL ARGUMENTS IN FRONT OF THE JURY

On November 23, 2015, the Government filed a motion requesting that the Court issue an order precluding defendant from presenting certain legal arguments to the jury. In its motion, the Government states that it anticipates that defendant may attempt to present improper legal

---

[2] In its proposed voir dire questionnaire the Government has included the following language: "As is its practice, the Court will use only juror numbers, rather than names, on the questionnaires, during jury selection, and during the case." Dkt. 1040. Language such as this, combined with statements from the Court at the beginning of voir dire regarding the reasons for the use of an anonymous jury, should be sufficient to limit the potential that jurors will infer from their anonymity that defendant is guilty.

arguments to the jury during his opening argument, his cross-examination of government witnesses, and during his case-in-chief.

It is well-settled that questions of fact are to be decided by the jury, where as questions of law are to be decided by the Court. See United States v. Amparo, 68 F.3d 1222, 1224 (9th Cir. 1995) ("While the jury is the arbiter of the facts, the judge is the arbiter of the law: 'the judge must be permitted to instruct the jury on the law and to insist that the jury follow his instructions.' ") (citing United States v. Gaudin, 515 U.S. 506, 513 (1995)). Further, it is the duty of the Court, and not the parties, to instruct the jury on what the law is. Newsom v. Runnels, 378 Fed. App'x. 641, 642 (9th Cir. 2010) ("It is the duty of the court to instruct the jury as to the law and it is the duty of the jury to follow the law as it is laid down by the court.") (citing Sparf v. United States, 156 U.S. 51, 74 (1895) (Harlan, J.)). This principle applies with equal force in cases, such as this, where the defendant is proceeding *pro se.* See Faretta v. California, 422 U.S. 806, 835 n.46 (1975 ("The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law."). As such, in United States v. Marks, 530 F.3d 799, 807 (9th Cir. 2008), the Ninth Circuit upheld the district court's decision to cut short a *pro se* defendants opening statement and temporarily halt his cross-examination of a government witness, on the basis of defendant's "incessant discussion of (often frivolous) legal issues that were not for the jury to decide."

In its motion, the Government identifies eight specific legal arguments it requests the Court preclude defendant from raising at trial. Several of these arguments clearly have no relevance to the issues that will be presented at trial and could only serve to confuse and mislead the jury. Specifically, arguments regarding the difficulties defendant has faced in representing himself, discovery disputes between the Government and defendant, and the reasons why this case has been pending for over six years have no relevance to the issues that will be tried in this case. Further, the Government requests that the Court exclude arguments regarding the admissibility of defendant's conviction records, the doctrines of speciality and duality, and whether certain evidence that was seized from defendant's residence in Cambodia should have been suppressed. The Court has already addressed these issues extensively through pretrial motions, and raising them again during the trial could only serve to confuse and mislead the jury.

The Government also seeks to preclude defendant from making any arguments about the constitutionality or validity of California's sex offender registration requirements, or the applicability of those requirements to defendant. As a general matter, neither party may present arguments to the jury regarding what they believe to be the substantive law of California's sex offender registration requirements. As stated, it is the duty of the Court, not the parties, to instruct the jury as to the law. See Newsom, 378 Fed. App'x., at 642. Here, the Government

raises a particular concern that defendant will argue to the jury that, following the California Supreme Court's decision in People v. Hofsheier, 37 Cal. 4th 1185 (2006), he was not required to register as a sex offender. The Court has already ruled that defendant may still have been required to register as a sex offender, notwithstanding Hofsheier, Dkt. 237, and defendant may not relitigate this issue before the jury. However, the Court has previously ruled that defendant may present, as a factual defense, that he was not required to register as a sex offender under California law, because he was a resident of Cambodia when he allegedly committed the charged offenses. Accordingly, at trial, defendant may still present evidence that he was a resident of Cambodia in support of this defense.

Finally, the Government seeks to preclude defendant from arguing that several of the counts in the indictment are unconstitutional as applied to defendant or should be dismissed on the basis of defendant's purported residency in Cambodia. The Court has previously addressed and rejected these arguments and raising them again at trial would confuse the jury. However, one point of clarification is appropriate. As noted, the Court has found that defendant's residency may be relevant to whether he was required to register as a sex offender under California law. Further, the fact that defendant was a resident of Cambodia may be relevant to the element of intent in Count One, which charges defendant with "Traveling in Foreign Commerce with Intent to Engage in Illicit Sexual Conduct with a Minor." See United States v. Abramov, 14-cr-0241-ODW, Dkt. 115 (C.D. Cal. Nov. 18, 2015) (granting Rule 29 Motion as to "Travel With Intent" charge and noting that "given the fact that the gentleman resides in Russia, I don't believe a case can be made that he traveled to Russia for the purpose of engaging in [illicit sexual conduct with a minor]."). Accordingly, at trial, defendant may present evidence of his residency in Cambodia for appropriate purposes such as these.

