UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

| Case No. | CR 09-933(A)-CAS | | Date | January 25, 2016 |
|---|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | | |
| Interpreter | N/A | | | |

| Catherine Jeang | Not Present | David Herzog, Not Present<br>Vanessa Baehr-Jones, Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder,*<br>*Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendants: | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Ronald Gerard Boyajian | Not | X | | George Buehler, Standby Counsel | Not | | X |

| **Proceedings:** | (IN CHAMBERS) - DEFENDANT'S MOTION TO DISMISS FOR DEFECTIVE INDICTMENT DUE TO INCOMPETENT EVIDENCE (Dkt. 1160, filed January 12, 2016)<br><br>DEFENDANT'S MOTION TO DISMISS THE INDICTMENT FOR OUTRAGEOUS GOVERNMENT CONDUCT IN LYING TO THE COURT ABOUT THE STATUS OF CAMBODIAN WITNESSES (Dkt. 1185, Filed January 22, 2016)<br><br>DEFENDANT'S MOTION TO DISMISS THE INDICTMENT FOR VIOLATIONS OF THE SPEEDY TRIAL ACT (Dkt. 1184, filed January 21, 2016) |
|---|---|

## I. MOTION TO DISMISS FOR DEFECTIVE INDICTMENT DUE TO INCOMPETENT EVIDENCE

On January 12, 2016, defendant filed a motion entitled "motion to dismiss for defective indictment due to incompetent evidence." Dkt. 1160. In this motion, defendant argues that a number of misstatements were made to the grand jury in the course of securing his indictment and, therefore, the Court must dismiss the indictment. The Court disagrees.

First, to the extent defendant is arguing that his indictment was based on "incompetent" or inadequate evidence, that is not a proper basis on which to dismiss an indictment. See United

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

States v. Samango, 607 F.2d 877, 880 n.6 (9th Cir. 1979) ("It has been repeatedly stated and well established that an indictment cannot be attacked on the ground that evidence before the grand jury was incompetent or inadequate.") (citing Costello v. United States, 350 U.S. 359 (1956)); United States v. McCullough, 29 F.3d 636, 1994 WL 369400, at *5 n.2 (9th Cir. 1994) ("It is well established that an indictment cannot be attacked on the ground that evidence presented to the grand jury was incompetent, inadequate or unreliable").

Second, to the extent defendant contends that the indictment should be dismissed on the basis of prosecutorial misconduct, he has failed to make any showing that would justify such relief. A court may dismiss an indictment "only in cases of flagrant prosecutorial misconduct." United States v. Chapman, 524 F.3d 1073, 1085 (9th Cir. 2008); see also Samango, 607 F.2d at 881 (9th Cir. 1979) ("The Court's power to dismiss an indictment on the ground of prosecutorial misconduct is frequently discussed but rarely invoked."). Here, defendant states that the Government made numerous misstatements to the grand jury. However, what he identifies as "misstatements" do not seem to actual misstatements of fact. Rather, it appears that defendant objects to the manner in which certain evidence was presented to the grand jury and the way in which the prosecution characterized the evidence. For example, defendant states that the government informed the grand jury that he was "expelled" from Cambodia. Defendant contends that it is more accurate to state that he was "sent back to the United States." Dkt. 1160, at 2. Defendant argues that it was prejudicial for the government to use the phrase "expel" because it implies that defendant had engaged in misconduct. However, defendant does not deny that the Cambodia government forcibly removed him from Cambodia. That the Government chose to characterize this as an expulsion does not change the underlying fact that defendant was forcibly removed from Cambodia, and certainly does not give rise to a charge that the Government perjured itself.

