UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

| Case No. | CR 09-933(A)-CAS | Date | March 9, 2016 |
|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | |
| Interpreter | N/A | | |

| Catherine Jeang | Not Present | David Herzog, Not Present<br>Vanessa Baehr-Jones, Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendants: | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Ronald Gerard Boyajian, Pro Se | Not | X | | George Buehler, Standby Counsel | Not | X | |

**Proceedings:** (IN CHAMBERS) - REQUEST TO CALL SPECIAL AGENTS PERRY WOO AND JONATHAN RUIZ AT TRIAL

Defendant has requested that Immigrations and Customs Enforcement (ICE) special agents Perry Woo ("Woo") and Jonathan Ruiz ("Ruiz") be called to testify in his case-in-chief. Defendant believes these witnesses may have relevant testimony concerning the DNA evidence in this case. On March 3, 2016, the Court denied this request and stated its reasons for doing so on the record. At the request of defendant, the Court hereby provides a written explanation for its ruling.

The DNA evidence in this case consists, in part, of several DNA swabs purportedly collected from S.L., the alleged victim in this case. The Government has challenged the admissibility of these swabs as well as the results of any testing conducted on the swabs. Specifically, the Government argues that there is an insufficient chain of custody demonstrating that the swabs were, in fact, collected from S.L. After hearing testimony from several of the witnesses in this case, the Court determined, on February 26, 2016, that the Government was correct and that defendant had failed to establish a proper chain of custody for these DNA swabs.

From the testimony elicited in Court, it appeared that, shortly after defendant's arrest on February 20, 2009, S.L. was medically examined at two different clinics in Phnom Phen, Cambodia—the International SOS Clinic ("SOS Clinic") and the Phnom Phen Referral Clinic. The Court heard testimony from Bonnie Wright, a nurse at the SOS Clinic. Wright testified

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

that, while the SOS Clinic had the capacity to perform medical examinations, such as to test for the presence of sexually transmitted diseases, it did not have the capacity in 2009 to collect DNA samples. Accordingly, the Court concluded that, to the extent DNA samples were collected from S.L., those samples must have been collected at the Phnom Phen Referral Clinic.

In addition, the Court heard testimony from Va Tong. Va Tong testified that in 2009 he worked for the international non-government organization World Hope International ("WHI") and that he recalled taking S.L. to the Phnom Phen Referral Clinic on February 20, 2009. Va Tong further testified that he recalled S.L. being examined by a doctor and a nurse at the Phnom Phen Referral Clinic and that, after this examination, he was shown what appeared to be DNA swabs taken from S.L. However, Va Tong did not accompany S.L. while these DNA swabs were purportedly collected from her. Moreover, Va Tong testified that, after this examination, the swabs were placed in a manila envelope and that Va Tong did not take this envelope with him when he and S.L. left the clinic. Rather, the envelope remained at the Phnom Phen Referral Clinic.[1] Finally, Va Tong testified that, some time after this examination, while he was at WHI's offices in Phnom Phen, he recalled seeing WHI officials providing a manila envelope to ICE special agents. Va Tong testified that he believed this was the same envelope he had left at the Phnom Phen Referral Clinic.

Upon hearing this testimony, the Court concluded that evidence relating to the DNA swabs was inadmissible because defendant had failed to establish a proper chain of custody. Even assuming that the manila envelope at WHI's offices was, in fact, the same envelope Va Tong observed at the Phnom Phen Referral Clinic—a dubious proposition at best—the envelope still remained unaccounted for during the period between the time Va Tong left the clinic and the time it reappeared at WHI's offices. Moreover, Va Tong did not accompany S.L. when the DNA swabs were purportedly collected and, therefore, he could not verify that the swabs had been collected from her person and not someone else.

Defendant now contends that special agents Woo and Ruiz have relevant testimony that may establish a proper chain of custody for the DNA swabs. He submits several documents in support of this argument. First, defendant has presented an affidavit, prepared by special agent

---

[1] In addition, when questioned by the Court, Va Tong stated that he had no idea what happened to the envelope after he left the Phnom Phen Referral Clinic, that he did not know if anyone ever opened the envelope after he left the clinic, and that he did not know if anyone ever performed any tests on the DNA swabs after he left the clinic. See Transcript of Hearing February 26, 2016, 34:7-16.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

Ruiz, which was appended to a warrant to search defendant for DNA. Second he has presented a medical report from the SOS Clinic.[2]

With relevance to the instant request, the affidavit of special agent Ruiz states: "On February 21, 2009, the International SOS Clinic in Phnom Phen, Cambodia, conducted a medical forensic exam on Jane Doe 1." Ruiz Affidavit, pg. 7. Based on the Court's review of the record it appears that Jane Doe 1 refers to S.L. The affidavit then goes on to state that, "at the International SOS Clinic in Phnom Phen, approximately 5 different DNA samples were taken from Jane Doe 1. These samples were given to ICE Assistant Special Agent in Charge (ASAC) Perry Woo, who maintained them in his custody until turning them over to me [Ruiz] on March 5, 2009." Id. Ruiz also states that the samples were held within a locked evidence locker at ICE's Long Beach, California offices until being shipped via Federal Express to Melanie Glass, the DNA coordinator for Laboratories and Scientific Services at the Department of Homeland Security. Id. at 7-8. Defendant contends that special agent Ruiz's affidavit demonstrates that DNA samples were, in fact, collected from S.L. at the International SOS Clinic and that Woo and Ruiz's testimony can establish the chain of custody for those samples.

