# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CRIMINAL MINUTES - GENERAL

'O'

| Case No. | CR 09-933(A)-CAS | | Date | July 11, 2016 |
|---|---|---|---|---|

| Present: The Honorable | CHRISTINA A. SNYDER |
|---|---|

| Interpreter | N/A |
|---|---|

| Catherine Jeang | Laura Elias | David Herzog |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendants: | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Ronald Gerard Boyajian, Pro Se | X | X | | George Buehler, Standby Counsel | X | X | |

**Proceedings:**   MOTION FOR NEW TRIAL UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 33 (Dkt. 1417, 1425, filed May 10 and 18, 2016)

MOTION TO STRIKE FINDINGS, AND FOR NEW TRIAL ON GROUNDS OF OUTRAGEOUS GOVERNMENT CONDUCT AND JUDICIAL ERROR EMPANELING ANONYMOUS JURY (Dkt. 1432, filed May 20, 2016)

MOTION FOR INQUIRY OVER POSSIBLE JUROR MISCONDUCT (Dkt. 1423, filed May 13, 2016)

MOTION TO DISMISS PROSECUTION FOR OUTRAGEOUS GOVERNMENT CONDUCT; TRANSLATOR FRAUD (Dkt. 1405, filed May 2, 2016)

MOTION FOR JUDGMENT OF ACQUITTAL UNDER RULE 29, OR IN THE ALTERNATIVE, FOR ARREST OF JUDGEMENT UNDER RULE 34 (Dkt. 1416, filed May 9, 2016)

Defendant Ronald Gerard Boyajian was charged with Traveling with Intent to Engage in Illicit Sexual Conduct, in violation of 18 U.S.C. § 2423(b) (Count One); Engaging in Illicit Sexual Conduct in a Foreign Place with a Minor Girl, in violation of 18 U.S.C. § 2423(c) (Count Two); and Commission of a Felony Offense Involving a Minor by an Individual Required to Register as a Sex Offender, in violation of 18 U.S.C. § 2260A (Count Three).  On January 27, 2016, a trial began in this case against defendant.  On March 7, 2016, the jury returned a verdict of guilty on all counts.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES - GENERAL**

'O'

## I.     MOTION FOR NEW TRIAL UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 33

Defendant moves for a new trial pursuant to Federal Rule of Criminal Procedure 33.  Dkt. 1425.  Under Rule 33, a Court may grant a new trial "if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  "A motion for a new trial is directed to the discretion of the district judge.  It should be granted only in exceptional cases in which the evidence preponderates heavily against the verdict."  United States v. Pimentel, 654 F.2d 538, 545 (9th Cir. 1981) (internal citations removed).  The defendant has the burden to justify the need for a new trial.  United States v. Shaffer, 789 F.2d 682, 687 (9th Cir. 1986).

In his motion, defendant raises numerous issues he contends warrant a new trial.  The Court addresses each of these issue in turn.

### A.     Exclusion of DNA Evidence

Defendant argues that the Court improperly excluded "critical exculpatory" DNA evidence at trial.  The DNA evidence defendant refers to consists of several DNA swabs purportedly collected from S.L., the victim-witness in this case.  At trial, the Government challenged the admissibility of these swabs as well as the results of any testing conducted on the swabs.  Specifically, the Government argued that defendant had failed to establish a chain of custody demonstrating that the swabs were, in fact, collected from S.L.  After hearing testimony from several witnesses, the Court determined, on February 26, 2016, that the Government was correct and that defendant had failed to establish a proper chain of custody for these DNA swabs.

In his motion for a new trial, defendant argues that the exclusion of this evidence was error.  First, he argues that "any question about the source or chain of custody went to the weight, not the admissibility of the [DNA] evidence."  Mot. for New Trial, at 4.  Defendant is correct that issues of chain of custody speak to the weight to be afforded evidence, not its admissibility.  See United States v. Young, 510 Fed. App'x 610, 611 (9th Cir. 2013) ("The possibility of a break in the chain of custody goes only to the weight of the evidence, not to its admissibility.") (citing United States v. Harrington, 923 F.2d 1371, 1374 (9th Cir. 1991)).  However, the Court did not merely conclude that defendant had failed to establish a proper chain of custody.  Rather, based on evidence adduced before and during trial, the Court found that defendant had failed to establish that the relevant swabs actually originated from S.L. and that, even if he could do so, "the DNA evidence in this case appear[ed] to be of exceedingly limited relevance."  Dkt. 1342, at 3.  Taken together the Court concluded that the DNA evidence should be excluded pursuant to Federal Rule of Evidence 403 and on the grounds that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES - GENERAL**

'O'

defendant had failed to establish that the DNA evidence was relevant and/or authentic.  In his motion, defendant raises no new arguments or evidence to contradict those findings.[1]

In addition, defendant argues that he "should have been given the opportunity to challenge the government's late claim of unreliability of the sample."  Mot. for New Trial, at 4.  However, defendant *was* given the opportunity to challenge the Government's challenge to the reliability and relevance of the DNA evidence.  In the middle of trial, the Court held a lengthy evidentiary hearing outside the presence of the jury in which defendant was given ample opportunity to establish the reliability and relevance of the DNA evidence.  The Court also heard testimony from several witnesses from Cambodia who potentially could have observed DNA swabs being collected from S.L., and the Court heard testimony from defendant's proposed DNA expert.  Accordingly, this argument is unavailing as well.

The Court, therefore, finds that the exclusion of defendant's DNA evidence does not warrant a new trial.

**B.      Exclusion of Evidence to Impeach S.L.**

Defendant argues that the Court denied him his "Confrontation Clause rights by improperly precluding him from impeaching S.L. with her prior inconsistent testimony."  Mot. for New Trial at 4.  This argument is without merit.  First, defendant fails to identify any specific statement of S.L.'s that the Court improperly excluded.  Thus, the Court cannot determine to which prior inconsistent statements defendant is referring.  Second, to the extent defendant is contending that the Court improperly excluded evidence regarding S.L.'s prior sexual abuse pursuant to Federal Rule of Evidence 412, this issue was heavily litigated by the parties throughout trial.  Apart from conclusorily stating that the Court improperly excluded this evidence, in his motion defendant fails to set forth any argument explaining how the Court's rulings were in error.  Accordingly, the Court finds no basis for granting a new trial based on the exclusion of S.L.'s purportedly inconsistent testimony.

---

[1] In his motion defendant states: "The improper exclusion of the exculpatory DNA evidence turned out to be fatally prejudicial because S.L. testified at trial that she only had one sexual partner at that time—yet, the DNA evidence would have shown that that one sexual partner was not Mr. Boyajian."  Mot. for New Trial at 4.  However, defendant has not identified any testimony in which S.L. actually testified that she had only one sexual partner.  Moreover, in light of the fact that defendant could not establish that the DNA evidence originated from S.L., even if S.L. had testified that she had only one sexual partner, the DNA evidence would not have demonstrated that that partner was not defendant.  Accordingly, this argument is unavailing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES - GENERAL**

'O'

**C.     Exclusion of Evidence to Impeach Cooperating Witnesses**

Defendant argues that he was "not permitted, through exclusionary rulings by the Court and non-disclosure by the government, to effectively cross-examine the government's cooperating witnesses." Mot. for New Trial, at 4.  First, defendant argues that, in exchange for the testimony of confidential informant I.V., the Government agreed not to prosecute I.V. for child abuse.  However, defendant provides no support for his allegation that I.V. was suspected of engaging in child abuse or that the Government entered into an agreement not to prosecute I.V. if he agreed to testify against defendant.  Without any supporting documentation, records, or other evidence, defendant's bald assertions are insufficient to support granting a new trial.

Defendant also contends that the Government gave benefits to child-victim K.L. that it failed to disclose.  However, defendant does not identify the nature of these benefits or what benefits he thinks the Government provided K.L. that it failed to disclose.  Moreover, prior to the testimony of each victim who testified, the Government disclosed the benefits that victim had received, if any.  Defendant fails to put forth any evidence of benefits the Government failed to disclose in these proffers.  Finally, during trial defendant had the opportunity to question each victim-witness regarding benefits they may have received in exchange for their cooperation with the Government.  Indeed, during his cross-examination of K.L., defendant expressly asked her: "Were you given any kind of benefits for pointing out Mr. Boyajian." K.L. Testimony, 2/16/16 PM, at 111.  K.L. responded: "The benefit I receive is that I have a chance to sit here today and tell everyone what happened to me." Id.

Accordingly, the Court concludes that defendant's unsupported claims that impeachment evidence was withheld from him do no warrant a new trial.

**D.     Exclusion of Foreign Witnesses**

Defendant contends that he "was precluded by the Court and blocked by the government from presenting testimony from foreign witnesses that was essential to his defense." Mot. for New Trial, at 5.  First, defendant contends that the Government "orchestrated the denial of visas for defense witnesses to prevent them from testifying for the defense."  During trial, defendant raised similar allegations that the Government was obstructing the ability of various Cambodian witnesses to obtain visas so that they could travel to the United States to testify on defendant's behalf.  As the Court explained then, "neither this Court, nor the prosecutors in this case, have any control over how and under what circumstances the State Department determines to issue visas to persons who wish to travel to the United States." Dkt. 1330, at 1.  Moreover, defendant has put forth no evidence whatsoever to suggest that the Government had any involvement with the visa applications of defendant's foreign witnesses.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES - GENERAL**

'O'

Defendant also contends that the Court improperly refused to permit foreign witnesses to testify via video feed.  After it became apparent that several of defendant's witnesses would not be able to travel to the United States to testify on his behalf, defendant requested that these witnesses be permitted to testify via live video feed.  The Court denied this request.  Defendant now contends that the Court's ruling was in error.  However, to permit these witnesses to testify via video feed would have been in direct contravention of the Federal Rules of Criminal Procedure.  See Fed. R. Crim. P. 26 ("In every trial the testimony of witnesses must be taken in open court, unless otherwise provided by a statute or by rules adopted under 28 U.S.C. §§ 2072-2077.").  Moreover, the procedure for obtaining testimony from foreign witnesses who are unable to appear at trial is explicitly set forth in Federal Rule of Criminal Procedure 15.  See Fed. R. Crim. P. 15(c)(3) (setting forth procedures for "taking depositions outside the United States without the defendant's presence").  To the extent any of defendant's foreign witnesses were unable to appear at trial, he was required to comply with these procedures.  Accordingly, the Court finds that it was not an error to preclude defendant's foreign witnesses from testifying via video feed.

The Court, therefore, finds no basis for granting a new trial based on the purported exclusion of foreign witnesses.

### E.     Exclusion of Evidence Regarding Residency

Defendant contends that the Court "erroneously excluded evidence regarding Mr. Boyajian's residency."  Mot. for New Trial, at 5.  However, defendant fails to identify what evidence the Court "erroneously excluded."  Moreover, defendant's argument is perplexing.  In an order dated December 17, 2015, the Court expressly permitted defendant to introduce evidence regarding his alleged residency in Cambodia.  Dkt. 1105, at 13 ("Accordingly, the Court finds that defendant may present, as a defense to Count Three, evidence that he was a resident of Cambodia at the time of the charged illicit sexual acts.").  And, at trial, defendant submitted evidence regarding his housing accommodations in Cambodia and his Cambodian bank accounts.  Accordingly, contrary to defendant's assertion, he was permitted to present, and in fact did present, evidence of his alleged Cambodian residence.  This argument is, therefore, unavailing.

### F.     Nondisclosure of Evidence Regarding Foreign Residency

At trial, the Government submitted evidence that defendant was a resident of Menlo Park, California at the time he committed the charged offenses.  Defendant now contends that at some point (although he does not specify when) the Menlo Park Police Department issued arrest warrants for defendant for failing to provide notification that he had moved, as required by the terms of his sex offender registration.  Defendant appears to contend that this evidence would

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES - GENERAL**

'O'

have demonstrated that he was not a resident of California, such that he was not required to register as a sex offender.  This argument fails for several reasons.

First and foremost, defendant submits no evidence of these purported arrest warrants from the Menlo Park Police Department.  For its part, the Government states that it has neither obtained nor seen warrants for defendant from the Menlo Park Police Deparatment.  And the Government represents that, on September 27, 2010, it issued a trial subpoena to the Menlo Park Police Departmetn for "Copies of all documents pertaining to Ronald Boyajian, date of birth August 8, 1960."  Opp'n to Mot. for New Trial, at 9.  On October 7, 2010, the Menlo Park Police Department responded to this subpoena by producing defendant's sex offender registration packet.  No warrants of the type defendant describes were included in this packet.

Second, even if the Menlo Park Police Department had issued arrest warrants for defendant for failing to notify them that he had moved, that would not warrant a new trial.  At trial, the Government was required to prove that defendant was required by California law to register as a sex offender when he traveled in foreign commerce.  Even if a warrant had issued, it would merely demonstrate that at some point in time defendant failed to comply with one aspect of his registration requirements.  Moreover, the Government submitted evidence at trial that defendant was required to register as a sex offender and, in fact, did so in Menlo Park in September 2008, prior to traveling in foreign commerce.

Accordingly, the Government's purported nondisclosure of defendant's Menlo Park arrest warrants does not justify a new trial.

## G.    Jury Instructions

Defendant raises three objections related to jury instructions.  The Court addresses each of these objections in turn.

### 1.    Procedural Objections

First, defendant argues that he was "unfairly deprived of a meaningful opportunity to participate in the formulation of the jury instructions."  Mot. for New Trial, at 5.  This argument is unavailing.

The Government represents that, on January 13, 2016, more than two weeks before trial began, it circulated an email containing draft jury instructions to the members of the defense team.  See Dkt. 1449, Ex. D (email from Government counsel with draft jury instructions attached).  Defendant failed to respond to the Government's email or coordinate with the Government to prepare proposed joint jury instructions.  Accordingly, on January 20, 2016, the Government unilaterally submitted its proposed jury instructions to the Court.  Although the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES - GENERAL**

'O'

Court did not address jury instructions until almost two months later at the close of trial, defendant did not at any point submit his own proposed jury instructions.

Near the conclusion of trial, the parties and the Court held lengthy hearings to discuss the jury instructions.  Defendant was present for the majority of these hearings.  In the middle of the parties' discussions, defendant requested a continuance so that he could research jury instructions.  Because defendant had at that point had nearly two months to review the Government's proposed jury instructions, and even longer to prepare his own proposed jury instructions, the Court denied this request.  Thereafter, defendant requested that he be permitted to leave the courtroom to return to the Metropolitan Detention Center ("MDC") so that he could prepare for his closing argument.  The Court and the parties had the following exchange with defendant:

> THE COURT:  The question we're asking is because you want to go back to MDC and get prepared --
>
> MR. BOYAJIAN:  For argument.
>
> THE COURT:  Yes.  Do you waive your appearance at any further discussion of jury instructions today?
>
> MR. BUEHLER: Without -- and that that would not waive the previously expressed --
>
> THE COURT: Without waiving any objections. You keep all your objections in [place].
>
> MR. BOYAJIAN:  Yes.  And the way Your Honor has said [it] is correct: I waive my appearance today to have discussions on this matter because at this point I'm unintelligible on the matter; I believe I'm unknowing about the matter sufficient to be able to participate in it, and I made an objection that what I've heard right now is something I do need to research, but disagree with the jury instructions on those three counts. So I do waive my being present to continue to argue this, given that I do need to prepare for arguments. Now that Your Honor has overruled my objection, it would be futile to continue to be here and not prepare for arguments.

Dkt. 1396, Trial Transcript 3/3/16 AM, at 54-55.  Thus, to the extent defendant was not present during the parties' discussion of jury instructions, he affirmatively waived his right to participate in those discussions.  Moreover, contrary to defendant's assertion, he had ample time both before and during trial to research jury instructions, to respond to the Government's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES - GENERAL**

'O'

proposed jury instructions, and to prepare his own proposed jury instructions.  Defendant failed to take any of these actions.  Accordingly, the Court finds that defendant was not denied a meaningful opportunity to participate in the formulation of jury instructions.

### 2.      Jury Instructions Regarding Residency

Second, defendant contends that the jury should have been give additional or different instructions regarding his purported residence in Cambodia.  Defendant raises two principal objections.  Defendant's first objection relates to Count One, which charged defendant with traveling in foreign commerce for the purpose of engaging in illicit sexual conduct with a person under the age of 18 years in violation of 18 U.S.C. § 2423(b).  At the end of trial, the Court gave an instruction regarding the elements of a violation of section 2423(b), which provided in pertinent part:

> To prove a violation of 18 U.S.C. § 2423(b), the government does not have to prove that the defendant traveled in foreign commerce for the sole and exclusive purpose of engaging in illicit sexual conduct. The government must prove beyond a reasonable doubt that a dominant, significant, or motivating purpose of the defendant's travel in foreign commerce was to engage in illicit sexual conduct. In other words, the government must prove his criminal purpose was not merely incidental to the travel.

Dkt. 1327, Jury Instruction, No. 20.  In his motion for a new trial, defendant contends that "the jury was not given any definition of 'travel in foreign commerce' that would have limited the jury's consideration to those circumstances in which a defendant travels as a tourist and not as a resident of a foreign country."  Mot. for New Trial, at 5-6.  Defendant appears to be reiterating an argument that was raised by his stand-by counsel, George Buehler, during the parties' discussion of jury instructions.  Specifically, Mr. Buehler brought to the Court's attention the decision in United States v. McGuire, 627 F.3d 622 (7th Cir. 2010), in which a panel of the Seventh Circuit engaged in a lengthy discussion of section 2423(b)'s "purpose" requirement. The Seventh Circuit suggested that a dominant or motivating purpose definition—such as that given by this Court—was problematic and that it would be preferable for district courts to give a definition of purpose that required the jury to find that illicit sex was a but for cause of the travel.  See id. at 625 ("It would be better to ask whether, had a sex motive not been present, the trip would not have taken place or would have differed substantially.").

After considering this authority and Mr. Buehler's argument, the Court rejected the Seventh Circuit's definition of "purpose" and instead instructed the jury that it was required to find that illicit sex was a dominant, significant, or motivating purpose of defendant's travel. While defendant may have preferred that the Court provide a definition based on the McGuire decision, the Court's instruction closely aligns with case law in the Ninth Circuit.  See, e.g.,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES - GENERAL**

'O'

United States v. Kinslow, 860 F.2d 963, 967 (9th Cir. 1988) ("In this circuit, a federal crime under 18 U.S.C. § 2423 exists if the immoral activity is 'one of the dominant purposes' of the transportation."); United States v. LaBrecque, 433 Fed. App'x. 551, 553 ("[T]he evidence was sufficient for a rational jury to conclude, beyond a reasonable doubt, that prior to J.'s July 1991 trip to Texas, [defendant] intended that *one of the dominant purposes* of the trip was criminal sexual activity involving J.") (emphasis added).  Accordingly, the Court finds no error in its instruction for a violation of section 2423(b).

Defendant's second objection concerns Count Three.  Defendant states that "with respect to Count Three, the jury instructions provided an overly expansive definition of 'residing in California.' " Mot. for New Trial, at 6.  At the end of trial, the Court gave the following definition of "residing in California":

> For purposes of determining whether defendant was residing in California at the time of the alleged offenses, "residence" means one or more addresses at which a person regularly resides, regardless of the number of days or nights spent there, such as a shelter or structure that can be located by a street address, including, but not limited to, houses, apartment buildings, motels, hotels, homeless shelters, and recreational and other vehicles.

Dkt. 1327. Jury Instruction No. 22.

This definition was drawn from the requirements of California Penal Code section 290, which sets forth the circumstances under which a convicted sex offender must register with the State of California.  Nonetheless, defendant contends that the Court's definition runs afoul of the Supreme Court's recent decision in Nichols v. United States, 136 S.Ct. 1113 (April 4, 2016).  Defendant's reliance on Nichols is misplaced.  Nichols involved the meaning of "residence" under the Sex Offender Registration and Notification Act ("SORNA"), a federal sex offender registration statute.  However, defendant was not charged in Count Three with a violation of SORNA; rather, defendant was charged with a violation of 18 U.S.C. § 2260A.  Section 2260A provides a 10-year mandatory, consecutive sentencing enhancement for a defendant who commits a felony offense against a minor while being required to register as a sex offender.  Section 2260A looks to all sources of law, both state and federal, in determining whether a defendant is required to register as a sex offender.  See 18 U.S.C. § 2260A ("Whoever, being required by Federal *or other law* to register as a sex offender, commits a felony offense involving a minor . . .shall be sentenced to a term of imprisonment of 10 years . . .") (emphasis added).  Here, defendant was required to register as a sex offender pursuant to California law, not SORNA or any other federal law.  Thus, the fact that the Supreme Court may have defined "residence" more narrowly for purposes of SORNA has no bearing on the Court's instruction, which, as already stated, was drawn from California's registration requirements set forth in California Penal Code § 290.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES - GENERAL**

'O'

In sum, the Court finds that its instructions regarding defendant's residency were supported by applicable law in both California and the Ninth Circuit and defendant has not stated a valid basis for a new trial based on these, or any other, jury instructions.

### 3.     Limiting Instructions

Finally, defendant contends that the Court gave an inadequate limiting instruction regarding the jury's consideration of evidence of child pornography and other uncharged conduct. However, in Jury Instruction No. 14, the Court instructed the jury:

> You have heard evidence that the defendant committed other crimes, wrongs, or acts not charged here. Specifically, you saw images of child pornography, images of young girls' legs and feet, and heard testimony about videos of child pornography found on digital media seized in connection to this case. You may consider this evidence only for its bearing, if any, on the question of the defendant's intent, motive, opportunity, preparation, plan, knowledge, identity, absence of mistake, or absence of accident and for no other purpose. You may not consider this evidence as evidence of guilt of the crime for which the defendant is now on trial.

Dkt. 1327, Jury Instruction No. 14. Accordingly, the Courts instruction No. 14 properly instructed the jury that they could only consider this evidence for the purposes permitted pursuant to Federal Rule of Evidence 404(b).

### H.     Motion to Suppress S.L.'s Identification

In February of 2012, defendant's former counsel moved to suppress the testimony of victim-witness S.L. positively identifying defendant. Dkt. 153. In an order dated October 9, 2012, the Court denied this motion on the grounds that defendant had failed to establish that law enforcement agents used suggestive techniques when interviewing any of the minor witnesses in this case, including S.L. Dkt. 254. In this order, the Court briefly set forth its understanding of the background facts related to S.L.'s identification of defendant. Id. at 2. Among many other facts, the Court noted that S.L.'s mother accompanied her during her interview with law enforcement agents.

At trial, S.L. testified that her mother did not accompany her during her interview with law enforcement agents. See, Dkt. 1452, Ex. G, Trial Transcript, 2/18/16 PM, at 32:7-8. In his motion, defendant contends that S.L.'s testimony that her mother was not present during her interview with law enforcement requires the court to reconsider its pretrial ruling and to suppress S.L.'s identification of defendant. However, nowhere in the Court's prior order did it

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES - GENERAL**

'O'

rely on the fact that S.L.'s mother was present during her interview with law enforcement. Rather, the Court based its ruling on the fact that defendant had failed to put forth any evidence that law enforcement officers had used suggestive techniques when interviewing S.L., or any of the other minor witnesses who identified defendant. In his current motion, defendant again fails to identify any evidence of suggestive techniques. Likewise, during trial, defendant failed to elicit testimony demonstrating that S.L.'s identification of defendant was suggested by law enforcement. At most, S.L. testified that she was a little afraid during the interview and that she could not remember there being any other adults in the room besides the CNP officers. This, standing alone, is insufficient to warrant the suppression of S.L.'s identification. Accordingly, the Court finds no basis to revisit its prior ruling denying defendant's motion to suppress S.L.'s identification of defendant.

I.      **Equal Protection Challenge to Count Three**

Defendant contends that the Court should dismiss Count Three of the indictment, which charges defendant with a violation of 18 U.S.C. § 2260A, on equal protection grounds. Prior to trial, defendant's former counsel moved to dismiss Count Three on equal protection grounds. Among other things, defendant's former counsel argued that section 2260A violates equal protection because it impacts only those individuals who were previously convicted of a sex offense in a state that required sex offender registration, leading to disparate treatment among individuals in different states. The Court reasoned, however, that because defendant had not been tried and convicted of a violation of section 2260A, this issue was not yet ripe for adjudication. Accordingly, the Court deferred ruling on this issue until such time as defendant was tried and convicted under section 2260A.[2] Defendant now renews his equal protection challenge.

As noted above, section 2260A is a mandatory sentencing enhancement that applies where a defendant commits a felony offense against a minor while being required to register as a sex offender. In determining whether a defendant was required to register as a sex offender, section 2260A looks to state and federal sex offender registration laws. In his motion, defendant argues that section 2260A violates equal protection because sex offender registration requirements differ among the states, such that the same conduct may not trigger a registration requirement in all fifty states. Defendant contends that, in light of this alleged disparate treatment among offenders from different states, section 2260A violates equal protection principles.

As an initial matter, the Court previously noted that "sex offenders are not a suspect class, meaning that [section 2260A] would not violate equal protection unless defendant is able to

---

[2] Defendant's former counsel also raised two other arguments that the Court rejected outright. Dkt. 237, at 16-18.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES - GENERAL**

'O'

demonstrate that it fails rational basis review." Dkt. 237, at 18 n.9 (citing <u>McGowan v. Maryland</u>, 366 U.S. 420, 426 (1961)).  For statutory challenges made on equal protection grounds, "[t]he general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate government interest." <u>City of Cleburne v. Cleburne Living Center, Inc.</u>, 473 U.S. 432, 440 (1985).

Here, defendant has failed to demonstrate that section 2260A fails rational basis review. While the Ninth Circuit has not addressed an equal protection challenge to section 2260A, it has rejected similar challenges to the federal firearms statute.  In <u>United States v. Houston</u>, 547 F.2d 104, 107 (9th Cir. 1976), the defendant argued that the statute, which prohibited felons from possessing firearms, violated equal protection because "California may punish proscribed offenses more strictly than other states."  The Ninth Circuit rejected this argument.  It reasoned that "[i]t was entirely rational for Congress to conclude that its primary source of reference should be the maximum permissible punishment under the applicable law, and that this statutory scheme would provide a well-defined and uniform guideline to determine which persons should be subject to [the statute]."  <u>Id.</u>  The Ninth Circuit concluded: "That the application of [the federal firearm's statute] is ultimately predicated on laws which may vary from state to state provides *no substance* to appellant's constitutional claim."  <u>Id.</u> (emphasis added).

The reasoning in <u>Houston</u> applies with equal force here.  In enacting section 2260A, Congress had as its goal protecting the public by enhancing sentences for recidivist sex offenders.  As in <u>Houston</u>, it was "entirely rational" for Congress to conclude that its primary source of reference in determining who should be subject to the section 2260A enhancement would be state sex offender registration laws.  At a minimum, such a rule would facilitate application of the law by providing uniform guidelines to determine which persons were subject to section 2260A.  Accordingly, the Court cannot conclude that Congress had no rational basis in enacting section 2260A and in tying the applicability of section 2260A to state sex offender registration laws.[3]  The Court, therefore, denies defendant's request to dismiss Count Three on equal protection grounds.

### J.    Deprivation of Right to Retained Counsel of Choices

Defendant contends that he was deprived of his right to retained counsel of choice.  This objection appears to relate to defendant's prior representation by the Lightfoot firm.  While not entirely clear, defendant refers in his motion to a dispute between himself and the Lightfoot firm over the return of allegedly unearned legal fees.  Nonetheless, the Court has expressly

---

[3] The Court also notes that, in an unpublished decision, the Eleventh Circuit has also concluded that section 2260A does not violate equal protection.  <u>See</u> <u>United States v. Carver</u>, 422 Fed. App'x. 796, 801 (11th Cir. 2011).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES - GENERAL**

'O'

declined to exercise ancillary jurisdiction over defendant's fee dispute with the Lightfoot firm, Dkt. 1225, and, in any event, it is unclear how any issues relating to defendant's former counsel bear upon defendant's trial or would justify granting a new trial.

### K.   Other Issues

Finally, defendant concludes his motion with a section entitled "other issues." In this portion of defendant's brief, he attaches nearly fifty pages of single spaced text in which he purportedly sets forth a basis for a new trial. Upon the Court's review, these pages appear to be either a summary or a type-written version of defendant's trial notes. As such, they largely summarize rulings this Court made during trial and with which defendant apparently disagrees. However, defendant cites no authority for his disagreement with the Court's prior rulings and fails to clearly set forth a basis on which the Court could find that any of its prior rulings were in error. Accordingly, to the extent defendant seeks to reiterate his objections to the Court's trial rulings, those objections are noted for the record. The Court does not, however, find that these "other issues" warrant a new trial.

For all of the foregoing reasons, the Court finds that defendant has failed to set forth a basis for granting a new trial. Defendant's motion is, therefore, **DENIED**.

### II.   MOTION TO STRIKE FINDINGS AND FOR NEW TRIAL ON GROUNDS OF OUTRAGEOUS GOVERNMENT CONDUCT AND JUDICIAL ERROR EMPANELING ANONYMOUS JURY

On November 23, 2015, the Government filed a motion requesting that the Court empanel an anonymous jury. Dkt. 1046. Defendant failed to file any written response to this motion. Instead, at a hearing on January 11, 2016, defendant for the first time objected to the empaneling of an anonymous jury. After considering defendant's objections, the Court granted the Government's motion in an order dated January 19, 2016. Defendant now contends that the Court's decision to empanel an anonymous jury was in error and moves the Court for a new trial.

Under Ninth Circuit case law, a court may empanel an anonymous jury "where (1) there is a strong reason for concluding that it is necessary to enable the jury to perform its factfinding function, or to ensure juror protection; and (2) reasonable safeguards are adopted by the trial court to minimize any risk of infringement upon the fundamental rights of the accused." United States v. Shryock, 342 F.3d 948, 971 (9th Cir. 2003). In addition, in determining whether an anonymous jury is necessary, the Ninth Circuit instructs courts to consider the following factors: "(1) the defendants' involvement with organized crime; (2) the defendants' participation in a group with the capacity to harm jurors; (3) the defendants' past attempts to interfere with the judicial process or witnesses; (4) the potential that the defendants will suffer a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES - GENERAL**

'O'

lengthy incarceration if convicted; and (5) extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation and harassment." Id.

Here, the Court found that three of the five Shryock factors supported the use of an anonymous jury. First, the Court found that there was evidence that defendant had threatened and coerced a witness during prior criminal proceedings against him in California state court. Second, the Court found that, if convicted, defendant faced a lengthy incarceration. And, third, the Court found that defendant's trial was likely to receive at least modest publicity. The Court also noted that if defendant or anyone associated with the defense were to attempt to influence, or even make contact, with one of the jurors in this case, that could readily create grounds for a mistrial. Taking all of these factors into account, the Court concluded that it was appropriate to implement several narrowly defined precautions to preserve the anonymity of the jury. Specifically, the Court withheld, from both the Government and defendant, the names of the jurors, their street addresses, and their specific places of employment. In addition, the Court took safeguards to minimize any potential prejudice to defendant from using an anonymous jury. The Court instructed the jurors that use of juror numbers, as opposed to their names, was the Court's routine practice and the Court permitted defendant to conduct rigorous voir dire to ferret out any potential juror bias.

Nonetheless, defendant now contends that it was error for the Court to empanel an anonymous jury and that he was unduly prejudiced by the Court's decision. In his motion, defendant largely reiterates arguments he raised during oral argument before trial and which the Court has already rejected. In addition, defendant submits orders from a magistrate judge in his prior criminal proceedings purportedly finding that defendant had not attempted to threaten or coerce witnesses. In the Court's prior order, it relied upon a transcript of a phone conversation between defendant and S.C., an underage woman he was convicted of having sexual intercourse with and who testified against defendant in his state court criminal proceedings. During this phone conversation, defendant attempted to persuade S.C. not to testify that he had engaged in sexual intercourse with her. Among other things, defendant told S.C. that if she testified against him he would sue her family for everything they had and that he might have to kill S.C.'s father. See Dkt. 1176, at 9. At one point, defendant also told S.C. that perjury was a "joke" and that "[n]obody prosecutes perjury." Id. Defendant now contends that, following this phone conversation, a magistrate judge in the Orange County Municipal Court listened to the tape recording of the conversation and determined that the conversation did not evidence an attempt to harm or coerce S.C. Defendant also notes that, notwithstanding this phone conversation, the judge in his prior criminal proceedings did not empanel an anonymous jury. However, even assuming defendant has accurately represented these judges' rulings, it is not clear under what circumstances those rulings were made and, in any event, the rulings of other judges regarding defendant's risk of tampering with jurors in 1993 have no bearing on this Court's independent determination that empaneling an anonymous jury was necessary to protect jurors in this case. The decision to empanel an anonymous jury is left to the sound discretion of the trial court and,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES - GENERAL**

'O'

as already stated, the Court reached its own determinations regarding the likelihood that defendant would attempt to tamper with the jurors in this case.

Moreover, the Court finds that defendant has failed to demonstrate that he was prejudiced by the Court's decision to empanel an anonymous jury. As already noted, the Court took reasonable precautions to ensure that defendant was not prejudiced by the use of an anonymous jury. The Court informed the jury that the use of juror numbers in lieu of their names was a routine practice and at no time throughout the trial was defendant ever presented as a threat or a danger to jurors or anyone else. See also Shryock, 342 F.3d at 972-73 (upholding district court's use of anonymous jury where the district court "instructed the jury that the reason for their anonymity was to protect their privacy from curiosity-seekers" and 'that the use of anonymous juries was commonplace in federal court"). With respect to voir dire, jurors filled out extensive questionnaires and defendant had the benefit of a four-day voir dire process in which to evaluate potential juror bias. During this process defendant voir dired nearly eighty jurors. Defendant fails to explain how the fact that juror's names, street addresses, and specific places of employment were withheld in any way affected his ability to conduct effective voir dire.[4] See also United States v. Childress, 58 F.3d 693, 704 (D.C. Cir. 1995) (upholding anonymous jury given circumstances of case and precautions taken by court, including court's "searching voir dire" and extensive questionnaire)

Accordingly, the Court finds that defendant has not offered any new information or evidence to suggest that it was improper for the Court to empanel an anonymous jury or that he was unfairly prejudice by the Court's decision. The Court's decisions to empanel an anonymous jury, therefore, does not provide a basis for a new trial and defendant's motion is **DENIED**.

## III.   MOTION FOR INQUIRY OVER POSSIBLE JUROR MISCONDUCT

On May 13, 2016, defendant filed a motion entitled "Motion for Inquiry Over Possible Juror Misconduct." Dkt. 1423. In this motion, defendant contends that he has found evidence

---

[4] Defendant also objects to the Court's use of black tape on the courtroom floor to mark the boundaries where defendant could permissibly walk. And defendant objects to the Court's use of special sidebar procedures whereby defendant was prevented from fully approaching the Court. However, these procedures were necessitated by the fact that defendant was in custody and was proceeding *pro se* and defendant does not identify any way in which either of these procedures was ever used or explained to the jury in a manner that prejudiced him. In addition, the black tape restrictions were imposed on both the Government and defendant and, notwithstanding the restrictions, defendant was permitted to walk all the way up to the lectern and was simply prohibited from intruding on Government counsel's table.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES - GENERAL**

'O'

that the jurors in this case may not have deliberated impartially.  Accordingly, defendant requests that the Court recall the jury and conduct an inquiry into potential juror misconduct. The Court addresses each of defendant's proffered pieces of evidence in turn and finds that defendant has failed to set forth any concrete evidence of juror misconduct.

First, defendant contends that multiple jurors exhibited "emotional disturbances" during the trial.  Juror Misconduct Mot., at 3.  In support of this claim, defendant cites an online news article from the Orange County Weekly reporting that, during defendant's trial, "many jurors welled up with tears."  However, it is not surprising that some jurors may have "welled up with tears" during defendant's trial.  Defendant was charged with engaging in illicit sexual conduct with a minor girl.  Accordingly, over the course of the trial, the jury heard extensive testimony regarding the child prostitution industry in Cambodia.  The jury also heard testimony that defendant had purchased children as young as nine years old for illicit sexual conduct.  And the jury heard testimony from four minor girls who had each been sexually abused while working in child brothels in Cambodia.  It is not surprising that several, if not all, of the jurors found this testimony upsetting.  Indeed, several of the witnesses themselves "welled up with tears" during their testimony.  Therefore, the fact that some jurors may have been observed crying during trial does not demonstrate juror misconduct and defendant cites no authority finding jurors crying as a basis for conducting an inquiry into juror misconduct.

Second, defendant contends that jurors were likely exposed to prejudicial publicity.  Juror Misconduct Mot., at 3.  Defendant notes that, during his trial, the online news website MyNewsLA.com published an article about his trial.  Id. Ex. 1 (MyNewsLA.com article, "Sex Tourism Trial Starts for Man Accused of Traveling to Cambodia To 'Sexually Assault Impoverished Migrant Children.' ").  And defendant notes that, in late January 2016, after defendant's trial began, the Los Angeles Times published a special supplement on human trafficking.  Id. Ex. 2 (Los Angeles Times, "Human Trafficking").  The Los Angeles Time piece featured a full page photo showing a young girl holding a piece of paper in front of her face, which read: "If You Buy Me For Sex You Are Not A 'John,' You Are A CHILD RAPIST."  Id. Defendant contends that these news pieces improperly biased the jury against him.  However, there is no evidence that any of the jurors read, or were even aware of, these news pieces.[5] Moreover, throughout trial the Court repeatedly instructed the jury not to discuss the case with anyone else or to do anything outside the courtroom to learn about the case.  See also Penry v. Johnson, 532 U.S. 782, 799 (2001) ("We generally presume that jurors follow their

---

[5] There is also no evidence that the Los Angeles Times supplement refers to defendant. While defendant was often referred to as John, "John" is a commonly used term to refer to a man who pays for sex with a prostitute.  Thus, when viewed in context, it seems highly unlikely that the Los Angeles Times supplement was referring to defendant.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES - GENERAL**

'O'

instructions.").  Accordingly, there is no basis for finding that jurors were improperly influenced by news stories published during the course of defendant's trial.

Finally, defendant cites a card received by Government counsel after trial from an alternate juror ten days after the jury returned its verdict.  This card states, in its entirety:

> Dear Attorneys Herzog [and] Baehr-Jones and Special Agent Ruiz,
>
> Thank you all so much for your hard work, dedication, perseverance [and] attention to detail assembling and prosecuting the Boyajian case.  You presented a great argument at trial despite often times confusing circumstances for the jurors.  Your consistent adherence to, and reminder of, salient facts helped to clear the dust of doubt that the defendant attempted to kick up time and time again.
>
> Thank you too, for reaffirming my faith in the US government as a whole; reminding me that as a country we still stand for what's right and true.
>
> Best wishes,
> [REDACTED ] (Alternate Juror # [REDACTED]).

Juror Misconduct Motion, Ex. 3.  Defendant contends that this juror's observation that jurors were often confused during trial indicates pre-deliberation discussions, in disregard of the Court's repeated instructions that the jurors should not discuss the case with one another.  However, contrary to defendant's assertion, the fact that this juror—who, as an alternate, did not deliberate with the other jurors—found elements of the trial confusing does not provide evidence of pre-deliberation discussions.  Indeed, the alternate juror's note makes no reference to any discussions between jurors.  Rather, when read in context, it appears much more likely that this juror was simply referring to his or her personal confusion during some portions of the trial.  Moreover, as the Government correctly notes, "[t]he record is replete with circumstances in which jurors could have been confused, including but not limited to defendant making accusations against government counsel during trial, defendant's long and meandering efforts to ask proper questions, and defendant's many improper statements and asides when acting as counsel during trial."  Opp'n to Juror Motions, at 2 n.4.

Accordingly, the Court finds no basis for conducting an inquiry into purported juror misconduct.  In addition, the Court notes that post-verdict inquiries into alleged juror misconduct are heavily disfavored.  As the Supreme Court has noted: "Allegations of juror misconduct, incompetency, or inattentiveness, raised for the first time days, weeks, or months after the verdict, seriously disrupt the finality of the process.  Moreover, full and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES - GENERAL**

'O'

community's trust in a system that relies on the decisions of laypeople would all be undermined by a barrage of postverdict scrutiny of juror conduct." Tanner v. United States, 483 U.S. 107, 120-21 (1987) (citations omitted); see also United States v. Voigt, 877 F.2d 1465, 1469 (10th Cir. 1989) ("Inquiries into jury verdicts and deliberations are looked upon with strong disfavor."); United States v. John, 2014 WL 4371434, at *2 (D. Ariz. Sept. 4, 2014) ("The Ninth Circuit disfavors post-verdict interrogation of jurors and has consistently disallowed such interrogation for the purpose of discovering potential, but unspecified, jury misconduct."). For all of these reasons, defendant's motion is **DENIED**.

## IV.    MOTION TO DISMISS PROSECUTION RE: TRANSLATOR FRAUD

On May 2, 2016, defendant filed a motion entitled "Motion to Dismiss Prosecution for Outrageous Government Conduct; Translator Fraud." Dkt. 1405. In this motion, defendant contends that the Government's translator, Rithy Lim ("Lim"), mistranslated several documents from a court proceeding in Cambodia. In particular, defendant contends that several of the victim-witnesses in this case also testified during the Cambodian court proceedings and that each of these victims testified that they had "vaginal intercourse" with men other than defendant. Defendant contends that, in his translation, Lim mistranslated this testimony so that the translated records read only that the victim-witnesses had "sex" with other men—a phrase that can be interpreted to mean either vaginal or oral intercourse. Defendant now objects to the use of these translated records at trial.

As an initial matter, the Court finds that defendant's objection is untimely. The Government first produced the translated records in question years before defendant's trial. Nonetheless, defendant first objected to these translations on March 7, 2016, the day the jury returned its verdict and after all of the witnesses in this case had testified. Dkt. 1328. Accordingly, defendant had ample time to raise this objection both before and during trial and yet failed to do so. By failing to promptly raise his objection, defendant deprived both the Court and the Government of the opportunity to address and resolve any issues with these translations before the jury completed its deliberations.

More substantively, the Court concludes that there is no basis for finding that Lim mistranslated the victim-witnesses' testimony. As the Court and the parties are now well aware, the records of Cambodian court proceedings are, at best, merely a summary of what occurred during those proceedings. As such, whether the records Lim translated contained the phrase "vaginal intercourse," "sex," or any other phrase, it is impossible to know for certain that those words were actually uttered during the Cambodian Court proceedings. Moreover, in light of the relative similarity between the phrases "sex" and "vaginal intercourse," and given the different meaning those phrases may hold in Khmer compared to English, the Court is not prepared to find that the translation prepared by Lim was erroneous. The Court also notes that on at least three prior occasions defendant has challenged Lim's qualification as an interpreter and on each

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES - GENERAL**

'O'

such occasion the Court has found Lim to be a qualified Khmer language interpreter.  See Dkt. 877, 1199, 1276.

Accordingly, the Court **DENIES** defendant's motion.

## V.   MOTION FOR JUDGMENT OF ACQUITTAL UNDER RULE 29, OR IN THE ALTERNATIVE, FOR ARREST OF JUDGMENT UNDER RULE 34

As noted above, defendant was charged with, and found guilty of, Traveling with Intent to Engage in Illicit Sexual Conduct, in violation of 18 U.S.C. § 2423(b) (Count One); Engaging in Illicit Sexual Conduct in a Foreign Place with a Minor Girl, in violation of 18 U.S.C. § 2423(c) (Count Two); and Commission of a Felony Offense Involving a Minor by an Individual Required to Register as a Sex Offender, in violation of 18 U.S.C. § 2260A (Count Three). Defendant now moves, pursuant to Federal Rule of Criminal Procedure 29, for a judgment of acquittal as to all three of these counts.[6]  For the reasons that follow, the Court finds that the jury's verdict of guilty can be sustained on all three counts.

### A.   Count One: Section 2423(b)

In order to find defendant guilty on Count One, the jury was required to find that when defendant traveled to Cambodia in September 2008 he did so with the dominant, significant, or motivating purpose of engaging in illicit sexual conduct with a minor.  At trial, the Government presented evidence that in 2000, as soon as defendant was released from parole for his prior offenses, he took the first of what would be 35 trips to Southeast Asia over the next nine years. See Dkt. 1449, Ex. A, Heisch Testimony, 2/4/16 AM, at 124-126.  The Government also presented evidence that defendant described Cambodia as "dirty" and "third world" and complained that he could not drink the water, speak the language fluently, or stay healthy while he was there.  Id., Ex. B, I.V. Testimony, 2/11/16 AM at 73-74.  Nonetheless, defendant continued to travel to Cambodia frequently.  In addition, victim-witnesses K.L., TyP, and TaP all testified that between 2000 and 2006, when they were between eight and twelve years old, defendant paid for and forced them to orally copulate him.  See generally, Id. Ex. C, K.L. Testimony, 2/16/16 PM; Id. Ex. D, TaP Testimony 2/17/16 AM; Id. Ex. E, TyP Testimony

---

[6] In his motion, defendant also moves the Court for an "arrest of judgment" pursuant to Federal Rule of Criminal Procedure 34.  Pursuant to Rule 34, "[u]pon the defendant's motion or on its own, the court must arrest judgment if the court does not have jurisdiction of the charged offense."  Fed. R. Crim. P. 34(a).  However, this rule is inapplicable here.  Defendant presents no basis on which the Court could find that it lacks jurisdiction over the offenses charged in the indictment.  And, to the extent defendant is really challenging the constitutionality of the statutes under which he was charged, the Court addresses those arguments *infra*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES - GENERAL**

'O'

2/17/16 PM.  Finally, S.L. testified that in the time period shortly after he arrived in Cambodia defendant engaged in illicit sexual conduct with her.  See generally, Id. Ex. F, S.L. Testimony 2/18/16.  Based on this and other evidence, a rational jury could have concluded that defendant personally disliked Cambodia, but that he traveled there so that he could engage in illicit sex with minor children—as he had purportedly done numerous times before.

In addition, defendants' own statements and words provided evidence from which the jury could have concluded that defendant traveled to Cambodia for the purpose of engaging in illicit sexual conduct with minors.  Confidential informant I.V. testified that defendant told him repeatedly about his desire and intent to have sex with minor girls, despite the risk of getting caught.  Id. Ex. H, I.V. Testimony, 2/10/16 PM at 40-82.  Defendant also discussed with I.V., and the jury heard recordings of defendant discussing, his fears that non-governmental organizations ("NGOs") were following him and that he might be turned over to the police.  Id. at 77-79.  Nonetheless, defendant continued to travel to Svay Pak and engage in illicit sexual conduct with minors.  Defendant also made numerous comments about the types of girls he desired.  Specifically, defendant wanted to go to a place where he could obtain girls who were 33 kilograms or smaller.  Id. at 37-38.  And defendant stated that he preferred Vietnames girls without papers, such as those available in Svay Pak, because that would make it impossible to verify their ages.  Id. at 60-61.  Finally defendant wrote in his journal about his desire for undeveloped girls, whom he referred to as "nyaws," and kept detailed notes regarding the girls he preferred in Svay Pak.  Tr. Ex. 252.  Presented with all of this evidence, a rational jury could have concluded that defendant had a strong desire to engage in sexual conduct with minor girls and that he travelled to Cambodia and Svay Pak so that he could fulfill that desire.  Particularly given that defendant continued to travel to Svay Pak despite the risk that he was being followed by NGOs, a rational jury could have concluded that defendant's desire to engage in illicit sex was so strong that it was his dominant purpose in traveling to Cambodia.  Accordingly, the Court finds that there was sufficient evidence from which a rational jury could have concluded that defendant traveled to Cambodia with the dominant purpose of engaging in illicit sex with minors.

In his motion, defendant argues that the Court should vacate the jury's verdict because the Government failed to demonstrate that defendant was not a resident of Cambodia.  At trial, defendant attempted to demonstrate to the jury that, at the time he committed the charged offenses, he was residing permanently in Cambodia.  To this end, defendant presented evidence, among other things, that he was staying in a guest house in Cambodia and that he had opened a bank account with a Cambodian bank.  In the instant motion, defendant appears to be arguing that, in light of his purported residence in Cambodia, the evidence established that he traveled to Cambodia not to engage in illicit sexual conduct, but rather to return to the place of his residence—i.e., to return home.  This argument is unavailing for two reasons.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES - GENERAL**

'O'

First, even had defendant been permanently residing in Cambodia at the time he traveled to Cambodia, that would only have been one factor for the jury to consider in assessing defendant's purpose for traveling to Cambodia. As the Court instructed the jury, defendant could be found guilty on Count One if his dominant, significant, or motivating purpose in traveling to Cambodia was to engage in illicit sex with minors. Under this standard, it was not necessary that defendant's *sole* reason for traveling to Cambodia was to engage in illicit sex; rather, it was sufficient that defendant's dominant purpose was to engage in illicit sex. In light of the substantial evidence of defendant's intent to engage in illicit sex noted above, the Court finds that, even if defendant also traveled to Cambodia to return to his permanent resident, a rational jury could still have concluded that his dominant purpose was to engage in illicit sex.

Second, and even more to the point, the evidence at trial did not support defendant's theory that he was a resident of Cambodia. Instead the Government submitted significant evidence that, throughout the relevant period, defendant remained a resident of California. The Government presented evidence that: (1) from 1996 to 2008 defendant signed sex offender registration forms listing his address as being in Menlo Park, California, Tr. Exs. 65-78; (2) defendant's California driver's license continuously listed his address in Menlo Park, California and was current at the time of his travel to Cambodia, Tr. Exs. 69A, 75A, 80; and (3) TECS records showed defendant repeatedly returning to California and characterizing his Menlo Park address as his residence, Tr. Ex. 86. The jury also heard clips from a recording of defendant's own statements in which, among other things: (1) defendant described his family as having residences in San Francisco and Los Angeles, Tr. Ex. 341.2; (2) defendant stated "I live in the Bay Area now, I don't live in Los Angeles," Tr. Ex. 341.5; (3) defendant stated "Well lemme go back to the states, and when I reutrn here . . . I'm gonna go back again in two weeks, week-and-a-half or two weeks . . ." Tr. Ex. 341.6; and (4) defendant stated "But I go back (inaudible) and never stay here more than, whatever I do I always go back for a month or two . . ." Tr. Ex. 341.8. This evidence was more than sufficient for the jury to conclude that, even though defendant had spent a considerable amount of time in Cambodia, he was still a resident of California.[7]

---

[7] In his motion, defendant relies on <u>United States v. Abramov</u>, CR 14-241-ODW, in which a court in this district granted a Rule 29 motion on a section 2423(b) count, concluding that the defendant who resided in Russia did not travel there for the purpose of engaging in illicit sex, because it could not be fairly said that the defendant traveled to Russia for the purpose of engaging in illicit sex. Defendant argues that, applying the same reasoning, the Court should vacate his conviction on Count Two. However, unlike <u>Abramov</u>, here, as just explained, defendant failed to establish that he was a resident of the country to which he traveled. Moreover, defendant provides no information or evidence regarding the evidence presented before the Court in <u>Abramov</u> and whether the facts in that case are even analogous to this case. Accordingly, Based on the evidence presented before *this* Court, the Court finds that

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES - GENERAL**

'O'

Accordingly, for all of these reasons, the Court finds that the evidence was sufficient for the jury to find that defendant traveled to Cambodia with the dominant, significant, or motivating purpose of engaging in illicit sexual conduct with a minor.  The Court, therefore, DENIES defendant's motion for a judgment of acquittal as to Count One.

**B.     Count Two: Section 2423(c)**

With respect to Count Two—engaging in illicit sexual conduct with a minor—defendant does not argue that the evidence submitted at trial did not support the jury's verdict.  Rather, defendant craises several legal arguments as to why it was improper for him to be convicted under section 2423(c).

First, defendant argues that section 2423(c) does not apply to U.S. citizens who reside in—as opposed to just travel to—a foreign country.  However, as already discussed, the evidence presented at trial did not support defendant's theory that he was residing in Cambodia. Moreover, the Court has previously concluded that, even if defendant had primarily resided in Cambodia, he could still be found guilty under section 2423(c).  Specifically, in a prior order the court stated:

> Simply put, in enacting § 2423(c) to reach "[a]ny United States citizen or [permanent resident] who travels in foreign commerce, and engages in any illicit sexual conduct with another person," Congress did not limit the statute's applicability to citizens primarily residing in the United States.  Cf. United States v. Pendleton, 658 F.3d 299, 304 (3d Cir. 2011) ("The crime of conviction thus comprises three elements: (1) being a United States citizen or permanent resident; (2) traveling in foreign commerce; and (3) engaging in illicit sexual conduct.").  Here, defendant does not dispute—and in fact, his submitted evidence confirms—that he was a United States citizen at the time of the alleged acts, and that he traveled to and from the United States during the relevant time period.

Dkt. 732, at 19-20.  The Court also explained that in United States v. Clark, 435 F.3d 1100, 1103 (9th Cir. 2006), where the Ninth Circuit rejected a bevy of constitutional challenges to section 2423(c), the Ninth Circuit did not find it problematic that the defendant "primarily resided in Cambodia from 1998 until his extradition in 2003."  The Court concluded, "defendant has presented nothing that meaningfully distinguishes his case from Clark or suggests that § 2423(c)'s unambiguous statutory language does not apply to the conduct

the evidence was sufficient to sustain the jury's verdict as to Count Two.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES - GENERAL**

'O'

alleged." Dkt. 732, at 19-20.[8]  Accordingly, the Court again find that defendant's purported residence in Cambodia does not preclude the application of section 2423(c).

Second defendant argues that his conduct falls outside the reach of section 2423(c) because there is too great of a temporal gap between when defendant traveled in foreign commerce and when he is alleged to have engaged in illicit sexual conduct.  More specifically, defendant contends that he traveled in foreign commerce in September 2008, but is charged with engaging in illicit sexual conduct as late as February 2009—approximately five months later.  Defendant contends that this gap of five months places his conduct too far beyond when he "traveled in foreign commerce" and thus places his conduct beyond the reach of section 2423(c).  Defendant's argument is unavailing.

In Clark, the Ninth Circuit rejected the argument that section 2423(c) requires the charged "conduct occur *while* [the defendant is] traveling in foreign commerce."  435 F.3d at 1107 (emphasis in original).  Rather, the Court found "no plausible reading of the statute that would exclude its application" where there has been a "limited gap"—in that case two months—between the defendants travel in foreign commerce and the charged conduct.  Id.  The Ninth Circuit noted that "a longer gap between the travel and the commercial sex act could trigger constitutional or other concerns," but expressly reserved that question for "another day." Id. at 1107 n.11.  Nonetheless, Clark still stands for the general proposition that, where there has been a "limited gap" between the defendant's travel in foreign commerce and the charged conduct, section 2423(c) is still applicable.  See also United States v. Jackson, 480 F.3d 1014 (9th Cir. 2007) (under Clark "a lapse in time between a defendant's travel and his sex act will ordinarily not preclude prosecution under the statute").  Applying this precedent, the Court has previously determined that "the fact that defendant's case involved a gap of as long as five months (instead of two) between leaving the U.S. and committing an illicit act does not meaningfully distinguish Clark or warrant the dismissal of Count Two."  Dkt. 732, at 18.  In the instant motion, defendant raises no new argument that would cause the Court to reconsider its prior ruling.

Moreover, the Court notes that nothing in the statutory language of section 2423(c) imposes a time limit between travel and sexual misconduct.  And defendant cites no case, before or after Clark, in which a court dismissed a section 2423(c) count because of a gap between travel and illicit conduct or arrest.  By contrast the Government represents that "every court to have considered this issue has concluded that § 2423(c) is constitutional even where the gap between the travel in foreign commerce and the illicit conduct is longer than the two months approved in Clark."  Opp'n. to Mot. for Acquittal, at 19 (citing United States v. Pendleton, 658 F.3d 299, 301 (affirming § 2423(c) conviction where defendant's illicit sexual conduct abroad

---

[8] The Court reaffirmed this ruling in an order dated December 17, 2015.  Dkt. 1105, at 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES - GENERAL**

'O'

took place six months after travel); <u>United States v. Flath</u>, 845 F. Supp. 2d 955 (E.D. Wis. 2012) (denying motion to dismiss a § 2423(c) count where the gap between travel and arrest was almost four years); <u>Phillips v. United States</u>, 2011 WL 4436526 at *1 (E.D. Tenn. Sept. 23, 2011) (rejecting  habeas corpus challenge in a case involving a gap of almost three years between travel and illicit conduct); <u>cf.</u> <u>United States v. Stokes</u>, 726 F.3d 880, 886 (7th Cir. 2013) (affirming conviction under related § 2423(b) "travel with intent" statute where indictment charged a five-month gap between initial travel in foreign commerce and the illicit sexual conduct).  Accordingly, the Court rejects defendant's argument that the conduct for which he is charged falls outside the temporal scope of section 2423(c).

Finally, defendant argues that the enactment of section 2423(c) exceeded Congress' powers under the Foreign Commerce Clause.  However, the Court has on no fewer than three prior occasions concluded that the enactment of section 2423(c) was a valid exercise of Congress' powers under the Foreign Commerce Clause.  <u>See</u> Dkt 90, 237, 1105.  Each of the Court's prior rulings has been based on the decision in <u>Clark</u> in which the Ninth Circuit upheld section 2423(c) against a Foreign Commerce Clause challenge.  <u>See</u> <u>Clark</u>, 435 F.3d at 1116-17 ("Where, as in this appeal, the defendant travels in foreign commerce to a foreign country and offers to pay a child to engage in sex acts, his conduct falls under the broad umbrella of foreign commerce and consequently within congressional authority under the Foreign Commerce Clause.").  While defendant may disagree with the Ninth Circuit's ruling, as even defendant acknowledges "[t]his Court is, of course, bound to follow the majority's opinion in <u>Clark</u>." Mot. for Acquittal, at 17.  Accordingly, the Court again rejects defendant's argument that section 2423(c) violates the Foreign Commerce Clause.

For all of the foregoing reasons, the Court DENIES Defendant's motion for acquittal as to Count Two.

**C.     Count Three: Section 2260A**

Finally, defendant contends that the evidence was insufficient to demonstrate that he was required to register as a sex offender under California law—a requirement for defendant to be found guilty under Count Three.  Nonetheless, at trial the Government presented evidence that, by virtue of his prior convictions in California state court, defendant was required to register as a sex offender as long as he resided in California.  And, as already noted, the Government presented evidence that, when he committed the offenses charged in Counts One and Two, defendant was a resident of California.  Accordingly, there was evidence at trial from which a rational jury could conclude that defendant was required to register as a sex offender when he committed the offenses charged in the indictment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES - GENERAL**

'O'

Defendant also cites the Supreme Court's recent decision in <u>Nichols v. United States</u>, 136 S. Ct. 1113 (April 4, 2016) to support his contention that he was not required to register as a sex offender.  However, as explained *supra*, <u>Nichols</u> is inapposite as it interpreted the registration requirements under SORNA, a federal statute, and not the registration requirements under California law, under which defendant was required to register.

Accordingly, the Court finds that the evidence was sufficient to support defendant's conviction under Count Three and DENIES defendant's motion for acquittal as to this count as well.

    **D.**    **Conclusion**

In accordance with the foregoing, the Court **DENIES** defendant's motion for acquittal in its entirety.

## VI.    CONCLUSION

In accordance with the foregoing the Court **DENIES** each of the aforementioned motions.  At the hearing on defendant's post-trial motions, the Court suggested that defendant could file a motion for reconsideration of this order.  To the extent defendant believes there is a valid basis for a motion for reconsideration, he is hereby instructed to file such a motion **no later than July 26, 2016.**  If defendant fails to file a motion for reconsideration by July 26, 2016, his motion for reconsideration **will be denied as untimely.**

IT IS SO ORDERED.

| | 01 | : | 32 |
|---|---|---|---|
| Initials of Deputy Clerk | | CMJ | |