In accordance with the foregoing, the Government's motion is **GRANTED**.

## VI.   GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT EVIDENCE TO IMPEACH DEFENDANT UNDER FEDERAL RULES OF EVIDENCE 607, 608, & 609

On November 23, 2015, the Government filed a motion *in limine* to admit evidence to impeach defendant pursuant to Federal Rules of Evidence 607, 608, and 609. Dkt. 1041. Specifically, if defendant elects to testify at trial, the Government seeks to admit the following three pieces of evidence to impeach defendant: (1) defendant's statements to S.C. attempting to persuade her to commit perjury during his state prosecution; (2) if defendant denies having made these statements, a recording of a conversation between S.C. and defendant in which defendant attempts to persuade her to commit perjury; and (3) pursuant to Federal rule of Evidence 609(a), defendant's 1994 felony convictions for unlawful sexual intercourse with a minor. The Court addresses each of these pieces of evidence in turn.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES - GENERAL**                    **'O'**

A.     **Defendant's Statements to child victim S.C.**

As stated with regard to the Government's motion to empanel an anonymous jury, prior to his conviction, and while he was out on bail, defendant contacted S.C. and attempted to persuade her not to testify that defendant had engaged in sexual intercourse with her. The Government now seeks to impeach defendant with his prior threatening and coercive statements to S.C.

Pursuant to Federal Rule of Evidence 608(b), specific instances of dishonest conduct may "on cross-examination . . . be inquired into if they are probative of the character for truthfulness or untruthfulness" of the witness. For purposes of this rule, so long as the conduct tends to show the witness's character for untruthfulness, it may be addressed on cross-examination subject to the balancing inquiry under Federal Rule of Evidence 403. See United States v Olsen, 704 F.3d 1172, 1184 n.4 (9th Cir. 2013) ("Rule 608(b) of the Federal Rules of Evidence authorizes courts to permit inquiry into specific instances of conduct during cross-examination if they are probative of the character for untruthfulness of the witness—subject, of course, to the balancing analysis of Rule 403.").

Here, defendant's statements to S.C. are highly probative of his character for untruthfulness. The transcript of these statements demonstrates how defendant repeatedly instructed S.C. to lie about her relationship with defendant so that he would not have to go to jail. See, e.g., Dkt. 1046, Ex. A, at Bates 3125. Defendant also threatened both S.C. and her family, at one point even stating that he might have to kill her father if she testified about her relationship with defendant. Id. at Bates 3122-33. And, perhaps most significantly, when S.C. raised concerns that she would be committing perjury at defendant's request, defendant stated that perjury was "a joke" and that "[n]obody prosecutes perjury." Id. at Bates 3127-28. This evidence indicates that defendant has a general disrespect for the obligation to testify truthfully during trial. It is thus highly probative of defendant's tendency to lie under oath. See also United States v. Zidell, 323 F.3d 412, 425-26 (6th Cir. 2003) (holding that the Government's inquiry into defendants attempt "to secure a witness's false testimony" was "wholly permissible under Fed. R. Evid. 608(b)"); Williams v. Shaner, 2002 WL 1285119, at *1 (S.D.N.Y. Jun. 6, 2002) ("Rule 608(b) of the Federal Rules of Evidence, however, entitles defendants to cross-examine plaintiff about whether he attempted to tamper with a witness's testimony, because such allegations plainly are probative of plaintiff's credibility."). And, while defendant's statements to S.C. occurred in 1993, "even remote acts of untruthfulness may be found to have probative value." United States v. Hernandez, 2015 WL 4309810, at *1 (9th Cir. 2015); see also United States v. Jackson, 882 F.2d 1444, 1448 (9th Cir. 1989) (upholding admission of 14-year old conduct under Rule 608 and noting that "[a]s originally proposed[,] Fed. R. Evid. 608(b) prohibited the admission of remote acts of misconduct," but that

"Congress deleted this requirement" "[i]n order to encourage flexibility" in the district court's evidentiary rulings).

Moreover, while statements of defendant threatening a minor girl with whom he had sexual intercourse with are prejudicial to defendant, to warrant exclusion the risk of unfair prejudice must "substantially outweigh" the evidence's probative value. Fed. R. Evid. 403. As noted, defendant's statements to S.C. are highly probative of his propensity to tell the truth. And defendant's credibility will be a central issues in this case. If defendant elects to testify, it is likely that he will attempt to contradict the testimony of his alleged victim, S.L. In that case, defendant's credibility will be of crucial importance because the jury will have to determine whether to believe defendant or S.L.'s version of the events in this case.

Accordingly, the Court finds that defendant's statements to S.C. attempting to persuade her to commit perjury are admissible pursuant to Federal Rule of Evidence 608(b). Moreover, the Court finds that the high probative value of this evidence outweighs any unfair prejudice to defendant.

### B.     The Recording of Defendant's Phone Call with S.C.

If defendant takes the stand and denies that he made the threats to S.C. discussed above, the Government requests that it be permitted to introduce on rebuttal the recorded phone call between defendant and S.C. The Government contends that this recording is admissible under the doctrine of "impeachment by contradiction."

Generally, pursuant to Federal Rule of Evidence 608(b), "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Nonetheless, the Ninth Circuit has recognized the impeachment by contradiction doctrine as an important exception to this rule. United States v. Kincaid-Chauncey, 556 F.3d 923, 932 (9th Cir. 2009). Specifically, the Ninth Circuit has drawn the following distinction: "Rule 608(b) prohibits the use of extrinsic evidence of conduct to impeach a witness' credibility in terms of his general veracity. In contrast, the concept of impeachment by contradiction permits courts to admit extrinsic evidence that *specific testimony* is false, because contradicted by other evidence." United States v. Castillo, 181 F.3d 1129, 1132 (9th Cir. 1999) (emphasis added).

Here, the government does not seek to admit the recording of defendant's call with S.C. to prove his general veracity. Rather, the Government states that it will only seek to admit this recording if defendant takes the stand and specifically denies that he threatened S.C. in an effort to convince her to perjure herself. As such, this evidence falls within the scope of the impeachment by contradiction doctrine, and not Rule 608(b), because the Government seeks

only to show that *specific testimony* is false. See also United States v. Tarantino, 846 F.2d 1384, 1409 (D.C. Cir. 1988) (holding that Rule 608(b) applies to evidence offered to demonstrate untrustworthiness, not evidence offered to demonstrate a "specific contradiction."); Fed. R. Evid. 608(b), advisory comm. notes (2003) ("the absolute prohibition on extrinsic evidence applies only when the sole reason for proffering that evidence is to attack or support the witness' character for truthfulness.").

Moreover, numerous courts have recognized the important role that impeachment by contradiction can play in ensuring that falsified testimony does not go uncontradicted. See Kincaid-Chauncey, 556 F.3d at 932 ("Impeachment by contradiction is permitted to prevent witnesses from engaging in perjury and then using the prohibition on collateral fact testimony to conceal the perjury."); Walder v. United States, 347 U.S. 62, 65 (1954) ("[T]here is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility."). In the event defendant takes the stand and offers testimony that is directly contradicted by the recording, introducing the recording itself would serve to clarify the record and ensure the jury is not misled. See United States v. Yarns, 811 F.2d 454, 456 (8th Cir. 1987) (on cross-examination, defendant denied telling another witness that he could "look the judge in the eye and make him think he was telling the truth" because he was a good liar; trial court properly permitted prosecution to admit extrinsic evidence that defendant made this statement); see also United States v. Havens, 446 U.S. 620, 626-27 (1980) ("There is no gainsaying that arriving at the truth is a fundamental goal of our legal system . . . We have repeatedly insisted that when defendants testify, they must testify truthfully or suffer the consequences . . . it is essential, therefore, to the proper functioning of the adversary system that when a defendant takes the stand, the government be permitted proper and effective cross-examination in an attempt to elicit the truth.").

Accordingly, the Court finds that the recording of defendant's phone call with S.C. may be admitted for purposes of impeachment by contradiction.

### C.   Defendant's 1994 Felony Convictions

Finally, the Government seeks to admit evidence of defendants 1994 felony convictions for unlawful sexual intercourse with a minor. The Government contends that defendant's convictions are probative of his veracity and should be admitted to impeach him.

Rule 609 governs "attacking a witness's character for truthfulness by evidence of a criminal conviction." Fed. R. Evid. 609(a). When the witness to be impeached is the criminal defendant, evidence of a conviction for a crime punishable by death or imprisonment for more than one year generally "must be admitted . . . if the probative value of the evidence outweighs its prejudicial effect to that defendant." Id. 609(a)(1)(B). But where

> more than 10 years have passed since the witness's conviction or release from confinement for [the crime], whichever is later . . . [e]vidence of the conviction is admissible only if:
>
>> (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and
>>
>> (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

Id. 609(b). Courts in the Ninth Circuit consider five factors in balancing the probative evidence of a defendant's prior conviction against its prejudicial effect: "(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of defendant's testimony; and (5) the centrality of defendant's credibility." United States v. Hursh, 217 F.3d 761, 768 (9th Cir. 2000) (citing United States v. Browne, 829 F.2d 760, 762–63 (9th Cir. 1987)). "The government bears the burden of showing, based on these factors, that the proffered evidence's probative value substantially outweighs its prejudicial effect." United States v. Alexander, 48 F.3d 1477, 1488 (9th Cir. 1995) (citing Browne, 829 F.2d at 763).

Here, because more than ten years have passed since defendant's release for his prior conviction, the government must show that the probative value of the evidence "substantially outweighs" its prejudicial effect. However, at the outset, the Court finds that the prejudicial effect of introducing defendant's conviction records for impeachment purposes is particularly slight in this case. The Court has already determined that defendant's conviction records are independently admissible for a variety of other purposes including to demonstrate defendant's intent, modus operandi, and for the Government to establish the elements of defendant's Section 2260A charge. Accordingly, whether admitted for impeachment or some other purpose, the jury in this case will be confronted with defendant's conviction records. The prejudicial impact of also permitting the Government to introduce defendant's convictions for impeachment purposes is therefore particularly slight.

Moreover, the Court finds that several of the factors identified by the Ninth Circuit weigh in favor of admitting defendant's convictions. First, the Ninth Circuit has held that crimes of violence, such as those defendant was convicted for, are probative of veracity. United States v. Alexander, 48 F.3d 1477, 1488 (9th Cir. 1995) (felony conviction for residential robbery probative of veracity); see also United States v. Givens, 767 F.2d 574, 579-80 (9th Cir. 1985) (felony convictions for assault with a deadly weapon admissible under Rule 609). And many courts have found that convictions for rape and sexual assault are admissible for their impeachment value. See, e.g., Thomas v. McDowell, 2014 WL 5305501, at *7 (S.D. Ohio Oct.

15, 2014) ("The Court concludes that the Plaintiff's convictions for rape and kidnapping are probative of the Plaintiff's character for truthfulness. The Plaintiff's credibility is central to this case and evidence of his convictions would allow the jury to fully evaluate his credibility."); Molinares v. Limon, 2009 WL 1542896, at *1 (W.D. Mich. June 2, 2009) (prior conviction for criminal sexual conduct admissible for impeachment purposes under Rule 609(a) (1)); United States v. Shaw, 701 F.2d 367, 385 (5th Cir. 1983) (upholding admission under Rule 609(a)(1) of defendant's prior convictions for rape and assault with intent to rape); see also United States v. Estrada, 430 F.3d 606, 617 (2d Cir. 2005) ("Rule 609(a)(1) presumes that all felonies are at least somewhat probative of a witness's propensity to testify truthfully").

　　　Second, the Court has already noted the importance that defendant's credibility will play in this case. If defendant takes the stand, he will likely deny having committed the charged offenses. The jury will then have to choose whether to believe defendant or the victim witnesses presented by the Government. See also United States v. Alexander, 48 F.3d 1477, 1489 ("When a defendant takes the stand and denies having committed the charged offense, he places his credibility directly at issue."). Finally, in order to find defendant guilty, the jury will need to make several findings regarding defendant's mental state. For example, the jury will need to find that defendant intended to engage in illicit sex with minors when he traveled to Cambodia. At trial, defendant's testimony will be of central importance to issues such as these.

　　　Accordingly, particularly given that defendant's conviction records will already be admitted at trial, the Court finds that the probative value of using defendant's convictions for the additional purpose of impeachment substantially outweighs any potential prejudice to defendant.

　　　In accordance with the foregoing, if defendant elects to testify at trial, the Government may impeach defendant with evidence of: (1) his statements to S.C. attempting to persuade her to commit perjury; (2) if he denies having made these statements, the recording of his conversation with S.C. in which he attempted to persuade her to commit perjury; and (3) defendant's 1994 convictions for unlawful sexual intercourse with a minor. The Government's motion is therefore **GRANTED**.

　　　IT IS SO ORDERED.

　　　　　　　　　　　　　　　　　　　　　　　　　　　00　：　00
　　　　　　　　　　　　　　　　　　　　Initials of Deputy Clerk　　　CMJ