Similarly, defendant contends that it was an error for the Government to tell the grand jury that the victim in this case, S.L., identified him as "John." Instead, defendant contends that S.L. initially identified him by another name, "Tok Yai." Defendant argues that the name " 'Tok Yai' labels him by his physical description" where as the name "John" suggests that S.L. knew defendant on a first name basis and therefore "confers some type of relationship." Id. at 3. Accordingly, defendant contends that it was prejudicial for the Government to tell the grand jury that S.L. identified him as "John." However, defendant does not deny that S.L. ultimately did identify him as "John." See Id. at 4. And, even assuming that S.L. did identify defendant as "Tok Yai," and that this name carries the meaning defendant ascribes to it, the Government has no obligation to present the jury with exculpatory evidence. See United States v. Navarro, 608 F.3d 529, 537 (9th Cir. 2010) ("The Supreme Court held in United States v. Williams that a prosecutor does *not* have a duty to present exculpatory evidence to a grand jury when seeking an indictment.") (emphasis in original); United States v. Haynes, 216 F.3d 789, 798 (9th Cir.

'O'

2000) ("[P]rosecutors have no obligation to disclose 'substantial exculpatory evidence' to a grand jury even if that evidence impeaches the credibility of a key witness.") (citations omitted)

Accordingly, it is not clear that any of the "misstatements" defendant identifies were actually false statements of fact. Moreover, to the extent defendant is arguing that the Government failed to present evidence to the grand jury that was favorable to his case, the Government was under no obligation to present such evidence. Accordingly, the conduct defendant alleges does not rise to the level of "flagrant" misconduct. See also United States v. Moreno-Green, 881 F.2d 680, 684 (9th Cir. 1989) ("There may be some errors relating to the grand jury charging process which are so fundamental as to cause a grand jury no longer to be a grand jury. Nevertheless, the defendants in this case do not allege such errors. Essentially, they contend that the government failed to present some evidence and improperly presented other evidence to the grand jury. Such alleged errors are not so fundamental as to give rise to the right not to be tried.").

The Court, therefore, **DENIES** defendant's motion.

## II. DEFENDANT'S MOTION TO DISMISS THE INDICTMENT FOR OUTRAGEOUS GOVERNMENT CONDUCT IN LYING TO THE COURT ABOUT THE STATUS OF CAMBODIAN WITNESSES

On January 22, 2016, defendant file a motion entitled "motion to dismiss the indictment for outrageous government conduct in lying to the Court about status of Cambodian witnesses." Dkt. 1185. In this motion, defendant argues that the Government has previously represented that certain Cambodian witnesses were unwilling to come to the United States to testify at defendant's trial or to be deposed by defendant or his former lawyers. Defendant contends that these witnesses are necessary to authenticate numerous Cambodian documents, such as Cambodian court records, which he contends are relevant to his case. Defendant states that he has now learned that many of these individuals are, in fact, willing to testify. Accordingly, defendant argues that "[i]n light of this recent discovery, it is apparent that the government affirmatively lied to this Court in representing that no witnesses were willing to testify as to the Cambodian court records." Dkt. 1185, at 4. Defendant, therefore, requests that the Court dismiss his indictment on the basis of Government misconduct.

However, as stated *supra*, a court will only dismiss an indictment on the basis of "flagrant prosecutorial misconduct." See Chapman, 524 F.3d at 1085. Here, defendant simply assumes that because he has now identified Cambodian witnesses who are willing to testify, the Government *must* have lied when it previously represented that certain Cambodian witnesses were not willing to testify. Defendant does not even present evidence that the Government was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

aware that these witnesses existed when it made its earlier representations. See also United States v. Ross, 372 F.3d 1097, 1111 (9th Cir. 2004) ("Actual knowledge is particularly significant when determining whether the prosecution's behavior constitutes flagrant misconduct."). And defendant overlooks the possibility that some witnesses may have initially told the government that they were unwilling to testify, but subsequently changed their minds. Finally, even assuming that the government was mistaken about the availability of these witnesses, that would not be sufficient to justify dismissing the indictment without more affirmative proof that the Government deliberately misled defendant. See also Chapman, 524 F.3d at 1085 ("We agree with the government that accidental or merely negligent governmental conduct is insufficient to establish flagrant misbehavior.").

Accordingly, the Court finds that defendant has presented insufficient evidence of prosecutorial misconduct to warrant dismissal of the indictment. The Court, therefore, **DENIES** defendant's motion.

## III. MOTION TO DISMISS THE INDICTMENT FOR VIOLATIONS OF THE SPEEDY TRIAL ACT

On March 17, 2015, defendant filed a motion to dismiss the First Superseding Indictment, to dismiss Counts One and Three of the First Superseding Indictment, or for reconsideration of the Court's order denying a previous motion to dismiss based on alleged violations of the Speedy Trial Act ("STA"). Dkt. No. 826. The government filed an opposition on May 28, 2015. Dkt. No. 931. On July 6, 2015, defendant filed a request to withdraw this motion, Dkt. 946, which the Court granted, Dkt. 951. On January 21, 2016, defendant refiled a slightly amended version of this motion. Dkt. 1184.

### A. Background

Defendant was arrested by Cambodian National Police officers for "debauchery" on February 19, 2009. Dkt. No. 1 ¶ 13. On May 12, 2009, a United States agent filed a criminal complaint against defendant for suspected violations of 18 U.S.C. § 2423(c), see generally id., which led to the issuance of a sealed arrest warrant. On August 31, 2009, defendant was brought into the Central District of California to answer the complaint; he made his initial appearance before a United States Magistrate Judge on September 1, 2009. Dkt. Nos. 2, 3, 22. On September 15, 2009, a federal grand jury returned a one-count indictment charging defendant with violating 18 U.S.C. § 2423(c) by engaging in illicit sexual conduct with a minor in a foreign place. Dkt. No. 7. Subsequently, defendant's trial was continued several times

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

pursuant to stipulations between defendant and the government.[1]  Dkt. Nos. 20, 21, 23, 24, 26, 27, 30, 31.  On December 3, 2010, a First Superseding Indictment was filed, adding to the already-filed charge one count of Travel with Intent to Engage in Illicit Sexual Conduct with a Minor in violation of 18 U.S.C. § 2423(b), and one count of Commission of a Felony Offense Involving a Minor While Required to Register As Sex Offender pursuant to 18 U.S.C. § 2260A.  Dkt. No. 38.

On December 24, 2010, defendant filed a motion to dismiss Count One of the First Superseding Indictment pursuant to 18 U.S.C. § 3161(b),[2] United States v. Palomba, 31 F.2d 1456 (9th Cir. 1994), and the Fifth, Sixth, and Eighth Amendments to the United States Constitution.  Dkt. No. 48.  Defendant argued that since the Travel with Intent count under § 2423(b) "historically connect[s to] and arise[s] out of the original facts and circumstances of the complaint for which Ronald Boyajian was arrested in August 2009," the STA and Palomba required dismissal of that count.  Id. at 11.

On April 26, 2011, the Court denied that motion, concluding that the addition of the § 2423(b) charge—which was not mentioned in the criminal complaint—did not violate the STA as interpreted by Palomba.  The Court reasoned:

> In Palomba, the Ninth Circuit noted that "the Government may prosecute a defendant accused in a complaint and untimely charged in a subsequent indictment when the respective offenses are punishable

---

[1] When a defendant stipulates to the need to continue a trial to enable his counsel to prepare, he "cannot maintain that these continuances give rise to an STA violation."  United States v. Gallardo, 773 F.2d 1496, 1505 (9th Cir. 1985).

[2] Section 3161(b), part of the STA, provides in relevant part: "Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges."  18 U.S.C. § 3161(b).  A separate provision of the STA provides in relevant part:

> [i]f . . . no indictment or information is filed within the time limit required by 3161(b) as extended by section 3161(h) of this chapter such charge against that individual contained in such complaint shall be dismissed or otherwise dropped. . . .

18 U.S.C. § 3162(a)(1).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

under different statutes, despite the fact they arose from the same criminal transaction." Palomba, 31 F. 3d at 1464. The added charge in this case arises under a different statute (§ 2423(b)) than the original charge (§2423(c)), and therefore, there is no violation of the Speedy Trial Act.

Dkt. No. 90 at 3. The Court also concluded that the delay attributable to the First Superseding Indictment had not violated defendant's constitutional rights. Id. at 3–4. The instant motion largely asks the Court to reconsider its April 26, 2011 ruling.

**B.     Legal Standard**

In this judicial district,

> [a] motion for reconsideration of the decision on any motion may be made only on the grounds of: (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision. No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion.

C.D. Cal. Local R. 7-18; see also Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation, 331 F.3d 1041, 1046 (9th Cir. 2003) ("Reconsideration is indicated in the face of the existence of new evidence, an intervening change in the law, or as necessary to prevent manifest injustice."). "Whether or not to grant reconsideration is committed to the sound discretion of the court." Navajo Nation, 331 F.3d at 1046.

**C.     Analysis**

Defendant argues that the Court should dismiss Counts One and Three of the First Superseding Indictment under the STA—and reconsider its prior denial of defendant's motion to dismiss Count One on the same ground. Defendant raises several arguments in support of this motion. The Court addresses each argument in turn.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

### 1. Reconsideration Based on Barraza-Lopez

As noted, in Palomba the Ninth Circuit adopted a "same statute" standard under which "the Government may prosecute a defendant accused in a complaint and untimely charged in a subsequent indictment when the respective offenses are punishable under different statutes, despite the fact that they arose from the same criminal transaction." Palomba, 31 F.3d at 1464. In reaching this conclusion, the Ninth Circuit expressly rejected a rule that would require court's to compare the underlying conduct of the charged offenses to determine whether the newly added offenses arose out of the same course of conduct. Id. at 1463-64 ("[T]he STA precludes courts from engaging 'in the complex task of investigating the relationship between the conduct underlying the offenses charged in the complaint and the conduct underlying the offenses listed in the indictment.' "). In other words, for purposes of the STA, the focus is on the statutes under which the particular offenses are punishable. Count One of the First Superseding Indictment charges defendant with traveling in foreign commerce for the purpose of engaging in illicit sexual conduct. Count Two, which was charged in defendant's original complaint, charges defendant with engaging in illicit sexual conduct in a foreign country. The Court has already determined that these offenses are punishable under different statutes—section 2423(b) and section 2423(c), respectively. Accordingly, under the rule set forth in Palomba the addition of Count One did not violate the STA.

Nonetheless, defendant now argues that in United States v. Barraza-Lopez, 659 F.3d 1216 (9th Cir. 2011), the Ninth Circuit abandoned the "same statute" standard in favor of a broader standard requiring dismissal if the latter count is based on *conduct* contained in the original complaint. Defendant reasons that because his complaint referenced "sex tourism," it "contained allegations of travel with intent," and that the late addition of the § 2423(b) count therefore violated the new rule he believes was announced in Barraza-Lopez. This argument fails, however, because nothing in Barraza-Lopez changed the Ninth Circuit's longstanding rule that it is the *offenses* charged in the complaint, not the underlying conduct described in the complaint, that starts the STA clock.

In Barraza-Lopez, the Ninth Circuit interpreted 18 U.S.C. § 3161(d)(1), a different provision of the STA that applies when charges against an individual are dismissed or dropped and later refiled. Following the decisions of numerous other circuits that had addressed the issue, the court held that when charges in a complaint are dismissed and later refiled, the STA's thirty-day clock restarts from the date the charge is refiled. Barraza-Lopez, 659 F.3d at 1218–21. The court discussed Palomba only to clarify that the earlier case did not address § 3161(d)(1). Id. at 1221–22. Moreover, the court took pains to emphasize that the holding in Palomba addressed a different set of circumstances from those present in Barraza-Lopez and that, therefore, the two cases were not inconsistent. See id. at 1222 ("In Palomba, we simply

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

recognized the general rule, under §§ 3161(b) and 3162(a), that if the government does not follow up on pending charges by obtaining an indictment within 30 days of the arrest, the charges must be dismissed. We did not consider the circumstance specifically addressed in § 3161(d)(1), the provision that controls when a complaint is filed and is then 'dismissed or otherwise dropped' and the same charges are later refiled, with no charges pending in the interim."). Accordingly, nothing in Barraza-Lopez limits or amends the holding in Palomba, and Palomba still precludes this court from inquiring into the relationship between the conduct underlying the section 2423(c) count in the complaint and the conduct underlying the section 2423(b) and 2260A counts in the First Superseding Indictment. For these reasons, Barraza-Lopez provides no basis for reconsideration.

> 2. **Reconsideration Based on Government's Argument on a Separate Motion**

Defendant also argues that the Court should reconsider its earlier ruling based on arguments the Government has made in connection with other motions in this case. Specifically, defendant points to the Government's opposition to his earlier filed motion to dismiss Counts One and Three of the indictment based on the doctrines of speciality and dual criminality. In that opposition, the government argued that the doctrines of specialty and dual would not require dismissal of Counts One and Three of the indictment because, under Cambodian law, those counts would not be considered distinct crimes. See Dkt. No. 280 at 18–21, 22–25. Defendant argues that this position is inconsistent with the Government's argument that these offenses are distinct for purposes of the STA. However, the standards applied under the doctrines of speciality and dual criminality and under the STA are completely distinct. Specifically, under the doctrines of speciality and dual criminality courts consider the character of the underlying offenses and how those offenses would have been punished by the extraditing country. See United States v. Merit, 962 F.2d 917, 922 (1992); United States v. Andonian, 29 F.3d 1432, 1435 (9th Cir. 1994). But, as outlined above, the test under the STA is whether the respective offenses are punishable under different statutes, and courts are expressly instructed *not* to look to the conduct underlying the charged offenses. Accordingly, the Government's positions in its various oppositions are not inconsistent for the simple reason that the Government was responding to entirely different legal standards. The Government's position in the earlier motion, therefore, provides no reason to reconsider the Court's April 26, 2011 order.

> 3. **"Federal Arrest" in Cambodia**

Finally, defendant argues that the Court should dismiss both the original and the First Superseding Indictment because the clock for filing an information or indictment against him

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

under the Speedy Trial Act began to run on February 19, 2009, when he was arrested by Cambodian National Police. Defendant points to "new" evidence that his arrest by Cambodian authorities was the result of a "co-operative" or "joint" investigation by American and Cambodian authorities into "act[s] of indecent assault against Cambodian Children committed by American citizens," and that federal officials jointly trained and worked with Cambodian and non-governmental actors an in effort to combat sex crimes committed abroad by American citizens. See Dkt. No. 1184, Exs. 1–3.

As stated, the STA requires an indictment to "be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). "If a violation of this provision occurs, the Act requires dismissal." United States v. Benitez, 34 F.3d 1489, 1493 (9th Cir. 1994) (citing 18 U.S.C. § 3162(a)(1)). It is well-settled that "[o]nly a 'federal arrest' triggers the running of the thirty day time period set forth in § 3161(b)." Id. (citing United States v. Manuel, 706 F.2d 908, 914–15 (9th Cir. 1983)). A "federal arrest" occurs only when the defendant is "detained pursuant to federal charges." Id. (citing United States v. Cepeda-Luna, 989 F.2d 353, 356 (9th Cir. 1993)). Therefore, "[a]n individual who is not officially charged with a federal offense or 'accused' has not been arrested for the purposes of § 3161(b)." Id.

"[T]he fact that federal authorities actively participate in an investigation does not mandate the application of the Speedy Trial Act." Id.; see also Cepeda-Luna, 989 F.2d at 356 ("This circuit has repeatedly declined to apply the Speedy Trial Act in situations where the defendant's detention is not pursuant to federal criminal charges, even though federal criminal authorities may be aware of and even involved with that detention."). For example, in United States v. Manuel, an FBI agent and a Native American tribal police investigator worked together to investigate the defendant's involvement in an alleged murder, including visiting his home together to speak to the defendant and others who knew him. 706 F.2d 908, 910 (9th Cir. 1983). The day after tribal police took Manuel to a police station, the FBI agent read Manuel his Miranda rights and interrogated him, eliciting a confession. Id. Following that interview, the United States Attorney's Office "authorized prosecution for Manuel, but did not authorize his arrest," and tribal authorities, "declin[ing] to press charges against Manuel due to the likelihood of federal prosecution," released him. Id. Nearly four months later, federal authorities obtained a grand jury indictment, on which they eventually won a conviction. Id. at 910, 914.

Similarly, in United States v. Johnson, the defendant—whom the F.B.I. had investigated for bank robbery—was arrested by local police officers and booked on state bank robbery charges; the United States lodged a detainer at the county jail in which he was held a few days after that arrest, but did not obtain a federal grand jury indictment until almost four months

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

later. 953 F.2d 1167, 1169–70 (9th Cir. 1994). Citing Manuel, the Ninth Circuit affirmed the district court's finding that "no federal arrest occurred before the indictment was filed," reasoning that "[a]lthough the F.B.I. actively investigated the bank robbery, state police arrested Johnson, took him to the San Diego County Jail, and booked him on state robbery charges." Id. at 1172. See also, e.g., United States v. Adams, 694 F.2d 200, 202 (9th Cir. 1982) (holding that the STA clock did not start to run when defendants were arrested by state officers even though "the investigation that led to their arrest was a joint federal-state investigation"). The Ninth Circuit has also held that the thirty day STA period was not triggered when a defendant was investigated by federal agents and initially arrested by federal officers, where those federal officers "immediately relinquished control of the arrestees to state officials for state prosecution." Benitez, 34 F.3d at 1494.

Here, defendant was arrested in Cambodia by Cambodian National Police on the charge of debauchery under Cambodian law—approximately three months before the United States filed a criminal complaint against defendant, and over six months before he was brought to the United States to answer that complaint. Under the Ninth Circuit authorities cited above, "the fact that federal authorities actively participate[d] in [the] investigation does not mandate the application of the Speedy Trial Act." Benitez, 34 F.3d at 1493. For this reason, defendant's argument that his arrest in Cambodia was a "federal arrest" that triggered the STA lacks merit.

It is true, as defendant points out, that "Speedy Trial Act time periods may be triggered by state detentions that are merely a ruse to detain the defendant solely for the purpose of bypassing the requirements of the Act." Id. at 1494. The Ninth Circuit has stated that this ruse exception could apply to a sham arrest by federal civil immigration authorities. See Cepeda-Luna, 989 F.2d 353 (declining to apply the exception in the absence of "evidence of collusion between federal criminal and civil authorities which would mandate the application of the provision of the [Speedy Trial] Act to civil detentions"); United States v. Orbino, 981 F.2d 1035, 1036–37 (9th Cir. 1992) (similar). This exception would presumably also apply to a detention by a foreign government effected "solely for the purpose of bypassing" the STA. But as shown by cases like Manuel and Johnson, evidence that federal officials actively participated in the investigation of defendant, and even questioned him, is not enough to invoke the ruse exception.

Defendant has not come close to demonstrating that his detention by Cambodian authorities was "merely a ruse to detain [him] solely for the purposes of" allowing the United States government to wait longer before filing charges; in fact, the Cambodian government filed a case against defendant in which significant proceedings have been undertaken even after the United States brought defendant to this country for prosecution. See Dkt. No. 342 Ex. B (November 2012 decision of Cambodian Supreme Court on a criminal appeal in defendant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

'O'

Boyajian's case); Dkt. No. 800-1 ¶ 17 (defendant stating that in the spring of 2009 he was "imprisoned in . . . Cambodia . . . defending local charges"); compare Benitez, 34 F.3d at 1492–95 (affirming district court's finding that a state prosecution was not merely a ruse where the investigation was handled by federal authorities and state charges were dropped when federal charges were filed, even though "state prosecuting attorneys and federal attorneys made repeated contact regarding whether the federal government intended to file charges").

In sum, because defendant's arrest by Cambodian authorities was not a "federal arrest" within the meaning of the STA, and the original indictment was filed "within thirty days from the date on which [he] individual was arrested or served with a summons in connection with" the federal charges against him, 18 U.S.C. § 3161(b), his motion to dismiss the original and First Superseding Indictment for STA violations must fail.

### D. Conclusion

In accordance with the foregoing, the Court **DENIES** defendant's motion to dismiss or for reconsideration based on alleged Speedy Trial Act violations.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Deputy Clerk | | CMJ | |