The Court disagrees and concludes that Ruiz's statements in his affidavit were inaccurate as they are contradicted by substantial evidence in the record and by Ruiz's own subsequent statements. First, Ruiz's statement in his affidavit directly contradicts the testimony of Bonnie Wright, a nurse at the SOS Clinic, who stated that the SOS Clinic lacked the capacity to collect DNA samples. Second, the medical report from the SOS Clinic, which defendant himself has submitted, is dated February 21, 2009. Under the heading "Investigations," it states "Pathology: Baseline HIV negative HCV negative HBsAg negative VDRL/TPHA negative, throat and outer vaginal swabs; imagining: wrist xray." Notably absent from this description is any mention of DNA samples being collected. Finally, the Government has submitted a Report of Investigation ("ROI") No. 199, dated June 30, 2015, in which special agent Ruiz states what he understands to be the state of the record in this case. In this ROI, special agent Ruiz reports that he had a phone conversation with Va Tong and that he recalled the following:

> On February 20, 2009, at approximately 2300 hours, Va Tong, along with World Hope International (WHI) Case Officer, Soriya Thach, and WHI Counselor Ly Nary, took Jane Doe 1 to the [Phnom Phen Municipal Referral Hospital ("PPMRH")], to have Jane Doe 1 medically evaluated and to collect possible DNA samples for future analysis in the United States. Va

---

[2] Defendant has also submitted a collection of handwritten notes. However, as the Court explained on the record, it is not apparent who authored these notes and the Court does not find the contents of these notes probative of the issues presently before the Court.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

> Tong stated that the medical examination concluded in the early morning hours of February 21, 2009, at approximately 0200-0300 hours. Va Tong stated that during the medical examination at the PPMRH, buccal swabs were used to collect DNA samples from Jane Doe 1.
>
> * * *
>
> Va Tong stated that on February 21, 2009, following Jane Doe 1's medical examination at the PPMRH, he received a request from Immigration and Customs Enforcement (ICE), to bring Jane Doe 1 to the SOS Clinic for a medical examination. Va Tong did not recall the identity of the person from ICE who made the request but recalled that he Va Tong, Soriya Thach and translator Sok Lyna took Jane Doe 1 to the SOS Clinic where they met with SA Perry Woo. Va Tong stated that a second medical examination was conducted on Jane Doe 1, and that an x-ray of Jane Doe 1's wrist was also taken.
>
> SA Ruiz asked Va Tong if DNA samples were collected from Jane Doe 1 during her examination at the SOS Clinic on February 21, 2009. Va Tong stated that he did not believe so.

ROI No. 199, at pg. 3-4. This is entirely consistent with the testimony Va Tong provided in Court. Special agent Ruiz's ROI indicates that Va Tong was present at S.L.'s examinations at both the Phnom Phen Referral Clinic and the SOS Clinic, and that he believed DNA samples were only collected at the Phnom Phen Referral Clinic.

     One notable divergence with Va Tong's testimony in this Court is that special agent Ruiz states that Va Tong "initially took custody of the DNA samples that were collected on February 20, 2009 and brought them back to his office at WHI." ROI No. 199, at pg. 5. However, in Va Tong's testimony in Court he was explicit that he did not take custody of the samples when he left the Phnom Phen Referral Clinic. And, even if Va Tong had taken custody of the DNA samples at the Phnom Phen Referral Clinic, that still would not cure the other defect in the chain of custody—namely, that Va Tong did not observe the DNA samples being collected and thus could not verify that the samples were, in fact, collected from S.L.

     Accordingly, the Court does not find it necessary to call special agents Ruiz or Woo. Rather, the Court finds that, notwithstanding defendant's proffered evidence, the weight of the evidence in this case supports the conclusion that the only DNA samples were collected at the Phnom Phen Referral Clinic. And, for the reasons stated above and on the record, the Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# CRIMINAL MINUTES - GENERAL

'O'

finds that defendant has failed to establish a proper chain of custody between the collection of DNA samples, purportedly from S.L., at the Phnom Phen Referral Clinic and the delivery of those swabs to ICE special agents. The additional evidence presented by defendant does not alter that conclusion.

Defendant's motion is, therefore **DENIED**.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Deputy Clerk | | CMJ | |

cc: